UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------------ x
                                                  :

CITY OF STERLING HEIGHTS GENERAL
EMPLOYEES' RETIREMENT SYSTEM,    :   No. 2:12-CV-05275-SDW-MCA
Individually and on Behalf of All Others
Similarly Situated,                                   :

                                            Return Date:  October 7, 2013
                          Plaintiffs,      :

     vs.                                           :  **REPLY MEMORANDUM OF**
                                               **LAW IN FURTHER SUPPORT**
PRUDENTIAL FINANCIAL, INC., et al.,     :  **OF DEFENDANTS' MOTION TO**
                                                   **DISMISS THE AMENDED**
                        Defendants.   :  **COMPLAINT**

------------------------------------------------------------ x

                                                DEBEVOISE & PLIMPTON, LLP
                                                   Edwin G. Schallert, *Admitted Pro Hac Vice*
                                                   Natalie L. Reid, *Admitted Pro Hac Vice*
                                                  Erica M. Davila
                                            919 Third Avenue
                                            New York, New York  10022
                                            Tel. (212) 909-6000
                                            Fax (212) 909-6836

                                            WONG FLEMING
                                                  Daniel C. Fleming
                                            821 Alexander Road, Suite 200
                                            P.O. Box 3663
                                            Princeton, New Jersey  08543
                                            Tel. (609) 951-9520
                                            Fax (609) 951-0270

                                            *Attorneys for Defendants Prudential Financial, Inc.,*
                                            *John R. Strangfeld, Richard J. Carbone,*
                                            *Peter B. Sayre and Mark B. Grier*

## **TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 3 |
| I. | Plaintiffs Do Not State A Claim of Securities Fraud Against Any Defendant. | 3 |
| | A. Plaintiffs Fail To Allege Any Material Misrepresentation. | 3 |
| | B. Plaintiffs Fail To Plead Specific Facts Giving Rise To A Strong Inference of Scienter. | 10 |
| | C. Plaintiffs Fail To Plead Loss Causation. | 13 |
| II. | Plaintiffs Fail To Plead Control Person Liability. | 15 |
| CONCLUSION | | 15 |

# **TABLE OF AUTHORITIES**

**CASES**

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   442 F. App'x. 672 (3d Cir. 2011) .............................................................................. 12, 13

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   No. 12 Civ. 0256 (LAK),
   2013 WL 775434 (S.D.N.Y. Feb. 28, 2013)............................................................. 5, 6, 8

*Feingold v. John Hancock Life Ins. Co. (USA)*,
   Civ. Action No. 13-10185-JLT, 2013
   WL 4495126 (D. Mass. Aug. 19, 2013) ........................................................................ 6

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999) ........................................................................................ 11

*In re CIT Group, Inc. Sec. Litig.*,
   349 F. Supp. 2d 685 (S.D.N.Y. 2004) .......................................................................... 4

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007)............................................................................. 14

*In re Nutrisystem, Inc. Sec. Litig.*,
   653 F. Supp. 2d 563 (E.D. Pa. 2009) ......................................................................... 13

*In re Sprint Corp. Sec. Litig.*,
   232 F. Supp. 2d 1193 (D. Kan. 2002)........................................................................... 4

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011) .......................................................................... 5

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) ........................................................................................ 14

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007)............................................................................ 5

*Matrix Capital Mgmt. Fund L.P. v. BearingPoint, Inc.*,
   576 F.3d 172 (4th Cir. 2009) ...................................................................................... 12

*Matrixx Initiatives, Inc. v. Siracusano*,
   131 S.Ct. 1309 (2011).................................................................................................... 9

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
   720 F. Supp. 2d 517 (D.N.J. 2010).............................................................. 4, 13, 14, 15

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) .......................................................................................... 8

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
  874 F. Supp. 2d 341 (S.D.N.Y. 2012) ........................................................................... 12

*Rescue Mission of El Paso, Inc. v. K-Sea Transp. Partners L.P.*,
  No. 12-cv-00509 (WHW),
  2013 WL 3087078 (D.N.J. June 14, 2013)..................................................................... 9

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012) ...................................................................... 7, 8

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
  531 F.3d 190 (2d Cir. 2008) ....................................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................... 10

