UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------- x
                                                         :
CITY OF STERLING HEIGHTS GENERAL                         :
EMPLOYEES' RETIREMENT SYSTEM,                            :   No. 2:12-CV-05275-SDW-MCA
Individually and on Behalf of All Others                 :
Similarly Situated,                                       :
                                                         :
                            Plaintiffs,                  :
                                                         :   **ANSWER TO AMENDED**
                                                         :   **COMPLAINT**
            vs.                                          :
                                                         :
PRUDENTIAL FINANCIAL, INC., et al.,                      :
                                                         :
                            Defendants.                  :
-------------------------------------------------------- x

DEBEVOISE & PLIMPTON, LLP
    Edwin G. Schallert, *Admitted Pro Hac Vice*
    Natalie L. Reid, *Admitted Pro Hac Vice*
    Erica M. Davila
919 Third Avenue
New York, New York  10022
Tel. (212) 909-6000
Fax (212) 909-6836

WONG FLEMING
    Daniel C. Fleming
821 Alexander Road, Suite 200
P.O. Box 3663
Princeton, New Jersey  08543
Tel. (609) 951-9520
Fax (609) 951-0270

*Attorneys for Defendants Prudential Financial, Inc.,*
*John R. Strangfeld, Richard J. Carbone,*
*and Mark B. Grier*

Defendants Prudential Financial, Inc. ("Prudential" or the "Company"), John R. Strangfeld ("Strangfeld"), Richard J. Carbone ("Carbone"), Mark B. Grier ("Grier") (the "Individual Defendants," and together with Prudential, "Defendants"), by their undersigned attorneys, for their Answer to the Amended Complaint for Violations of Federal Securities Laws (the "Complaint") of Lead Plaintiffs National Shopmen Pension Fund, Heavy & General Laborers' Locals 472 & 172 Pension Annuity Funds, and Roofers Local No. 149 Pension Fund ("Lead Plaintiffs"), and Plaintiff City of Sterling Heights General Employees' Retirement System (together with Lead Plaintiffs, "Plaintiffs"), respectfully state as follows:

## I.      Introduction and Overview

1.      Deny the allegations in Paragraph 1 of the Complaint, except admit that Plaintiffs have brought a putative class action as described in Paragraph 1.

2.      Admit the allegations in Paragraph 2 of the Complaint.

3.      State that no response is required to the statements in Paragraph 3 of the Complaint, except state that the Court's Order dated February 6, 2014 ("Order") dismissed all counts of the Complaint asserted against Peter B. Sayre, who is therefore no longer a Defendant in this case.

4.      State that no response is required to the statements in Paragraph 4 of the Complaint, except state that pursuant to the Court's Order, only three Individual Defendants remain in this case.

5.      Admit that Prudential operates in the United States and in other countries, and that it is a provider of a wide range of insurance, investment management, and other financial products and services, including life insurance, annuities, and retirement-related services.   Admit that Prudential's principal operations are divided between its Financial Services Businesses and its Closed Block Business, and that the Financial Services Businesses include the Company's U.S. Retirement Solutions and Investment Management division, U.S. Individual Life and Group Insurance division, International Insurance and Investments division, and Corporate and Other operations.   Further admit that Prudential's Closed Block Business, established when Prudential underwent demutualization, is managed separately from the Financial Services Businesses and includes, among other things, in force participating insurance products, annuity products and assets used for the payment of benefits and policyholders' dividends, plus other assets and equity that support these products and related liabilities.   Defendants otherwise deny the remaining allegations in Paragraph 5 of the Complaint, and respectfully refer the Court to the full text of the document or documents referenced for their true content.

6.     Deny the allegations contained in Paragraph 6, and respectfully refer the Court to the full text of the document or documents quoted for their true content.

7.     Admit that Prudential has sold and serviced insurance products for more than 135 years in the United States, but otherwise deny the remaining allegations in Paragraph 7 of the Complaint, and respectfully refer the Court to Prudential's website for its complete content and context, and to the full text of the document or documents quoted for their true content.

8.     Deny the allegations in Paragraph 8, except admit that the Company has engaged in the use of the Social Security Administration's Death Master File ("DMF") as more fully set forth in Paragraph 57(c) below, and respectfully refer the Court to the National Technical Information Service website for its true content.

9.     Deny the allegations in Paragraph 9 of the Complaint, except admit that the Company has engaged in the use of the DMF as more fully set forth in Paragraph 57(c) below, and that this use of the DMF may have resulted in the cessation of annuity payments.

10.    Deny the allegations in Paragraph 10 of the Complaint.

11.    Deny the allegations in Paragraph 11 of the Complaint.

12.    Deny the allegations in Paragraph 12 of the Complaint.

13.    Deny the allegations in Paragraph 13 of the Complaint, and respectfully refer the Court to the full text of the document or documents quoted for their true content.

14.    Deny the allegations in Paragraph 14 of the Complaint, and respectfully refer the Court to the full text of the document or documents quoted for their true content.

15.    Deny the allegations in Paragraph 15 of the Complaint.

16.    Deny the allegations in Paragraph 16 of the Complaint.

17.    Deny the allegations in Paragraph 17 of the Complaint.

18.    Admit that on August 5, 2011, Prudential filed its second quarter 2011 Form 10-Q; otherwise deny the remaining allegations in Paragraph 18 of the Complaint; respectfully refer the Court to the full text of Prudential's August 5, 2011 Form 10-Q for its true content; and deny any allegation inconsistent with that full text.

