COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel for Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>PRUDENTIAL FINANCIAL, INC., et al.,<br><br>     Defendants. | No. 2:12-cv-05275-SDW-MCA<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO COMPEL VERUS FINANCIAL LLC TO PRODUCE SUBPOENAED DOCUMENTS<br><br>MOTION DATE:  July 7, 2014 |

944896_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   RELEVANT PROCEDURAL HISTORY ....................................................1

III.  BACKGROUND TO THE MOTION ............................................................2

      A.    The Underlying Litigation.....................................................................2

            1.    Market Conduct Examination ....................................................3

            2.    Global Resolution Agreement.....................................................4

            3.    Regulatory Settlement Agreement ..............................................6

      B.    The Subpoena Served on Verus ............................................................8

IV.  ARGUMENT...................................................................................................9

      A.    Verus Has an Obligation to Produce Documents Pursuant to
            Federal Rule of Civil Procedure 26......................................................9

            1.    The Information Sought Through the Subpoena Is Highly
                  Relevant ......................................................................................9

            2.    Plaintiffs are Entitled to Discovery from Non-Parties..............11

            3.    Plaintiffs' Document Requests Are Narrowly Tailored
                  and Present No Undue Burden.................................................13

      B.    The Official Information Privilege Does Not Apply and Verus
            Has Made No Attempt to Justify Its Invocation ..................................16

      C.    The Confidential Communications Privilege Does Not Apply
            and the Discovery Confidentiality Order Entered by This Court
            Provides More Than Adequate Protection for Verus'
            Confidentiality Concerns.....................................................................18

V.   CONCLUSION..............................................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Coffeyville Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*,
   No. 4:08MC00017 JLH, 2008 U.S. Dist. LEXIS 91224
   (E.D. Ark. Nov. 6, 2008) ...................................................................12

*Covia P'ship v. River Parish Travel Center, Inc.*,
   No. 90-3023, 1991 U.S. Dist. LEXIS 17647
   (E.D. La. Dec. 4, 1991) .....................................................................19

*EEOC v. FAPS, Inc.*,
   No. 10-3095 (PGS), 2012 U.S. Dist. LEXIS 65591
   (D.N.J. May 10, 2012) .................................................................16, 17

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*,
   202 F.R.D. 418 (E.D. Pa. 2001) .........................................................19

*In re Bell Commc'ns Research*,
   No. 5-96CV45, 1997 U.S. Dist. LEXIS 191
   (S.D.N.Y. Jan. 13, 1997) ....................................................................19

*In re Grand Jury Proceedings*,
   103 F.3d 1140 (3d Cir. 1997) .............................................................20

*In re Honeywell Int'l, Inc. Sec. Litig.*,
   230 F.R.D. 293 (S.D.N.Y. 2003) .......................................................13

*In re Vivendi Universal*,
   No. 02 Civ. 5571 (RJH) (HBP), 2009 U.S. Dist. LEXIS 55864
   (S.D.N.Y. July 1, 2009) .....................................................................13

*JAB Distribs., LLC v. London Luxury, LLC*,
   No. 09-CV-5831, 2010 U.S. Dist. LEXIS 109178
   (N.D. Ill. Oct. 13, 2010).....................................................................19

*Keybank Nat'l Ass'n v. Tracey Huen Brennan & Co.*,
   No. 05-4734 (RBK), 2005 U.S. Dist. LEXIS 31063
   (D.N.J. Dec. 2, 2005) .........................................................................13

**Page**

*Malibu Media, LLC v. Doe*,
    No. 12-2077, 2012 U.S. Dist. LEXIS 105768
    (E.D. Pa. July 30, 2012) ...................................................................9

*OMS Invs., Inc. v. Leb. Seaboard Corp.*,
    No. 08-2681 (AET), 2008 U.S. Dist. LEXIS 94165
    (D.N.J. Nov. 18, 2008) ..................................................................15

*Pacitti by Pacitti v. Macy's*,
    193 F.3d 766 (3d Cir. 1999) ............................................................9

*Pearson v. Miller*,
    211 F.3d 57 (3d Cir. 2000) ............................................................20

*Silverman v. Motorola*,
    No. 07 C 4507, 2010 U.S. Dist. LEXIS 65442
    (N.D. Ill. June 30, 2010) ...............................................................13

*Software Rights Archive, LLC v. Google, Inc.*,
    No. 09-017-JJF, 2009 U.S. Dist. LEXIS 43835
    (D. Del. May 21, 2009) .............................................................11, 12