*Total Asset Recovery Servs. v. MetLife, Inc.*,
  No. 2010-CA-3719 (2d Jud. Cir. Fla. Aug. 20, 2013)................................................. 6, 7

Defendants Prudential Financial, Inc. ("Prudential" or the "Company"), John R. Strangfeld, Richard J. Carbone, Peter B. Sayre, and Mark B. Grier (the "Individual Defendants," and together with Prudential, "Defendants") respectfully submit this Reply Memorandum in further support of their Motion to Dismiss Plaintiffs' Amended Complaint ("Complaint").[1]

## PRELIMINARY STATEMENT

Despite their 111-page Complaint and 40-page Opposition, Plaintiffs' entire response to Defendants' Motion to Dismiss is predicated on two undisputed events during the putative Class Period: Prudential entered into regulatory agreements resolving multi-state market conduct exams and unclaimed property audits, and the Company increased reserves by $139 million. Plaintiffs' attempt to manufacture a claim out of these neutral facts must fail, because none of their allegations satisfy the heightened pleading requirements necessary to sustain their securities fraud claims.

For example, Plaintiffs erroneously assert that Prudential's decision to increase reserves after the regulatory settlements is an admission of "falsity" of prior financial statements. *See, e.g.*, Opp'n 1. As the disclosures cited in the Complaint explain, however, the reserves Prudential established during the Class

---

[1] All capitalized terms have the definitions set forth in Defendants' Memorandum.

1

Period were estimates, "not . . . an exact calculation of liability," and were subsequently revised and increased "based on use of *new* Social Security [DMF] matching criteria." Compl. ¶¶ 54, 132 (emphasis added). Revising an estimate based on new developments is not an admission of falsity or wrongdoing. Similarly, Plaintiffs contend that through the conduct alleged in the Complaint, "Prudential cheated state governments and violated state escheatment laws, across the country" (Opp'n 2), but disregard the fact that the first law requiring the kind of DMF search on which their case relies was not passed until after the Class Period. *See* Mem. 9 (citing Compl. ¶ 107). Indeed, courts have recently confirmed that life insurers had no obligation under various state laws to search the DMF to determine whether to pay or escheat insurance benefits. *See infra* at 6–7.

The Opposition, which merely repeats the inadequate allegations in the Complaint, does not refute Defendants' showing that Plaintiffs have failed to plead the core elements of a securities fraud claim. Instead of identifying actionable statements by any Defendant that were false when made or omitted information Defendants had a duty to disclose, Plaintiffs rely on hindsight allegations. Instead of pleading particularized facts giving rise to the required strong inference of scienter for each Defendant, Plaintiffs offer conclusory assertions that "Defendants" or "the Company" defrauded investors, and ignore opposing inferences that are more readily supported by the documents cited in the

2

Complaint.  Finally, Plaintiffs do not, because they cannot, adequately plead that the alleged misrepresentations were a substantial factor in causing their losses.

In short, the Opposition confirms that Plaintiffs can plead no set of facts that would entitle them to relief.  The Court should dismiss the Complaint in its entirety with prejudice.

## ARGUMENT

### I. Plaintiffs Do Not State A Claim of Securities Fraud Against Any Defendant.

#### A. Plaintiffs Fail To Allege Any Material Misrepresentation.

##### 1. Plaintiffs Do Not Adequately Allege Defendants' Statements Were False Or Misleading When Made.

Plaintiffs continue to rely on the legally deficient theory of securities fraud by hindsight.  *See* Mem. 14–18.  Like the Complaint, the Opposition contends that Prudential's reserves for incurred but not reported liabilities ("IBNR reserves") must have been inadequate at the time they were established, and all subsequent statements affected by those reserves must have been "objectively false," because Prudential later decided to increase those reserves.  *See* Opp'n 11, 22–23 ; Compl. ¶¶ 22–24, 94, 97–98, 101, 120; Mem. 9, 15 n.6.  Courts have consistently held, however, that a later decision "to revise the amount of . . . reserves . . . deemed adequate provides absolutely no reasonable basis for concluding that defendants did not think reserves were adequate at the time" they were set and the impugned

statements made. *In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690–91 (S.D.N.Y. 2004); *see also, e.g., In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1227 (D. Kan. 2002) (claims relying on "the mere fact that [defendant] increased its reserves" are "nothing more than pleading fraud by hindsight.").