19.    Deny the allegations in Paragraph 19 of the Complaint, except admit that on August 5, 2011, Standard & Poor ("S&P") downgraded the credit rating of the United States for the first time in history, and respectfully refer the Court to the full text of *The Atlantic*'s August 5, 2011 article, cited in Footnote 2, entitled "Why has S&P downgraded the U.S.?", for its true content.

20.     Do not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and respectfully refer the Court to the full text of *Bloomberg*'s August 5, 2011 press article, entitled "MetLife Says 30 Jurisdictions Are Auditing Unpaid Benefits," for its true content.

21.     Deny the allegations in Paragraph 21 of the Complaint, except admit that on Friday, August 5, 2011, Prudential's stock closed at $53.99 per share, and on Monday, August 8, 2011, Prudential's stock closed at $48.14 per share.

22.     Admit that on November 2, 2011, Prudential issued a press release entitled "Prudential Financial, Inc. Announces Third Quarter 2011 Results" (the "November 2, 2011 Press Release"), in which Prudential reported earnings results of $1.07 per common share, and announced a pre-tax charge of $99 million to increase reserves for estimated claims based on the use of new, expanded DMF matching criteria.  Defendants do not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 of the Complaint, respectfully refer the Court to the full text of the November 2, 2011 Press Release for its true content, and deny any allegation inconsistent with that full text.

23.     Admit that on November 3, 2011 Prudential held a conference call for investors and analysts to discuss its third quarter 2011 results; otherwise deny the remaining allegations in Paragraph 23 of the Complaint; and respectfully refer the

Court to Prudential's Earnings Conference Call Transcript dated November 3, 2011 for its true content.

24.    Admit that on November 4, 2011, Prudential filed its third quarter 2011 Form 10-Q, in which it announced a $40 million increase in Closed Block Business reserves for estimated payments arising from the use of new, expanded DMF matching criteria; otherwise deny the remaining allegations in Paragraph 24 of the Complaint; respectfully refer the Court to the full text of Prudential's November 4, 2011 Form 10-Q for its true content; and deny any allegation inconsistent with that full text.

25.    Deny the allegations in Paragraph 25 of the Complaint, except admit that Prudential's stock closed at $53.67 per share on November 2, $53.05 on November 3, and $52.19 per share on November 4, 2011.

26.    Deny the allegations in Paragraph 26 of the Complaint, except admit that (*1*) by February 2, 2012, Prudential's Regulatory Settlement Agreement had been signed by California, Florida, Illinois, New Hampshire, New Jersey, North Dakota, and Pennsylvania, and (*2*) the Regulatory Settlement Agreement became effective on February 22, 2012 upon signature by Kentucky, the twentieth state to join the agreement.  Defendants otherwise respectfully refer the Court to full text of the document quoted in Paragraph 26 for its true content.

27.     Deny the allegations in Paragraph 27 of the Complaint, except admit that Plaintiffs purport to seek to recover damages allegedly suffered by the putative class.

## II.     Jurisdiction and Venue

28.     Paragraph 28 asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 28, except admit that Prudential's headquarters are located in Newark, New Jersey, and state that the Court's Order dismissed all allegations in the Complaint regarding Section 20(b) of the Securities Exchange Act of 1934.

## III.    The Parties

29.     Admit that National Shopmen Fund, Heavy & General Laborers' Locals 472 & 172 Pension Annuity Funds, and Roofers Local No. 149 Pension Fund are named in the Complaint as Lead Plaintiffs in this case, but deny that Lead Plaintiffs were damaged by the conduct alleged in the Complaint, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29 of the Complaint.

30.     Admit that City of Sterling Heights General Employees' Retirement System is named in the Complaint as a Plaintiff in this case, but deny that it was damaged by the conduct alleged in the Complaint, and deny knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30 of the Complaint.

31.     Admit the allegations in Paragraph 31 of the Complaint.

32.     Defendants admit the allegations contained in the first six sentences of Paragraph 32 of the Complaint, and further admit that Mr. Strangfeld made public statements on behalf of Prudential during the Class Period, that he participated in certain conference calls for analysts and investors during the Class Period, and that he signed the Forms 10-Q and 10-K that were filed with the SEC during the Class Period.  Defendants deny the remaining allegations in Paragraph 32.

33.     Defendants admit that during the Class Period Mr. Carbone was Executive Vice President and Chief Financial Officer, that during the class period he participated in certain conference calls for analysts and investors, and that he signed the Forms 10-Q and 10-K that were filed with the SEC during the Class Period.  Defendants deny the remaining allegations in Paragraph 33.

34.     State that no response is required to the allegations in Paragraph 34 of the Complaint, because pursuant to the Court's Order, Mr. Sayre is no longer a defendant in this case.

35.     Defendants admit that Mr. Grier is a member of Prudential's Board of Directors, that he is a member of Prudential's Office of the Chairman, that he currently serves as Prudential's Vice Chairman, and that he has certain oversight

responsibilities for the Finance, Risk Management, Chief Investment, Corporate Actuarial, Investor Relations, Global Business & Technology Solutions, Audit and Global Marketing and Communications functions.  Defendants further admit that during the Class Period Mr. Grier participated in certain conference calls for analysts and investors, and that he signed the Form 10-K that was filed with the SEC during the Class Period.  Defendants deny the remaining allegations in Paragraph 35 of the Complaint.