*State v. RPI Energy Mid-Atl. Power Holdings, LLC*,
    No. 5:07-cv-05298, 2013 U.S. Dist. LEXIS 9538
    (E.D. Pa. Jan. 24, 2013) ................................................................16

*TattleTale Portable Alarm Sys. v. Calfee, Halter & Griswold, LLP*,
    No. 11-7013 (JLL), 2012 U.S. Dist. LEXIS 50102
    (D.N.J. Apr. 10, 2012) ..................................................................11

*Torres v. Kuzniasz*,
    936 F. Supp. 1201 (D.N.J. 1996) ...............................................16, 19

*United States v. O'Neill*,
    619 F.2d 222 (3d Cir. 1980) ..........................................................16

- iii -

**Page**

*United States v. Pechiney Plastics Packaging, Inc.*,
    No. 09-5692 (PGS), 2013 U.S. Dist. LEXIS 37640
    (D.N.J. Mar. 19, 2013) ........................................................................17

*United States v. Rozet*,
    183 F.R.D. 662 (N.D. Cal. 1998) ......................................................16

*Wyeth v. Abbott Labs.*,
    No. 08-230 (JAP), 2011 U.S. Dist. LEXIS 63409
    (D.N.J. June 13, 2011) ........................................................................15

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b) ....................................................................................................2
    §78t(a) ....................................................................................................2

Federal Rules of Civil Procedure
    Rule 26 ................................................................................................1, 9
    Rule 26(b)(1) ..........................................................................................9
    Rule 26(b)(5)(A)(ii) .............................................................................19
    Rule 26(f) ............................................................................................1, 2
    Rule 34 ..................................................................................................11
    Rule 37 ....................................................................................................1
    Rule 45 ..............................................................................................1, 11

New Jersey Statutes Annotated
    §2A:84A-22 ..........................................................................................18

## I.      INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26, 37 and 45, and Local Civil Rules for the United States District Court District of New Jersey 16.1(b) and 37.1, Lead Plaintiffs National Shopmen Pension Fund, Heavy & General Laborers' Locals 472 & 172 Pension and Annuity Funds, and Roofers Local No. 149 Pension Fund (collectively, "Plaintiffs") respectfully move the Court for an order compelling Verus Financial LLC ("Verus") to search for and produce documents responsive to Plaintiffs' Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated March 12, 2014, served on Verus on March 19, 2014 (the "Subpoena").  Declaration of Shawn A. Williams in Support of Lead Plaintiffs' Motion to Compel Verus Financial LLC to Produce Subpoenaed Documents ("Williams Decl."), Ex. A.

As set forth below, Verus possesses information that is critically relevant to Plaintiffs' claims in this action.  Thus, Plaintiffs hereby move this Court to enter an order compelling Verus to: (i) produce all documents responsive to Plaintiffs' Subpoena; and (ii) complete production of these documents by August 1, 2014.

## II.     RELEVANT PROCEDURAL HISTORY

On February 6, 2014, the United States District Court for the District of New Jersey issued an order denying defendants' motion to dismiss this case.  Dkt. No. 34. The parties filed a Joint Case Management and Federal Rule of Civil Procedure 26(f)

Conference Statement on March 7, 2014 (Dkt. No. 40) and exchanged Initial

Disclosures on April 7, 2014.  The Court issued a Pretrial Scheduling Order on April

11, 2014.  Dkt. No. 48.  The fact discovery cutoff date is June 1, 2015.  *Id.*

## III.   BACKGROUND TO THE MOTION

### A.   The Underlying Litigation

Plaintiffs allege that Prudential Financial Inc. ("Prudential" or the "Company")

and three of its executive officers[1] violated §§10(b) and 20(a) of the Securities

Exchange Act of 1934.  ¶28.[2]  Plaintiffs further allege that during the Class Period

(May 5, 2010 through November 4, 2011), defendants issued financial statements that

materially overstated income and understated expenses by failing to both account and

reserve for known liabilities associated with policyholders whom Prudential knew had

died, but for whom Prudential had failed to make the death benefit payments owed.

¶12.  As alleged, Prudential ignored known deaths, including those listed on the Social

Security Administration's Death Master File ("SSA-DMF"),[3] for purposes of

reporting liabilities and setting reserves, which would have required the Company to

---

[1]   The Individual Defendants in this action include three of its executive officers:
Chief Executive Officer, President and Chairman John R. Strangfeld, Chief Financial
Officer Richard J. Carbone and Vice Chairman of Financial Management Mark B.
Grier.