Plaintiffs concede that Prudential was one of "a small number of insurers" to perform regular cross-checks of the DMF, Compl. ¶ 100, and acknowledge that these cross-checks "resulted in over $400 million being paid to beneficiaries." Opp'n 28. Yet Plaintiffs maintain that the reserves Prudential established based on its experience were intentionally understated. *See* Opp'n 9–11. Plaintiffs thus insist that Prudential was required—years before the regulatory settlements and new laws enacted in a few states after the Class Period (Mem. 6–9)—to anticipate these developments and apply expanded search criteria to the DMF to identify a larger pool of potential deceased policyholders, so that the failure to take these extraordinary measures constituted a misstatement of reserves. But "[s]ecurities law does not expect clairvoyance," *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 537 (D.N.J. 2010); Plaintiffs have offered no factual basis in the Complaint, and no legal basis in the Opposition, for these assertions.

On the contrary, the Complaint acknowledges that Prudential's reserves "are actuarial or statistical estimates" that reflect "many assumptions and projections

4

which are inherently uncertain and involve the exercise of significant judgment," Compl. ¶ 54, and that Prudential revised those estimates and adjusted its reserves in response to the regulatory settlements. *See id.* ¶¶ 57, 91, 98. Plaintiffs have made "no allegation . . . that there has been any restatement of any financial statement or that any auditor or actuary has qualified or withdrawn its opinion" as a result of Prudential's change in reserves, and have pleaded no other facts that could support their contention that the reserves were inaccurate when established. *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 148 (D. Conn. 2007); *see also In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 362 (S.D.N.Y. 2011) (dismissing complaint relying on "subsequent disclosures" and lacking "particularized allegations that [the company] was experiencing or internally predicting losses exceeding their set reserves").

Plaintiffs attempt to defend their inadequate pleading by citing the decision in *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.* ("*MetLife*"). *See* Opp'n 8–9. Plaintiffs do not disclose, however, that the *MetLife* court's conclusion that the complaint in that case passed muster was based on a factual allegation that appears nowhere in this Complaint. The *MetLife* plaintiffs had contended that a single partial DMF search caused the company to increase its reserves by $80 million; on the basis of this allegation, the court concluded that the plaintiffs had adequately alleged that MetLife had no reasonable basis to believe in the adequacy

5

of its reserves without further DMF checks.  No. 12 Civ. 0256 (LAK), 2013 WL 775434, at *7 (S.D.N.Y. Feb. 28, 2013).[2]  There is no similar allegation here, where Plaintiffs rely on the flawed assertion that, notwithstanding Prudential's regular cross-checks against the DMF, the increase in reserves *after* introduction of new cross-check criteria allegedly shows that previous reserves were inadequate.

Moreover, contrary to Plaintiffs' accusation of breaches of state escheatment laws (Opp'n 2), two other courts—considering the insurance laws of three states—have recently confirmed that insurers in Prudential's position had no legal obligation during the Class Period to conduct wide-ranging DMF searches, or to predict and apply expanded criteria in any searches they did conduct, when setting IBNR reserves or determining whether to pay or escheat insurance benefits. *Feingold v. John Hancock Life Ins. Co. (USA)*, Civ. Action No. 13-10185-JLT, 2013 WL 4495126, at *2 (D. Mass. Aug. 19, 2013) (The "practice of requiring the life insurance policy beneficiary to submit proof of death before payment comports with both Massachusetts and Illinois law."); *Total Asset Recovery Servs. v.*

---

[2]  Plaintiffs also failed to inform this Court that the *MetLife* defendants moved for reconsideration on the ground that this allegation is contradicted by the underlying document and by the other allegations in the complaint.  *See* Defs' Joint Mot. Recon., *MetLife*, No. 12 Civ. 0256 (LAK) (S.D.N.Y.  Mar. 14, 2013).  The court granted plaintiffs leave to replead, and defendants leave to assert the issues raised in the reconsideration motion in a renewed motion to dismiss.  *See* Order, *MetLife* (Jul. 10, 2013).