### IV.    Control Persons

36.    Paragraph 36 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 36.

37.    Paragraph 37 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 37.

38.    Paragraph 38 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 38.

39.    Paragraph 39 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 39.

40.    Paragraph 40 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 40.

41.    Paragraph 41 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 41.

42.    Admit that the language quoted in Paragraph 42 of the Complaint appears in Prudential's Audit Committee Charter prior to its revision on November 5, 2013, respectfully refer the Court to the full text of that document for its true content, and deny any allegation inconsistent with that full text.

43.    Deny the allegations in Paragraph 43 of the Complaint, respectfully refer the Court to the document described therein—Prudential's Audit Committee Charter (prior to its revision on November 5, 2013)—for its true content, and deny any allegation inconsistent with that full text.

44.    Admit that the language quoted in Paragraph 44 of the Complaint appears (without Plaintiffs' added emphasis) in Prudential's Audit Committee Charter prior to its revision on November 5, 2013, respectfully refer the Court to the full text of that document for its true content, and deny any allegation inconsistent with that full text.

## V.     Fraudulent Scheme and False and Misleading Statements During the Class Period[1]

45.     Admit that on May 5, 2010, Prudential issued a press release entitled "Prudential Financial, Inc. Announces First Quarter 2010 Results" (the "May 5, 2010 Press Release"); otherwise deny the remaining allegations in Paragraph 45 of the Complaint; respectfully refer the Court to the full text of the May 5, 2010 Press Release, for its true content; and deny any allegation inconsistent with that full text.

46.     Admit that on May 7, 2010, Prudential filed its first quarter Form 10-Q; further admit that both Mr. Strangfeld and Mr. Carbone signed certifications for the May 7, 2010 Form 10-Q and other certifications on the dates set forth in Footnote 3 to Paragraph 46 of the Complaint; respectfully refer the Court to the full text of those certifications for their true content; and deny any allegation inconsistent with that full text.

47.     Paragraph 47 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 47.

---

[1]     For ease of reference by the Court, Defendants have used the headings and subheadings in Plaintiffs' Amended Complaint.  Defendants' use of these headings and subheadings does not reflect or constitute admission of the factual assertions or legal characterizations they contain.

48.     Admit that on August 4, 2010 Prudential issued a press release entitled "Prudential Financial, Inc. Announces Second Quarter 2010 Results" (the "August 4, 2010 Press Release"); further admit that the language quoted in Paragraph 48 of the Complaint appears (without Plaintiffs' added emphasis) in the August 4, 2010 Press Release; respectfully refer the Court to the full text of the August 4, 2010 Press Release for its true content; and deny any allegation inconsistent with that full text.

49.     Admit that on August 5, 2010, Prudential held its second quarter 2010 earnings conference call, with Mr. Strangfeld, Mr. Carbone, and Mr. Grier participating, but otherwise deny the remaining allegations in Paragraph 49 of the Complaint, and respectfully refer the Court to the full text of the conference call transcript for its true content.

50.     Admit that on August 6, 2010, Prudential filed its second quarter 2010 Form 10-Q, which was signed by Mr. Strangfeld and Mr. Carbone; otherwise deny the remaining allegations in Paragraph 50 of the Complaint; respectfully refer the Court to the full text of the August 6, 2010 Form 10-Q for its true content; and deny any allegation inconsistent with that full text.

51.     Paragraph 51 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 51.

52.    Admit that on November 3, 2010 Prudential issued a press release entitled "Prudential Financial, Inc. Announces Third Quarter 2010 Results" (the "November 3, 2010 Press Release"); further admit that the language quoted in Paragraph 52 of the Complaint appears in the November 3, 2010 Press Release; respectfully refer the Court to the full text of the November 3, 2010 Press Release for its true content; and deny any allegation inconsistent with that full text.

53.    Admit that on November 4, 2010 Prudential held its third quarter 2010 earnings conference call with Mr. Strangfeld and Mr. Carbone participating, but otherwise deny the remaining allegations in Paragraph 53 of the Complaint, and respectfully refer the Court to the full text of the conference call transcript for its true content.

54.    Deny the allegations in Paragraph 54 of the Complaint, except admit that Mr. Strangfeld and Mr. Carbone signed Prudential's November 5, 2010 Form 10-Q and accompanying certifications cited in Footnote 4, respectfully refer the Court to the full text of those documents for their true content, and deny any allegation inconsistent with that full text.

55.    Deny the allegations in Paragraph 55 of the Complaint, respectfully refer the Court to Prudential's November 5, 2010 Form 10-Q for its true content, and deny any allegation inconsistent with that full text.

56.     Paragraph 56 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 56.

57.     Except as set forth herein, Defendants deny the allegations contained in Paragraph 57 of the Complaint, including each sub-paragraph thereof.

a.     Paragraph 57(a) of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57(a);

b.     Paragraph 57(b) of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57(b), and respectfully refer the Court to the California State Controller's January 13, 2012 Press Release, entitled "Controller Reaches Settlement with Prudential Insurance," for its true content;

c.     Paragraph 57(c) of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57(c) and the accompanying Footnote 5, except admit that (*1*) beginning in or about 1998, the addresses for owners of Prudential's intermediate and weekly policies were updated by reference to, among other sources, the Social Security Administration's Death Master File ("DMF"), which resulted in the identification of deceased IWP policyholders and the payment of

approximately $49 million in previously unpaid death benefits; (*2*) in 2002, Prudential undertook an initiative to systematically check its in-force individual life and individual annuity files against the DMF, resulting in the payment or remittance of approximately $370 million in death benefits and interest; (*3*) in 2003, Prudential began periodic checks against the DMF annual updates of its group life insurance files for which it provided recordkeeping services; and (*4*) Prudential continued to perform periodic checks, no less than annually, of its individual life insurance files, individual annuity files, and group life insurance files for which Prudential provides recordkeeping services, against the DMF annual updates, resulting in the discovery and payment or remittance of certain death benefits for which no claim had previously been made;

d.     Paragraph 57(d) of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57(d);

e.     Paragraph 57(e) of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57(e), except admit that (*1*) on or about March 25, 2009 the Florida Department of Financial Services, through a third-party auditor, Verus LLC ("Verus"), initiated an audit of unclaimed property practices at The Prudential Insurance Company of America, Pruco Life Insurance