[2]   Unless otherwise noted, all "¶_" and "¶¶_" references are to the Amended
Complaint for Violation of Federal Securities Laws (Dkt. No. 22) (the "Complaint").

[3]   The SSA-DMF is a file that contains information about individuals with Social
Security numbers whose deaths were reported to the SSA from 1962 to the present.

pay beneficiaries or escheat funds to states and to report materially higher reserves and lower income.  ¶¶57(a)-(g), 105-113.

For years, Prudential failed to take the required reserve charges incurred by liabilities for unpaid death benefits, thereby understating reserves and artificially inflating earnings.  ¶108.  At the end of the Class Period, Prudential announced that it had been forced to take a $139 million charge to earnings for policies that were active as far back as 1992 in connection with unpaid claims.  ¶97.  The Complaint alleges that each of these facts was known but concealed by the Company.  ¶¶108(a)-(b).

### 1.    Market Conduct Examination

As early as 2009, multiple state regulators launched a wholesale investigation, or market conduct examination, into the unclaimed property practices of Prudential and other large insurance companies.  A market conduct examination or multi-state examination is an examination of a company's settlement practices, procedures and policy administration relating to claims, including the company's efforts to identify the owners and beneficiaries of unclaimed proceeds.  ¶103.  Verus, a privately held company that claims to "reunite people with their unclaimed property" by auditing insurance companies for escheatable funds and helping states locate rightful owners, conducted an audit of defendant Prudential's unclaimed property practices on behalf of multiple state regulators.  ¶¶57(e), 103.

As part of this audit, Verus collected data from both Prudential and participating states and matched the data against the SSA-DMF to determine amounts owed by Prudential to unpaid beneficiaries and the states. *See* ¶¶102, 106 (detailing how Verus assisted California in locating 1,000 Prudential policies for individuals in California who had been dead for more than 15 years).

Using the information obtained and a unique patented computer program that matches insurance company files with the SSA-DMF, Verus then performed analyses of amounts owed and reported those amounts to the relevant state agencies. Williams Decl., Ex. B. Thus, Verus has already compiled evidence that is highly relevant to Plaintiffs' claims that Prudential overstated its revenues by concealing amounts owed to unpaid beneficiaries. ¶¶57(a)-(g), 70, 103, 107.

### 2. Global Resolution Agreement

In January 2012, Prudential entered into the Global Resolution Agreement ("GRA") with 20 states to investigate, report and remit unclaimed property to the states in accordance with their respective unclaimed property laws. ¶101; Williams Decl., Ex. C. In May 2012, Prudential described its participation in the GRA in a Form 10-Q filed with the U.S. Securities and Exchange Commission ("SEC"):

> In January 2012, a Global Resolution Agreement entered into by [Prudential] and a third party auditor [Verus] became effective upon its acceptance by the unclaimed property departments of 20 states and jurisdictions. Under the terms of the Global Resolution Agreement, the third party auditor [Verus] acting on behalf of the signatory states will compare expanded matching criteria to the [SSA-DMF] to identify

- 4 -

deceased insureds and contract holders where a valid claim has not been made.

Williams Decl., Ex. D.

Pursuant to the GRA, Prudential was required to provide Verus with the data necessary for Verus to identify all unclaimed property required to be reported and remitted to the signatory states with respect to life insurance policies, annuity contracts and retained asset accounts that were in force at any time during the period January 1, 1992 through December 31, 2010. *Id.*, Ex.C at 6, 21. Prudential provided Verus with names of insureds, annuitants, annuity contract owners and retained asset account owners. *Id.* at 21. Prudential also provided Verus with access to its administrative systems to obtain records relating to the proceeds within the scope of the audit in order to enable Verus to test the completeness and accuracy of all records provided by Prudential. *Id.* Verus continues to have access to data and systems, as well as access to Prudential personnel designated to respond to Verus inquiries. *Id.*

Verus uses the information obtained to match annuity contract owners and retained asset account owners against the SSA-DMF. *Id.* at 12, 16-17. Verus then computes the results of its matches and compiles the information in monthly "Unclaimed Property Reports"[4] sent to Prudential. *Id.* at D-1 - D-2. The UPRs set

---

[4]   The GRA defines "Unclaimed Property Report," or "UPR," as "a report prepared and submitted to the Company by Verus to identify property that Verus has determined to be payable to a Signatory State by the Company. The UPRs will be

forth the procedure by which Prudential and Verus determine the amounts owed to

beneficiaries.  Specifically, the UPRs are designed to accomplish the following:

> (i)    Identify proceeds owed to beneficiaries, to be provided to Prudential on the first day of every calendar month;[5]

> (ii)   Allow Prudential 30 to 45 days to review each UPR in order to identify all proceeds that it "agrees" are subject to escheatment, as well as any exceptions it may have;[6]

> (iii)  Generate reports of property to be escheated on the last calendar day of each month (after the conclusion of a due diligence process set forth in the GRA), followed ten days later by the payment of all proceeds identified.