*MetLife, Inc.*, No. 2010-CA-3719, Slip Op., at 4 (2d Jud. Cir. Fla. Aug. 20, 2013)[3] (no Florida law "requiring Prudential to consult the [DMF]" or "imposing an obligation . . . to engage in elaborate data mining of external databases . . . in connection with payment or escheatment of life insurance benefits").

>   2.  Plaintiffs Do Not Adequately Allege That Defendants Breached Any Duty To Disclose.

No factual allegation in the Complaint supports Plaintiffs' assertion that Prudential was required, under any applicable standard, to disclose the State Inquiries before May 6, 2011.  Plaintiffs do not dispute that Item 103 of SEC Regulation S-K applies only to "pending legal proceedings," or that both Item 303 of SEC Regulation S-K and ASC 450 required disclosure only when the Company reasonably determined that the State Inquiries would have a material adverse effect on its financial results.  Mem. 18–20; *see* Opp'n 15–17.  Plaintiffs do not, because they cannot, plead any actionable omission by Defendants in this regard: no factual allegations in the Complaint about the status of the State Inquiries before the May 6 Disclosure support Plaintiffs' contention that earlier disclosure was required.

Plaintiffs' attempt to distinguish *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261 (S.D.N.Y. 2012), as concerning "a simple Wells Notice," is unavailing.  Opp'n 17.  The *Richman* court concluded that *even* a Wells Notice—

---

[3]  A copy of the court's opinion is attached as Exhibit 1 to the accompanying Supplemental Declaration of Natalie L. Reid.

which comes toward the end of an investigation, and notifies the target "that the SEC's Enforcement Division staff '*intends to recommend an enforcement action*'"—is "well short of litigation," need not be disclosed under Item 103, and is not an actionable omission, because not every recipient of such a notice is eventually charged or sued. *Id.* at 270, 272–74 (emphasis added). Plaintiffs have offered no reason for this Court to treat the then-ongoing State Inquiries as any closer to "proceedings known to be contemplated by governmental authorities" under Item 103 than this kind of direct expression of intent from a regulator.[4]

### 3. Any Alleged Misrepresentations Were Immaterial As A Matter Of Law.

Plaintiffs' Opposition presents two arguments on materiality. Both fail. *First*, Plaintiffs urge this Court to reject Defendants' "misguided contention"—enshrined in Third Circuit law—that "information is always 'immediately' incorporated into the stock price" in an efficient market. Opp'n 22 n.7. Plaintiffs then ask the Court to ignore the fact that Prudential's stock price *rose* after the May 6 Disclosure—from $63.70 at the close on Friday, May 6, 2011, to $63.83 at the close on Monday, May 9, and $64.45 at the close on May 10. *Id.*; *see also* Mem.

---

[4] Plaintiffs' reliance on *MetLife* to rescue their Item 303 argument (*see* Opp'n 17) is misplaced. In this Circuit, "a violation of SK-303's reporting requirements does not automatically give rise to a material omission under Rule 10b-5," so in the absence of a well-pleaded "actionable misrepresentation or omission under that Rule, SK-303 cannot provide a basis for liability." *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000).

21–22 (citing Reid Decl. Ex. 4).  But the law in this Circuit is clear that Plaintiffs cannot have it both ways:  they cannot assert that the market for Prudential's stock was efficient and immediately took account of good news, *see* Compl. ¶ 140(c), yet argue that the stock price would not equally and as quickly reflect any bad news that investors considered significant.  *See* Mem. 20–22.  Contrary to Plaintiffs' assertion, the Third Circuit's approach to determining materiality in cases where Plaintiffs themselves invoke the efficient-market theory is fully compatible with the Supreme Court's recent decision in *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011).  *See Rescue Mission of El Paso, Inc. v. K-Sea Transp. Partners L.P.*, No. 12-cv-00509 (WHW), 2013 WL 3087078, at *14 (D.N.J. June 14, 2013) (cited in Opp'n 21–22) (applying the Third Circuit rule as "[a]n alternative standard for determining materiality in the context of an 'efficient' market").