15

Company, Pruco Life Insurance Company of New Jersey, Prudential Retirement Insurance and Annuity Company, and Prudential Annuities Life Assurance Corporation, (*2*) on November 10, 2009, Verus and Prudential entered into a Non-Disclosure Agreement, and (*3*) on or about January 11, 2010 the Florida Office of Insurance Regulation initiated a market conduct examination of The Prudential Insurance Company of America, Pruco Life Insurance Company, Pruco Life Insurance Company of New Jersey, Prudential Retirement Insurance and Annuity Company, and Prudential Annuities Life Assurance Corporation;

f.   Paragraph 57(f) of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57(f); and

g.   Paragraph 57(g) of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57(g), except admit that in the third quarter of 2011 Prudential announced an overall increase in reserves of $139 million based on the application of new, expanded DMF matching criteria.

58.   Paragraph 58 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 58.

59.     Deny the allegations in Paragraph 59 of the Complaint, except admit that on November 12, 2010 Prudential filed a Prospectus Supplement offering 18,348,624 shares of its common stock with an option for underwriters to purchase up to an additional 2,752,293 shares of common stock at the public offering price less the underwriting discount.  Defendants otherwise respectfully refer the Court to the full text of the November 12, 2010 Prospectus Supplement for its true content, and deny any allegation inconsistent with that full text.

60.     Admit that the language quoted in Paragraph 60 of the Complaint appears in Prudential's November 17, 2010 Press Release, entitled "Prudential Financial, Inc. Completes Public Offering of Common Stock," respectfully refer the Court to the full text of that document for its true content, and deny any allegation inconsistent with that full text.

61.     Admit that the language quoted in Paragraph 61 of the Complaint appears (without Plaintiffs' added emphasis) in Prudential's February 9, 2011 Press Release, entitled "Prudential Financial, Inc. Announces 2010 Results," respectfully refer the Court to the full text of that document for its true content, and deny any allegation inconsistent with that full text.

62.     Paragraph 62 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 62.

17

63.     Deny the allegations in Paragraph 63 of the Complaint, and respectfully refer the Court to the full text of Prudential's Earnings Conference Call Transcript dated February 10, 2011 for its true content.

64.     Deny the allegations in Paragraph 64 of the Complaint, and respectfully refer the Court to the full text of the transcript of the February 16, 2011 Bank of America Merrill Lynch Conference for its true content.

65.     Paragraph 65 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 65.

66.     Admit that Prudential's Form 10-K, filed on February 25, 2011 with the SEC, was signed by the members of the Board of Directors at that time, and was accompanied by certifications signed by Mr. Strangfeld and Mr. Carbone; otherwise deny the remaining allegations in Paragraph 66 of the Complaint; respectfully refer the Court to Prudential's February 25, 2011 Form 10-K for its true content; and deny any allegation inconsistent with that full text.

67.     Paragraph 67 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 67.

68.     Paragraph 68 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 68.

69.     Admit that as of March 1, 2011, Prudential updated the Code of Conduct posted on its website, otherwise deny the remaining allegations in Paragraph 69 of the Complaint, and respectfully refer the Court to Prudential's website for the full text of its Code of Conduct.

70.     Paragraph 70 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 70.

71.     Deny the allegations in Paragraph 71 of the Complaint, respectfully refer the Court to the full text of Prudential's May 4, 2011 Press Release, entitled "Prudential Financial, Inc. Announces First Quarter 2011 Results," and deny any allegation inconsistent with that full text.

72.     Deny the allegations in Paragraph 72 of the Complaint, except admit that (*1*) Prudential's May 6, 2011 Form 10-Q disclosed that the Company was being audited by Verus on behalf of 33 U.S. jurisdictions for compliance with the unclaimed property laws of those jurisdictions (the "Verus Audit"), and (*2*) Mr. Strangfeld and Mr. Carbone signed the May 6, 2011 Form 10-Q. Defendants otherwise respectfully refer the Court to the full text of the May 6,

2011 Form 10-Q for its true content, and deny any allegation inconsistent with that full text.

73.    Deny the allegations in Paragraph 73 of the Complaint, except admit that Mr. Carbone, Mr. Strangfeld, and Mr. Grier were among the executives who participated in Prudential's June 9, 2011 Analyst/Investor Day conference call, and respectfully refer the Court to the complete transcript of the Analyst/Investor Day call for its true content.

74.    Deny the allegations in Paragraph 74 of the Complaint, and respectfully refer the Court to the full text of the document or documents quoted in Paragraph 74 for their true content.

75.    Paragraph 75 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 75.

> **A.    New York State Attorney General and**
> **New York State Department of Financial Services**
> **Issue Subpoenas and Demand Information**

76.    Deny the allegations in Paragraph 76 of the Complaint, except admit that on July 5, 2011, Reuters published an article reporting that the New York Attorney General had issued subpoenas to nine life insurance companies seeking information about their practices in identifying and paying benefits under policies

for deceased customers, and respectfully refer the Court to the full text of the Reuters article for its true content.