*Id.* at B-1 - B-5, D-2.

### 3.    Regulatory Settlement Agreement

On February 2, 2012, the multi-state investigation resulted in a national

settlement, the Regulatory Settlement Agreement ("RSA"), between multiple state

regulators and Prudential.  As a result, the following requirements were placed on

Prudential:

> (i)    Prudential must regularly check the SSA-DMF to determine whether any
>
> of its life insurance policyholders, owners of annuities, and holders of
>
> retained asset accounts have died.  ¶¶104-106.

---

delivered by Verus according to the formats described in Schedule C [to the GRA]." *Id.* at 6.

[5]  *Id.*, Schedule B at B-1 - B-5.

[6]  *Id.*, Schedule D at D-2.

944896_1

    (ii)    If Prudential finds that a policyholder has died, Prudential must conduct a thorough search for beneficiaries, using all contact information in its records and obtained via online search and locator tools.  ¶¶104-105.

    (iii)    If beneficiaries cannot be located, Prudential must turn those proceeds over to the states as required by each respective state's unclaimed property laws.  *Id.*

Williams Decl., Ex. E at 8-10.

The RSA applied prospectively and prescribed procedures for Prudential to compare its records to the SSA-DMF and identify unclaimed death benefits.  *Id.* at 8-11.  Moreover, it required Prudential to share applicable policyholder information across its lines of business.  *Id.* at 19.  It further required Prudential to conduct due diligence to determine deceased's beneficiaries or next of kin and to provide regular reports to Prudential.  *Id.*  To the extent beneficiaries are unable to be located or unidentifiable, Prudential is required to remit death payments to the states in accordance with their respective unclaimed property laws.  *Id.*

The audits of Prudential leading to both settlement agreements, the GRA and the RSA, were conducted by Verus.  ¶104.  Indeed, as demonstrated by Verus' contract with California, Verus was paid handsomely (10.5% of any unclaimed property remitted to the states) for the audits it performed on behalf of state agencies. Williams Decl., Ex. F at 1; *see also id.*, Ex. B at 5.

- 7 -

**B.      The Subpoena Served on Verus**

On March 19, 2014, Plaintiffs served Verus with the Subpoena requesting the production of documents or information relating to: (i) the joint market conduct examination and/or multi-state examination by state regulators into Prudential's procedures relating to death benefit claims; (ii) Prudential's unclaimed property and escheatment practices; and (iii) Prudential's use or non-use of the SSA-DMF. Williams Decl., Ex. A.

On May 1, 2014, Verus responded to the Subpoena by objecting broadly to all of Plaintiffs' requests on the basis of the official information privilege and the confidential communications privilege, while also claiming that Plaintiffs' requests were overly broad and unduly burdensome given Verus' status as a third party in this litigation. *Id.*, Ex. G.  Despite Plaintiffs' repeated requests, Verus refuses to explain the bases for its assertion of the identified privileges or to provide any legal authority for their applicability.  *Id.*

In an effort to resolve this dispute, Plaintiffs and Verus conferred on March 25, 2014, April 29, 2014 and May 12, 2014, in accordance with Local Civil Rule 37.1(a)(1).  *Id.*, ¶2 & Exs. H - J.  During these discussions, Plaintiffs asserted that because Verus had already collected and compiled the information electronically, the burden on Verus to produce the information should be minimal.  *Id.*  Plaintiffs also offered to extend the deadline for production in a further effort to reduce burden.  *Id.*

On April 29, 2014 and May 13, 2014, Plaintiffs sent letters to Verus summarizing their position and attempting in good faith to resolve discovery issues without Court intervention.  Williams Decl., Exs. I - J.  Save for its document retention policy, however, Verus remains steadfast in its refusal to produce even electronic documents that are plainly relevant to the litigation.