*Second*, even if the efficient-market rule were not a complete barrier to their claims, Plaintiffs' attempt to establish the quantitative materiality of the alleged misrepresentations is both illogical and intentionally misleading.  Plaintiffs created and rely upon a table that arbitrarily compares the *total* amount of the increase in reserves ($200 million) to the operating income reported in *each* of the quarters in which Plaintiffs allege a misrepresentation was made, and therefore suggests that Prudential allegedly overstated its income by between 18% and 145% in *each* of those periods.  Opp'n 6; Compl. ¶ 123; *see also, e.g.*, Opp'n 36.  The reason for

9

Plaintiffs' sleight of hand is evident: had they performed a more appropriate comparison, and calculated the total increase in reserves as a percentage of the total reported operating income during the Class Period ($4.67 billion), it would reveal that the increase in reserves, even using inflated figures which Defendants dispute, *see* Mem. 12 n.5, was barely 4% of income during the period.[5]

### B.     **Plaintiffs Fail To Plead Specific Facts Giving Rise To A Strong Inference of Scienter.**

Plaintiffs' Complaint contains no particularized factual allegations giving rise to an inference of fraudulent intent, on the part of any Defendant, that is "cogent and at least as compelling as any opposing inference" that could be drawn from the allegations. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (quoted at Opp'n 23).

*First*, Plaintiffs rely on a selective and strained reading of Prudential's disclosures and the underlying circumstances. Stripped of its conclusory hindsight assertions, the Complaint contains no support for Plaintiffs' contention that Defendants "knew or recklessly disregarded facts . . . that each of the . . . financial statements . . . were materially false and misleading" because of the alleged failure

---

[5]  Moreover, the premise of Plaintiffs' calculations is faulty, because it assumes that the increase in reserves was entirely attributable to conditions that existed at the time the operating income figures were originally reported. The disclosures cited in the Complaint show the opposite: the charge to increase reserves was "based on use of *new* Social Security [DMF] matching criteria." Compl. ¶ 132 (emphasis added); *see also id.* ¶¶ 23, 94, 133 (same).

10

"to account and reserve for [IBNR] liabilities." Opp'n 25, 36. Instead, the very documents which Plaintiffs count as corrective disclosures for purposes of their loss causation argument (*see* Opp'n 35) provide the plausible opposing inference that is fatal to Plaintiffs' claims. Rather than "revealing" that the Company had "knowingly or recklessly" understated its reserves throughout the Class Period, Opp'n 25, 38, the November Disclosures expressly stated that the charge to increase reserves resulted from obligations under the regulatory settlements to implement new, broadened DMF matching criteria. *See* Mem. 11–12.

*Second*, Plaintiffs concede they must do more than allege that an individual defendant "must have known a statement was false or misleading" simply "because of his position within the company." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999); *see* Opp'n 28). The claims against the Individual Defendants should be dismissed on this ground alone, as the Complaint relies exclusively on those Defendants' senior positions within the Company to ground claims against them. *See* Mem. 23–27; Compl. ¶¶ 32–35, 37. Indeed, the very passage in which Plaintiffs attempt to defend their pleading cites only to blanket accusations against "Defendants" or "the Company," which are devoid of the particularized allegations against an Individual Defendant mandated by the heightened pleading requirements for securities fraud claims. *See* Opp'n 27–28.

*Third*, Plaintiffs have failed to plead scienter against Prudential. Plaintiffs

11

cite extra-Circuit authority as support for their contention that they can plead scienter against a corporate defendant even where they have failed to adequately allege that any individual Defendant intended to defraud investors.  Opp'n 29.  Yet those cases still require that a complaint sufficiently allege fraudulent intent on the part of *some* individual agent of the company, even if unidentified.  *See, e.g.*, *Matrix Capital Mgmt. Fund L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 189–90 (4th Cir. 2009) ("at least one corporate agent [must have allegedly] acted with the required state of mind"); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (complaint survived due to "sufficient allegations of scienter as to other unnamed 'officers' of the company."); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 363–64 (S.D.N.Y. 2012) (plaintiffs alleged various officers, other than defendants, knowingly signed false affidavits).  There are no such allegations in the Complaint.