77.    Deny the allegations in Paragraph 77, except admit that on or about July 5, 2011, the New York State Insurance Department sent a letter to Prudential and other life insurers licensed in New York, directing each to check the DMF, identify deceased policyholders, and pay previously unpaid death benefits. Defendants otherwise respectfully refer the Court to the full text of the New York State Insurance Department's July 5, 2011 Letter for its true content.

78.    Deny the allegations in Paragraph 78 of the Complaint, and respectfully refer the Court to the full text of the July 17, 2011 *Buffalo News* article, entitled "Improved research ordered of insurers; Hundreds of millions of dollars at stake," for its true content.

79.    Paragraph 79 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 79, and respectfully refer the Court to the full text of the December 7, 2012 *LifeHealthPro* article cited in Footnote 7 to Paragraph 79, entitled "Prudential execs detail winning PR strategies at Executive Conference," for its true content.

80.    Admit that on August 3, 2011, Prudential issued a press release entitled "Prudential Financial, Inc. Announces Second Quarter 2011 Results" (the

"August 3, 2011 Press Release"); further admit that the language quoted in Paragraph 80 of the Complaint appears in the August 3, 2011 Press Release; respectfully refer the Court to the full text of that document for its true content; and deny any allegation inconsistent with that full text.

81.     Paragraph 81 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 81.

82.     Deny the allegations in Paragraph 82 of the Complaint, and respectfully refer the Court to the full text of the Wells Fargo Securities, LLC Report dated August 3, 2011, entitled "PRU: First Look at Q2 Results," for its true content.

83.     Deny the allegations in Paragraph 83 of the Complaint, and respectfully refer the Court to the full text of the Credit Suisse Report dated August 3, 2011, entitled "PRU: Raising Estimates Following Strong Q," for its true content.

84.     Deny the allegations in Paragraph 84 of the Complaint, and respectfully refer the Court to the full text of the J.P. Morgan Report dated August 4, 2011, entitled "Strong 2Q11 Results; Healthy Business Trends Affirm Bullish Outlook," for its true content.

85.     Paragraph 85 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 85.

### B.     Prudential Begins to Disclose the True Facts and Scope and Impact of Regulatory Investigations and Market Conduct Examinations

86.     Admit that on August 5, 2011, Prudential filed its second quarter 2011 Form 10-Q, and further admit that this Form 10-Q (*1*) discussed the Verus Audit; a subpoena issued by the New York Attorney General regarding unclaimed property procedures; an audit by the New York Office of Unclaimed Funds regarding compliance with New York's unclaimed property laws; and receipt of market conduct exam notices and additional inquiries from insurance regulators not participating in the Verus Audit; and (*2*) explained that if proposals then under consideration by legislators and regulators were adopted, the consequences would include additional payments of unreported death claims, payment of abandoned funds to U.S. jurisdictions, and changes to Prudential's practices and procedures for identifying escheatable funds which would impact claim payments and reserves.  Defendants otherwise deny the remaining allegations in Paragraph 86 of the Complaint, respectfully refer the Court to the full text of Prudential's August 5, 2011 Form 10-Q for its true content, and deny any allegation inconsistent with that full text.

23

87.     Deny the allegations in Paragraph 87, except admit that on August 5, 2011, S&P downgraded the U.S. credit rating for the first time in history, and respectfully refer the Court to the full text of *The Atlantic's* August 5, 2011 article, entitled "Why has S&P downgraded the U.S.?", for its true content.

88.     Deny the allegations in Paragraph 88 of the Complaint, except admit that the language quoted in Paragraph 88 appears (without Plaintiffs' added emphasis) in the *Bloomberg* August 5, 2011 article entitled "MetLife says 30 Jurisdictions are Auditing Unpaid Benefits," and respectfully refer the Court to the full text of that article for its true content.

89.     Deny the allegations in Paragraph 89 of the Complaint, except admit that on Friday, August 5, 2011, Prudential's stock closed at $53.99 per share, and on Monday, August 8, 2011, Prudential's stock closed at $48.14 per share.

90.     Deny the allegations in Paragraph 90 of the Complaint, and respectfully refer the Court to the full text of the transcript of the conference quoted in Paragraph 90 for its true content.

### C.     Prudential Announces Pre-Tax Charge to Increase Reserves for Death Master File Investigation

91.     Admit that on November 2, 2011, Prudential issued a press release entitled "Prudential Financial, Inc. Announces Third Quarter 2011 Results" (the "November 2, 2011 Press Release"); further admit that the language in

Paragraph 91 appears (without Plaintiffs' added emphasis) in the November 2, 2011 Press Release; respectfully refer the Court to the full text of that document for its true content; and deny any allegation inconsistent with that full text.

92.   Admit that the language quoted in Paragraph 92 appears (without Plaintiffs' added emphasis) in *Barron's* November 2, 2011 article, entitled "PRU Shares Sink 2%, Hartford 5% in After-Hours; Both Miss Earnings," and respectfully refer the Court to the full text of that article for its true content.  Do not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 92 of the Complaint.

93.   Admit that on November 2, 2011, the *Dow Jones News Service* published an article entitled "MARKET TALK: One Time Items Drag On Prudential," but otherwise deny the remaining allegations in Paragraph 93 of the Complaint, and respectfully refer the Court to the full text of the *Dow Jones News Service* November 2, 2011 article for its true content.

94.   Admit that on November 3, 2011, Prudential held its third quarter 2011 earnings conference call, with Mr. Strangfeld and Mr. Carbone participating, otherwise deny the remaining allegations in Paragraph 94 of the Complaint, and respectfully refer the Court to the full text of the conference call transcript for its true content.