## IV.    ARGUMENT

### A.    Verus Has an Obligation to Produce Documents Pursuant to Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Pacitti by Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) (the Federal Rules "allow broad and liberal discovery"); *Malibu Media, LLC v. Doe*, No. 12-2077, 2012 U.S. Dist. LEXIS 105768, at *24 (E.D. Pa. July 30, 2012) ("The scope of discovery in federal litigation is broad.").

### 1.    The Information Sought Through the Subpoena Is Highly Relevant

There can be no dispute as to relevance.  Documents concerning Verus' investigation of Prudential's unclaimed property practices, escheatment practices and use or non-use of the SSA-DMF are central Plaintiffs' allegations. ¶¶54, 57(a)-(c), 68, 77-79, 86, 100.  Plaintiffs allege that Prudential had access to and used the SSA-DMF for purposes that would inflate its financial statements but failed to use it for purposes

- 9 -

of paying out benefits to policyholder beneficiaries upon notice of the death of life insurance policyholders. *See, e.g.*, ¶107. The states tasked Verus with auditing this precise issue; thus, Verus serves as a central repository for the state and Company information needed to generate amounts owed. ¶¶57(e), 72, 86.

As a result of Verus' audit, compilation and analysis of information collected from the states and Prudential, states have been successful in identifying and recovering millions in unclaimed funds. Williams Decl., Ex. B at 3. For example, Verus assisted the California State Controller's Office ("CSCO") with identifying more than 1,000 Prudential policies being held for individuals in California who had been dead for more than 15 years. ¶102; *see also* Williams Decl., Ex. F. According to California Controller John Chiang, the CSCO found that Prudential had direct knowledge of deaths and failed to notify the beneficiaries. ¶57(b). Such information bears on the element of scienter in this case as it pertains directly to Plaintiffs' allegations of Prudential's knowledge of deaths and nonpayment to beneficiaries. ¶¶15-16, 26, 57(b).

Accordingly, pursuant to the GRA and the RSA, Verus has already collected records identifying policyholders, their dates of death as cross-referenced on the SSA-DMF, beneficiaries and dollar amounts owed or potentially owed by Prudential to the beneficiaries. This information plainly supports the element of scienter to the extent the Complaint alleges that Prudential knowingly or recklessly failed to make

- 10 -

payments to beneficiaries by ignoring information readily accessible via the SSA-DMF, thereby inflating its earnings.  ¶¶57(f), 119, 126.

### 2.   Plaintiffs are Entitled to Discovery from Non-Parties.

Verus' objection that it is a non-party is misplaced.  Verus' status as a non-party in this litigation does not change the foregoing relevance standard for discoverable information.  Fed. R. Civ. P. 45 (Notes of Advisory Committee on Rules – 1991 Amendment) ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."); *see also TattleTale Portable Alarm Sys. v. Calfee, Halter & Griswold, LLP*, No. 11-7013 (JLL), 2012 U.S. Dist. LEXIS 50102, at *7 (D.N.J. Apr. 10, 2012) (same); *see also Software Rights Archive, LLC v. Google, Inc.*, No. 09-017-JJF, 2009 U.S. Dist. LEXIS 43835, at *6-*7 (D. Del. May 21, 2009) (acknowledging 1991 Advisory Committee Note to Rule 45 imposes same discovery obligations on non-party).

Verus' refusal to produce documents based upon its assertion that Plaintiffs may obtain this information from Prudential and each of the states individually is similarly misplaced.[7]  As the GRA and RSA illustrate, Verus serves as a liaison between Prudential and the states.  Williams Decl., Ex. C at 4, 6, 8-11.  In conducting

---

[7]   Notwithstanding Plaintiffs' March 12, 2014 Subpoena, to date, Prudential has yet to produce any substantive information.  Indeed, it took Prudential almost three months to produce organizational charts.

its audit, Verus receives documents/information from Prudential and from the state regulators/agencies.  Verus uses this information and its unique technology to compile the UPRs, which contain information regarding amounts payable to the signatory states and beneficiaries.  *Id.*, Ex. B at 6; *id.*, Ex. C at 1, 6, Schedules C & D; *id.*, Ex. E at 10, ¶4(a), 19-20.  Neither Prudential nor the states are in possession of complete compilations and summaries of all such data.  Indeed, as noted by Walter Graham, the chief of the Florida Bureau of Unclaimed Property, "Florida itself and most other states simply do not have the manpower to do what Verus does."  *Id.*, Ex. B at 5.  The entire audit staff in the State of Florida is five people; they do not have the manpower or capability needed to perform an audit of this magnitude.  *Id.* Nor do most other states.  *Id.*

Verus alone is in possession of both state and Prudential data and analyses thereof.  And to the extent there is some duplication in the productions of Verus, Prudential, and/or the states, "'there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party.'" *Software Rights*, 2009 U.S. Dist. LEXIS 43835, at *6 (quoting *Coffeyville Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*, No. 4:08MC00017 JLH, 2008 U.S. Dist. LEXIS 91224, at *5 (E.D. Ark. Nov. 6, 2008)).  Plaintiffs are certainly entitled to use the

evidence produced by a non-party to probe and challenge that produced by defendants.