     Moreover, the Third Circuit recently concluded that "[e]ven if . . . it were possible to plead scienter against a corporation without pleading scienter against an individual"—a question it left open—the complaint in that case "would not survive a motion to dismiss," because even allegations of a "long-lasting" price-fixing conspiracy that "affected a substantial portion of the [company's] business" fell short of the "extraordinary" circumstances in which other courts allowed or contemplated such pleading.  *City of Roseville Emps.' Ret. Sys. v. Horizon Lines,*

12

*Inc.*, 442 F. App'x. 672, 676–77 (3d Cir. 2011) (citing case in which company purposefully disguised scope of manufacturing defect from safety regulators and investors, and hypothetical scenario in which a company claimed in public statements that it had sold a million units when in fact it had sold none).

### C. Plaintiffs Fail To Plead Loss Causation.

Plaintiffs concede that their claims cannot survive unless their Complaint contains well-pleaded allegations that the corrective disclosure of facts allegedly misrepresented or omitted by Defendants was a "substantial factor" in the decline in stock price that caused Plaintiffs' alleged losses. Opp'n 35. It does not.

*First*, for the reasons noted above and in Defendants' opening brief, the increase in Prudential's stock price after the May 6 Disclosure is sufficient to bar Plaintiffs' claim for failure to plead causation. *See supra* at 8–9, Mem. 20–22, 30.[6]

*Second*, as to the August 5 Disclosure issued on the same day as Standard and Poor's historic downgrade of the U.S. credit rating (Mem. 11), Plaintiffs have no answer to the case law requiring claimants whose alleged loss "coincides with a marketwide phenomenon causing comparable losses to other investors" to plead

---

[6] Plaintiffs urge this Court to look only to the decline in the share price at the opening of the next trading day, or at the lowest trade during that day, and disregard the price *increase* at the close on the two trading days following the disclosure. Opp'n 22 n.7. Plaintiffs do not cite, and Defendants have not found, any case which assesses immediacy in this manner. Like Defendants, courts in this Circuit compare closing prices on the relevant trading days when conducting this analysis. *See, e.g.*, *Pharmanet*, 720 F. Supp. 2d at 561; *In re Nutrisystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 567–69 (E.D. Pa. 2009).

13

specific facts that "would show that [their] loss was caused by the alleged misstatement as opposed to [the] intervening events" affecting the entire market. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005). Contrary to Plaintiffs' assertion, this pleading requirement is fully consistent with Third Circuit authority. *See* Mem. 30–31; *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 297 (D.N.J. 2007) ("If the price of a security declines after the purchase for reasons unrelated to the fraud, or if the circumstances of the decline are such that the investor's economic loss is bound to be speculative, the investor has no right to recovery.").

*Finally*, Plaintiffs' assertion that the November Disclosures "revealed the very information that was concealed by [D]efendants' misconduct" (Opp'n 38) is belied by the plain terms of the earlier disclosures, which had already informed the public of the existence and subject of the State Inquiries and of the possible adverse impact on claim payments and reserves. Mem. 10–12. All that is left to distinguish the November Disclosures from the earlier statements is the very factor Plaintiffs concede is insufficient to plead loss causation: the "announcement[] of disappointing financial results" caused by the size of the charge to increase reserves that Prudential had eventually determined was necessary. Opp'n 38; *Pharmanet*, 720 F. Supp. 2d at 563 (cited at Opp'n 38) (dismissing complaint that failed "to allege that . . . public disclosures informed investors [of] any of the so-

14

called 'truths,'" rather than mere adverse effect on "financial health").

## II. Plaintiffs Fail To Plead Control Person Liability.

Faced with case law from two different Circuits indicating that Section 20(b) does not provide a private right of action, Plaintiffs have abandoned their claim under this provision of the Exchange Act. Mem. 33; Opp'n 39 (citing only Section 20(a)). Plaintiffs' remaining claim of control liability must be dismissed because they have failed to allege any predicate primary violation of Section 10(b) and Rule 10b-5 by anyone, including Mr. Carbone or Mr. Grier. *See* Mem. 32; *see also* Opp'n 39–40.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

Respectfully submitted,

_____  
Edwin G. Schallert  
Natalie L. Reid  
Erica M. Davila  
DEBEVOISE & PLIMPTON LLP

/s/ Daniel C. Fleming  
Daniel C. Fleming  
WONG FLEMING

*Attorneys for Defendants Prudential Financial, Inc., John R. Strangfeld, Richard J. Carbone, Peter B. Sayre, and Mark B. Grier*

Dated:     September 19, 2013

23966066

15