95.     Admit that on November 3, 2011, J.P. Morgan issued a report entitled, "Reported Results Noisy but Operating Trends Healthy," otherwise deny the remaining allegations in Paragraph 95 of the Complaint, and respectfully refer the Court to the full text of J.P. Morgan's report for its true content.

96.     Admit that on November 3, 2011, Credit Suisse issued a report entitled "PRU: Strong Japan Results Offsets Weaker U.S.," otherwise deny the remaining allegations in Paragraph 96 of the Complaint, and respectfully refer the Court to the full text of Credit Suisse's report for its true content.

97.     Admit that on November 4, 2011, Prudential filed its third quarter 2011 Form 10-Q, which disclosed that Prudential had increased reserves in the third quarter by $139 million for certain policies and contracts (including Closed Block policies) that had been active at any time since January 1, 1992, based upon the application of new, expanded DMF matching criteria.  Defendants deny the remaining allegations in Paragraph 97 of the Complaint, and respectfully refer the Court to the full text of the November 4, 2011 Form 10-Q for its true content, and deny any allegation inconsistent with that full text.

98.     Deny the allegations in Paragraph 98 of the Complaint, except admit that the November 4, 2011 Form 10-Q provided additional detail concerning the multi-state audit and market conduct examination disclosed in earlier filings,

respectfully refer the Court to the full text of the November 4, 2011 Form 10-Q for its true content, and deny any allegation inconsistent with that full text.

99.   Deny the allegations in Paragraph 99 of the Complaint, except admit that Prudential's stock closed at $53.67 per share on November 2, $53.05 on November 3, and $52.19 per share on November 4, 2011.

## VI.   Post-Class Period Events

### A.   New York State Department of Financial Services Issues Report on Insurers Compliance with New York Laws

100.   Admit that on December 5, 2011 the New York State Department of Financial Services issued an Interim Report of the Superintendent pursuant to § 308 of the New York Insurance Law, but otherwise deny the remaining allegations in Paragraph 100 of the Complaint, and respectfully refer the Court to the full text of the New York State Department of Financial Services Interim 308 Report dated December 5, 2011 for its true content.

### B.   Prudential Reaches Settlements with States Treasurers Regarding Use of the DMF

101.   Deny the allegations in Paragraph 101 of the Complaint, except admit that in Prudential's Form 8-K filed on January 13, 2012, Prudential disclosed that the Global Resolution Agreement had become effective upon acceptance by at least 20 of the 33 U.S. jurisdictions auditing the Company for compliance with

unclaimed property laws, and respectfully refer the Court to the full text of the Form 8-K for its true content.

102.   Deny the allegations in Paragraph 102 of the Complaint, and respectfully refer the Court to the full text of the California State Controller's January 13, 2012 Press Release, entitled "Controller Reaches Settlement with Prudential Insurance," for its true content.

103.   Deny the allegations in Paragraph 103 of the Complaint, except admit that the multi-state market conduct examination resulted in a Regulatory Settlement Agreement ("RSA") which Prudential signed on or about January 27, 2012, and respectfully refer the Court to the full text of the RSA for its true content.

104.   Deny the allegations in Paragraph 104 of the Complaint, except admit that (*1*) under the RSA, Prudential agreed to pay $17 million to state insurance departments, (*2*) the RSA imposed new, expanded criteria for identifying matches between Prudential's records and the DMF, and (*3*) by February 2, 2012, California, Florida, Illinois, New Hampshire, North Dakota, Pennsylvania, and New Jersey had signed the RSA, and Florida had signed an additional settlement agreement with Prudential (the "Florida Settlement Agreement").   Defendants otherwise respectfully refer the Court to the full text of the RSA and the Florida Settlement Agreement for their true content.

105.   Deny the allegations in Paragraph 105 of the Complaint, except admit that (*1*) the RSA terminates eight years after the date on which it enters into effect, and (*2*) New York and Minnesota did not sign the RSA.  Defendants otherwise respectfully refer the Court to the full text of the RSA for its true content.

106.   Admit that on February 2, 2012 the California Department of Insurance issued a press release concerning a multi-state settlement with Prudential, entitled "'Death Master' Investigation Results in National Settlement with Major Life Insurer" (the "February 2, 2012 Press Release"); otherwise deny the remaining allegations in Paragraph 106 of the Complaint; and respectfully refer the Court to the full text of the February 2, 2012 Press Release for its true content.

107.   Deny the allegations in Paragraph 107 of the Complaint, and respectfully refer the Court to the full text of the April 23, 2012 press release issued by Governor Andrew M. Cuomo, entitled "Governor Cuomo Announces DFS Investigation into Life insurers Recovers More than a Quarter Billion Dollars in Unpaid Benefits for Consumers Nationwide," for its true content.

## VII.   Prudential's Financial Statements Were Materially Misstated in Violation of GAAP and SEC Disclosure Rules

108.   Paragraph 108 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 108.

109.   Paragraph 109 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 109, except admit that (*1*) Prudential agreed to pay $17 million to state insurance departments pursuant to the RSA, and (*2*) in the Form 10-Q filed for the third quarter of 2011, Prudential announced a $99 million charge to increase reserves in the "Corporate and Other operations" segment and a $40 million charge to increase reserves in the "Closed Block Business" segment, both based on the application of new, expanded DMF matching criteria.