Further, third-party auditors are routinely required to produce documents during discovery in securities fraud actions. *See, e.g.*, *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 300-01 (S.D.N.Y. 2003) (granting plaintiffs' motion to compel documents from third-party auditor PricewaterhouseCoopers); *see also Silverman v. Motorola*, No. 07 C 4507, 2010 U.S. Dist. LEXIS 65442, at *17 (N.D. Ill. June 30, 2010) (granting in part plaintiffs' motion to compel KPMG to produce documents); *In re Vivendi Universal*, No. 02 Civ. 5571 (RJH) (HBP), 2009 U.S. Dist. LEXIS 55864, at *31-*32 (S.D.N.Y. July 1, 2009) (denying Ernst & Young's motion to reconsider order compelling production of audit documents).  In this action, Verus has a more prominent role than that of a typical auditor because here, Verus was charged on behalf of multiple states with auditing the very practices, and only those practices, alleged to have given rise to Prudential's fraud.

### 3. Plaintiffs' Document Requests Are Narrowly Tailored and Present No Undue Burden

Verus has not explained how Plaintiffs' requests for production could be reasonably construed as overbroad. *Keybank Nat'l Ass'n v. Tracey Huen Brennan & Co.*, No. 05-4734 (RBK), 2005 U.S. Dist. LEXIS 31063, at *4 (D.N.J. Dec. 2, 2005) ("the party asserting objections to a request for discovery bears the burden of demonstrating specifically how the request is vague or overly broad").  Indeed,

944896_1

Plaintiffs' requests are narrowly tailored to procure information relevant to the allegations in the Complaint relating to Prudential's knowing or reckless failure to use the SSA-DMF to make payments owed to beneficiaries, thereby materially misleading investors by understating reserves and overstating earnings. ¶¶58, 68, 108(b), 109, 119-121, 123.

For example, Request No. 1 in the Schedule A to the Subpoena asks for "[a]ll documents and communications relating to the State Investigations and any Defendant." Williams Decl., Ex. A at 11. This request is directly tied to the Complaint's allegation that Prudential was being examined by Verus on behalf of 20 jurisdictions for compliance with the unclaimed property laws of these jurisdictions, and to the allegation that this examination and its results impacted Prudential's financial results. *See, e.g.*, ¶¶72, 86, 88, 98, 110.

Request No. 2 seeks all documents and communications relating to Prudential's unclaimed property and escheatment practices, including but not limited to Prudential's use or non-use of the SSA-DMF. Williams Decl., Ex. A at 11. This request is directly tied to the Complaint allegation that Prudential routinely ignored known policyholder deaths identified on the SSA-DMF and failed to pay beneficiaries monies owed to them or escheat unclaimed property to states. *See* ¶126.

Request Nos. 3 and 4 call for documents relating to communications between Verus and defendants, as well as documents and communications with or relating to

Verus and governmental entities concerning defendants, including, for example, the SEC and the Department of Justice.  Williams Decl., Ex. A at 11.  These requests are narrowly tailored because all such communications would have arisen by virtue of Verus being tasked with examining Prudential's failure to make payments owed to beneficiaries and the states.  Because Verus' engagement was limited to this single issue, which forms the very basis of Plaintiffs' Complaint, and because Plaintiffs specifically alleged that Prudential was subject to investigations by governmental entities, all such communications are relevant.

Moreover, "'bare allegations of burden will not suffice where the information requested is 'entirely relevant to' the party's claims and the subpoena is 'appropriately limited.'"'  *Wyeth v. Abbott Labs.*, No. 08-230 (JAP), 2011 U.S. Dist. LEXIS 63409, at *21 (D.N.J. June 13, 2011)[8]; *see also OMS Invs., Inc. v. Leb. Seaboard Corp.*, No. 08-2681 (AET), 2008 U.S. Dist. LEXIS 94165, at *6 (D.N.J. Nov. 18, 2008) ("The party moving to quash has the heavy burden of demonstrating the unreasonableness or oppressiveness of the subpoena.").  Verus has made no attempt to show that compliance with the Subpoena is unduly burdensome because it is not.  The information sought has already been collected and compiled electronically; thus, its production can be made with relative ease.