### A.    Prudential Failed to Disclose Loss Contingencies and Legal Proceedings in Violation of GAAP and SEC Disclosure Rules

110.   Paragraph 110 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 110, except admit that (*1*) in March 2009, the Florida Department of Financial Services, through third-party auditor Verus, initiated an audit of Prudential's unclaimed property practices, (*2*) Prudential disclosed the existence of the Verus Audit, and the possibility that it could result in changes to reserves in its May 6, 2011 Form 10-Q, and (*3*) the Florida Attorney General initiated a market conduct examination of Prudential in July 2011.

111.   Paragraph 111 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 111.

### 1.   SEC Regulations S-K Item 103 "Legal Proceedings"

112.   Paragraph 112 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 112, and respectfully refer the Court to the full text of Regulation S-K Item 103 for its true content.

113.   Paragraph 113 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 113.

### 2.   ASC 450 "Contingencies"

114.   Paragraph 114 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 114, and respectfully refer the Court to the full text of the documents described therein for their true content.

115.   Paragraph 115 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the

allegations in Paragraph 115, and respectfully refer the Court to the full text of the documents described therein for their true content.

        3.      <u>SEC Regulation S-K Item 303:</u>
                <u>Management's Discussion and Analysis</u>

116.   Paragraph 116 of the Complaint asserts legal conclusions, to which no response is required.   To the extent a response is required, Defendants deny the allegations in Paragraph 116, and respectfully refer the Court to the full text of the documents described therein for their true content.

**B.     Prudential Understated Life Insurance
        Claim Reserves in Violation of GAAP**

117.   Paragraph 117 of the Complaint asserts legal conclusions, to which no response is required.   To the extent a response is required, Defendants deny the allegations in Paragraph 117, and respectfully refer the Court to the full text of ASC 944 for its true content.

118.   Paragraph 118 of the Complaint asserts legal conclusions, to which no response is required.   To the extent a response is required, Defendants deny the allegations in Paragraph 118, and respectfully refer the Court to the full text of the "Audit and Accounting Guide for Life and Health Insurance Entities" for its true content.

119.   Paragraph 119 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 119.

120.   Deny the allegations in Paragraph 120 of the Complaint.

### C.   The Misstatements Identified Above Were Material to Prudential's Financial Statements

121.   Paragraph 121 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 121, and respectfully refer the Court to the full text of SEC Staff Accounting Bulletin No. 99 for its true content.

122.   Paragraph 122 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 122.

123.   Paragraph 123 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 123.

## VIII. Loss Causation/Economic Loss Relevant to Section 10(b) Exchange Act Violations

124.   Paragraph 124 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 124.

125.   Paragraph 125 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 125.

126.   Paragraph 126 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 126.

127.   Deny the allegations in Paragraph 127 of the Complaint.

128.   Deny the allegations in Paragraph 128 of the Complaint, except admit that Prudential's May 6, 2011 Form 10-Q disclosed the Verus Audit, respectfully refer the Court to the full text of the May 6, 2011 Form 10-Q for its true content, and deny any allegation inconsistent with that full text.

129.   Admit that on August 5, 2011 Prudential filed its second quarter 2011 Form 10-Q , but otherwise deny the remaining allegations in Paragraph 129 of the Complaint, respectfully refer the Court to Prudential's August 5, 2011 Form 10-Q for its true content, and deny any allegation inconsistent with that full text.

130.   Admit that on the same day that Prudential filed its August 5, 2011 Form 10-Q, S&P announced its unprecedented downgrade of the U.S. credit rating.

131.   Deny the allegations in Paragraph 131 of the Complaint, except admit that on Friday, August 5, 2011, Prudential's stock closed at $53.99 per share, and on Monday, August 8, 2011, Prudential's stock closed at $48.14 per share.

132.   Admit that on November 2, 2011, Prudential issued the November 2, 2011 Press Release, otherwise deny the remaining allegations in Paragraph 132, respectfully refer the Court to the full text of the November 2, 2011 Press Release for its true content, and deny any allegation inconsistent with that full text.

133.   Deny the allegations in Paragraph 133 of the Complaint, and respectfully refer the Court to the full text of Prudential's Earnings Conference Call Transcript dated November 3, 2011 for its true content.

134.   Deny the allegations in Paragraph 134 of the Complaint, except admit that Prudential's stock closed at $53.67 per share on November 2, and $53.05 on November 3, 2011.

135.   Paragraph 135 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 135.

136.   Admit that on November 4, 2011, Prudential filed its third quarter Form 10-Q, but otherwise deny the remaining allegations in Paragraph 136 of the

35

Complaint, respectfully refer the Court to the full text of Prudential's November 4, 2011 Form 10-Q for its true content, and deny any allegation inconsistent with that full text.

137.  Admit that Prudential's stock price closed at $52.19 per share on November 4, 2011.

## IX.    No Safe Harbor

138.  Paragraph 138 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 138.

139.  Paragraph 139 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 139.

## X.    Applicability of Presumption of Reliance: Fraud on the Market

140.  Paragraph 140 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 140.

141.  Paragraph 141 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the

allegations in Paragraph 141, except admit that Prudential filed periodic public reports with the SEC.

### XI.    Class Action Allegations

142.    Admit that Plaintiffs purport to assert claims on behalf of a putative class as described in Paragraph 142, and neither admit nor deny the remaining allegations in Paragraph 142, as they assert legal conclusions to which no response is required.

143.    Paragraph 143 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 143, except admit that as of January 31, 2011, Prudential had 484 million shares of common stock outstanding.