---

[8]   Citations and footnotes are omitted throughout unless otherwise indicated.

944896_1

**B.    The Official Information Privilege Does Not Apply and Verus Has Made No Attempt to Justify Its Invocation**

The official information privilege, also known as the "deliberative process privilege," "'rests on the policy of protecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated. The purpose of the privilege is to prevent injury to the quality of agency decisions which could result from premature or indiscriminate disclosure of such deliberations.'" *State v. RPI Energy Mid-Atl. Power Holdings, LLC*, No. 5:07-cv-05298, 2013 U.S. Dist. LEXIS 9538, at *2-*3 (E.D. Pa. Jan. 24, 2013).

This privilege is inapplicable to Verus for several reasons. First, the privilege must be formally claimed by the head of the department which has control over the matter, after actual personal consideration by that officer. *See Torres v. Kuzniasz*, 936 F. Supp. 1201, 1210 (D.N.J. 1996) (privilege "must be asserted by the head of the agency claiming the privilege"). "[P]rivate parties can neither assert nor waive the privilege." *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998). Thus, Verus may not claim the privilege because it is not the head of an agency or a governmental entity. *EEOC v. FAPS, Inc.*, No. 10-3095 (PGS), 2012 U.S. Dist. LEXIS 65591, at *76-*77 (D.N.J. May 10, 2012); *United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980) (claim of privilege by city attorney on behalf of city inappropriate).

- 16 -

Second, the party asserting the official information privilege must submit "'a declaration stating the precise reasons for reserving the confidentiality of the [document] and identifying and describing the documents to which the privilege is asserted.'" *EEOC*, 2012 U.S. Dist. LEXIS 65591, at *76-*77. Verus has failed to provide Plaintiffs with any such declaration or affidavit.

Third, "'[t]o qualify for protection under this privilege, a document must meet two requirements: (1) the document must be 'pre-decisional', . . . [meaning that it] must have been received by the [governmental] decision-maker on the subject of the decision prior to the time the decision [was] made, and (2) the document must be 'deliberative', meaning the document was the result of a consultive process.'" *Id*. at *19. Purely factual material is not protected. *See United States v. Pechiney Plastics Packaging, Inc.*, No. 09-5692 (PGS), 2013 U.S. Dist. LEXIS 37640, at *35-*36 (D.N.J. Mar. 19, 2013). Verus has failed to provide Plaintiffs with a specific designation and description of the documents claimed to be privileged, in a log or otherwise. *Id*. Verus has likewise failed to demonstrate that any of the information requested by Plaintiffs is "pre-decisional" or "deliberative." *EEOC*, 2012 U.S. Dist. LEXIS 65591, at *19.

Indeed, it is not. The information requested by Plaintiffs is purely factual. It consists of data and other communications relating to Prudential's unclaimed property and escheatment practices acquired by Verus during its audit of Prudential, as

- 17 -

referenced in the GRA and RSA.  Specifically, Plaintiffs expect the information to include data provided by Prudential and the states to Verus, including the identification of policyholders, their beneficiaries, actual policies and amounts paid, as well as information generated by Verus through its matching with the SSA-DMF as to amounts withheld and all related communications.  Plaintiffs do not expect Verus to possess any documents reflecting the deliberations of governmental decision-makers as that is not the information required by the GRA and RSA to be provided to Verus, and certainly could not be generated by Verus.  *See supra* §§III.A.2. & III.A.3.

Thus, considering the foregoing, Verus' blanket assertion of the narrow official information privilege is inappropriate as it cannot be invoked by a private, non-governmental entity and it does not apply to the purely factual material sought here.

### C.   The Confidential Communications Privilege Does Not Apply and the Discovery Confidentiality Order Entered by This Court Provides More Than Adequate Protection for Verus' Confidentiality Concerns

In response to the Subpoena, Verus has improperly and without any authority asserted a blanket "confidential communications" privilege.  The "confidential communications" privilege in New Jersey refers to a spousal privilege wherein "[n]o person shall disclose any information made in confidence between such person and his or her spouse unless both shall consent to the disclosure . . . ."  N.J. Stat. Ann. §2A:84A-22.  Such a privilege is plainly inapplicable here.  As the party asserting the privilege, Verus has failed to meet its burden of proving the applicability and non-

- 18 -

waiver of the privilege asserted.[9]   *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001).  In any event, as referenced in §III.E., *infra*, the Discovery Confidentiality Order provides more than adequate protection for any confidential information possessed by Verus.