144.    Paragraph 144 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 144.

145.    Paragraph 145 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 145.

146.    Paragraph 146 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, upon information and belief, Defendants deny the allegations in Paragraph 146.

147.   Paragraph 146 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 146.

## COUNT I

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against Prudential and the Individual Defendants

148.   Defendants repeat and re-allege each of the responses to Paragraphs 1 through 147 as though they were fully set forth here.

149.   Paragraph 149 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 149.

150.   Paragraph 150 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 150.

151.   Paragraph 151 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 151.

152.   Paragraph 152 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 152.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act
### Against Prudential and the Individual Defendants[2]

153.   Defendants repeat and re-allege each of the responses to Paragraphs 1 through 152 as though they were fully set forth here.

154.   Paragraph 154 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants state that the Court's Order dismissed all allegations of violations of Section 20(b) of the Exchange Act, and otherwise deny the allegations in Paragraph 154.

155.   Paragraph 155 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 155.

156.   Paragraph 156 of the Complaint asserts legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 156.

## ANSWER TO PRAYER FOR RELIEF

Defendants deny that Plaintiffs are, or any plaintiff class is, entitled to the relief requested or to any relief, and deny any and all other allegations of the Complaint except as specifically admitted above.

---

[2]   The heading set forth in the Amended Complaint is revised here to reflect the Court's Order dismissing all allegations of violations of Section 20(b) of the Exchange Act.

## JURY DEMAND

Defendants admit that Plaintiffs demand a trial by jury.

## ADDITIONAL DEFENSES

As additional defenses, Defendants allege, assert, and state the following, which apply to each and every cause of action asserted in the Complaint to which such defense may be applicable.  By virtue of alleging these further defenses, Defendants do not assume any burden of proof, persuasion, or production not otherwise legally assigned to them.  Defendants also do not concede that facts contrary to one or more of the statements that follow would support liability as to any or all of them.  Defendants assert and expressly reserve all rights to assert any and all other defenses as appropriate, including as may be revealed during the course of discovery.

## FIRST DEFENSE

The Complaint fails to state any claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, laches, and/or estoppel.

## THIRD DEFENSE

Defendants provided accurate and complete disclosure and fully satisfied their disclosure obligations as a matter of law.  Among other things, Defendants

expressly and timely disclosed the existence of various audits, state inquiries, and investigations into Prudential's compliance with unclaimed property laws and Prudential's practices for identifying unreported deceased policyholders. Defendants also expressly timely disclosed the possibility that these audits and investigations could result in changes to Prudential's reserves.

## FOURTH DEFENSE

Plaintiffs' claims are barred in whole or in part because Defendants did not make any statements that were false or misleading when made.

## FIFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because Defendants did not omit any material facts necessary to make any statements made by Defendants not false or misleading.

## SIXTH DEFENSE

Plaintiffs' claims are barred in whole or in part because any alleged misrepresentations were not material as a matter of law.

## SEVENTH DEFENSE

Defendants are not liable, because the alleged misstatements were forward-looking statements, were identified as such, and were accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ from those in the forward-looking statements. Such alleged misstatements

are not actionable under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-5(c)(1)(A), and the bespeaks-caution doctrine.

## EIGHTH DEFENSE

Defendants are not liable, because the alleged misstatements are not actionable under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-5(c)(1)(B), because the statements were forward-looking and Defendants did not have actual knowledge that the statements were false or misleading.

## NINTH DEFENSE

Defendants are not liable for the alleged misstatements of reserves, because the statements cited in the Complaint were opinions and estimates, not facts, and are therefore not actionable under Section 10(b) of the Exchange Act or SEC Rule 10b-5.

## TENTH DEFENSE

Plaintiffs cannot establish scienter.

## ELEVENTH DEFENSE

Plaintiffs cannot establish transaction causation.

## TWELFTH DEFENSE

Plaintiffs cannot establish loss causation.

## THIRTEENTH DEFENSE

Plaintiffs cannot establish reliance.

## FOURTEENTH DEFENSE

Defendants are not liable for control person liability under Section 20(a) of the Exchange Act, because neither they nor their subordinates directly or indirectly induced any act or acts alleged to constitute a violation of Section 10(b) of the Exchange Act or SEC Rule 10b-5.

## FIFTEENTH DEFENSE

Defendants are not liable because the alleged misrepresentations and omissions in the Complaint did not affect the market price of Prudential securities.

## SIXTEENTH DEFENSE

Plaintiffs' alleged losses arise from a decline in share price that was not the result of any material misrepresentation or actionable omission by Defendants, or were otherwise caused or contributed to by factors other than any alleged misrepresentation or omission for which Defendants may be responsible.

## SEVENTEENTH DEFENSE

To the extent Plaintiffs have suffered damages, such damages must be offset by Plaintiffs' gains on their holdings of Prudential securities.

## EIGHTEENTH DEFENSE

Plaintiffs failed to mitigate damages.

*      *      *

**WHEREFORE,** Defendants respectfully request judgment dismissing the Complaint in its entirety and awarding costs and attorneys' fees, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Edwin G. Schallert
_____

Edwin G. Schallert
Natalie L. Reid
Erica M. Davila
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
(212) 909-6000

/s/ Daniel C. Fleming
_____

Daniel C. Fleming
WONG FLEMING
821 Alexander Road, Suite 200
P.O. Box 3663
Princeton, New Jersey  08543
(609) 951-9520

*Attorneys for Defendants Prudential Financial, Inc., John R. Strangfeld,    Richard J. Carbone,    and Mark B. Grier*

Dated:  April 4, 2014

24081542

44