Moreover, non-disclosure agreements, intended to preserve confidentiality, are not a basis for resisting discovery.  *Covia P'ship v. River Parish Travel Center, Inc.*, No. 90-3023, 1991 U.S. Dist. LEXIS 17647, at *2 (E.D. La. Dec. 4, 1991) ("Parties may not foreclose discovery by contracting privately for the confidentiality of documents."); *In re Bell Commc'ns Research*, No. 5-96CV45, 1997 U.S. Dist. LEXIS 191, at *10 (S.D.N.Y. Jan. 13, 1997) (noting that permitting parties to use non-disclosure agreements to resist document production would "clearly impede 'the truth-seeking function of discovery in federal litigation'").  Any production by Verus will be afforded the ample protections set forth in the Stipulation and Discovery Confidentiality Order adopted by the Court on May 27, 2014.  Dkt. No. 52 *In re Bell Commc'ns*, 1997 U.S. Dist. LEXIS 191, at *8; *JAB Distribs., LLC v. London Luxury, LLC*, No. 09-CV-5831, 2010 U.S. Dist. LEXIS 109178, at *11 (N.D. Ill. Oct. 13,

---

[9]   Local Civil Rule 34.1 explicitly places the burden of demonstrating the precise manner in which  documents are privileged upon the party claiming the privilege. Indeed, "[t]he Third Circuit has rejected 'broadside invocation[s] of privilege' which fail to 'designate with particularity the specific documents . . . to which the claim of privilege applie[s].'"  *Torres*, 936 F. Supp. at 1208-09.  Here, Verus has failed to provide a privilege log as required under Fed. R. Civ. P. 26(b)(5)(A)(ii).

2010) (third-party confidentiality agreement does not preclude party from producing documents pursuant to protective order).

Finally, the federal common law simply does not contemplate a confidential communications privilege between state entities and privately-held businesses.  To the extent that Verus asks this Court to recognize a new privilege, the Third Circuit has ruled that new privileges are disfavored.  *Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000); *see also In re Grand Jury Proceedings*, 103 F.3d 1140, 1149 (3d Cir. 1997) (noting that "privileges are disfavored"; "'the public . . . has a right to every man's evidence'"; and "privileges are tolerable 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth'").  "[W]ith very limited exceptions, federal courts have generally declined to grant requests for new privileges."  *Pearson*, 211 F.3d at 67.

As such, this Court should compel Verus to produce the requested documents forthwith.

- 20 -

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter an order compelling Verus to: (1) produce all documents responsive to Plaintiffs' Subpoena; and (2) complete production of these documents by August 1, 2014.

DATED:  June 6, 2014                    Respectfully submitted,

                                        COHN LIFLAND PEARLMAN
                                          HERRMANN & KNOPF LLP
                                        PETER S. PEARLMAN
                                        JEFFREY W. HERRMANN


                                            */s/ Peter. S. Pearlman*
                                        PETER S. PEARLMAN

                                        Park 80 West – Plaza One
                                        250 Pehle Avenue, Suite 401
                                        Saddle Brook, NJ  07663
                                        Telephone:  201/845-9600
                                        201/845-9423 (fax)

                                        Liaison Counsel for Plaintiff

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        SHAWN A. WILLIAMS
                                        AELISH M. BAIG
                                        ARMEN ZOHRABIAN
                                        SUNNY S. SARKIS
                                        DAVID W. HALL
                                        Post Montgomery Center
                                        One Montgomery Street, Suite 1800
                                        San Francisco, CA  94104
                                        Telephone:  415/288-4545
                                        415/288-4534 (fax)

                                        Lead Counsel for Plaintiff

- 21 -

SULLIVAN, WARD, ASHER &
PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

THOMAS J. HART
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, NW,
Suite 450
Washington, DC  20036
Telephone:  202/797-8700
202/234-8231 (fax)

ANDREW F. ZAZZALI, JR.
ZAZZALI, FAGELLA, NOWAK,
KLEINBAUM & FRIEDMAN
One Riverfront Plaza, Suite 320
1037 Raymond Boulevard
Newark, NJ  07102
Telephone:  973/623-1822
973/623-2209 (fax)

Additional Counsel for Plaintiff

- 22 -