

WONG·FLEMING

ATTORNEYS AT LAW

July 14, 2014

*VIA ELECTRONIC FILING*

Magistrate Judge Madeline Cox Arleo
United States District Court
District of New Jersey
Martin Luther King Courthouse
50 Walnut Street, Room 2060
Newark, NJ 07101

> Re:    *City of Sterling Heights General Employees' Retirement System v.*
> *Prudential Financial, Inc.*, No. 2:12-cv-05275-SDW-MCA (D.N.J.)

Dear Judge Arleo:

We represent Defendants Prudential Financial, Inc. ("Prudential"), John R. Strangfeld, Richard J. Carbone, and Mark B. Grier (collectively, "Defendants") in the above matter.  We respectfully submit this letter motion to request that the Court: (i) compel Lead Plaintiffs to serve amended responses to Defendants' discovery requests; (ii) compel Lead Plaintiffs to produce certain documents in response to Defendants' requests for production; and (iii) compel Lead Plaintiffs to serve substantive written responses to Defendants' interrogatories, as detailed below.

**Background**

This is a putative class action brought by purported shareholders of Prudential under the antifraud provisions of the Securities Exchange Act of 1934.  Plaintiffs premise their claims on Prudential's allegedly improper use of the Social Security Administration's Death Master File ("DMF"), a government database of deaths that have been reported to government agencies. Plaintiffs claim that, by not making sufficient use of the DMF to check all of its records in order to discover whether policyholders might have died without filing a claim, Prudential misstated its financial results in 2010 and the first two quarters of 2011.

**Procedural History**

The relevant procedural history is simple.  Lead Plaintiffs have obstructed discovery.

Defendants served their First Set of Interrogatories ("Interrogatories") and First Set of Requests for the Production of Documents ("Document Requests") on April 11, 2014.  On May 14, 2014, Lead Plaintiffs responded.  In their responses to the Document Requests, Lead Plaintiffs did not agree to produce *any* of the requested documents without first meeting and conferring with Defendants.  Instead, Lead Plaintiffs' responses to each request asserted one of three positions: a blanket objection (Request Nos. 9, 11, 12, and 14); a willingness to meet and confer only (Request Nos. 4, 6, 7, 8, 10, and 13); or a willingness to meet and confer and "thereafter" to produce (Request Nos. 1, 2, 3, and 5).  Similarly, in response to several of the Interrogatories, Lead Plaintiffs provided no substantive response, but stated that they were

821 ALEXANDER ROAD, SUITE 200 ♦ P.O. BOX 3663 ♦ PRINCETON, NJ 08543-3663
TEL: (609) 951-9520 ♦ FAX: (609) 951-0270
WWW.WONGFLEMING.COM

CALIFORNIA ♦ DISTRICT OF COLUMBIA ♦ FLORIDA ♦ GEORGIA ♦ IDAHO ♦ INDIANA ♦ MARYLAND
MICHIGAN ♦ NEVADA ♦ NEW JERSEY ♦ NEW YORK ♦ OREGON ♦ PENNSYLVANIA ♦ TEXAS ♦ WASHINGTON
ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED



WONG·FLEMING
ATTORNEYS AT LAW

willing to meet and confer. Specifically, they refused to respond to Interrogatory No. 9; responded to Interrogatory Nos. 1 and 8 only with a willingness to meet and confer; responded to Interrogatory Nos. 3 and 4 with willingness to meet and confer and "thereafter" respond; and answered, at least in part, Interrogatory Nos. 2, 5, 6, and 7. Lead Plaintiffs' Interrogatory responses are not signed or verified by Lead Plaintiffs as required by Fed. R. Civ. P. 33(b)(5).

On May 21, 2014, the parties held a meet-and-confer regarding Defendants' discovery requests. Lead Plaintiffs' position was, *first*, that their Responses had clearly indicated what documents they intended to produce and were not vague; and *second*, that Lead Plaintiffs would not discuss what, if any, documents they would produce in response to specific requests unless Defendants first stated "authority" for the discovery request.

On May 23, 2014, to attempt to narrow the parties' differences, Defendants served their Amended First Set of Requests for the Production of Documents and Amended First Set of Interrogatories.[1] By letter dated June 25, 2014 (Ex. 9), Lead Plaintiffs stated that they "incorporate by reference [their] responses and objections to Defendants' initial discovery requests to Defendants' amended discovery requests." The letter further stated that they "are prepared to meet and confer regarding the amended discovery requests at [Defendants'] convenience."[2] Defendants responded by letter dated June 29, 2014 (Ex. 10), noting that the parties had already met and conferred to attempt to resolve the parties' differences, that Defendants had served Amended Requests in an attempt to address issues that Lead Plaintiffs raised with Defendants' discovery requests, and that Lead Plaintiffs had responded by simply incorporating their prior objections. Defendants thus expressed their intention to raise the parties' dispute over Defendants' discovery requests with the Court.

On July 2, 2014, the parties engaged in an additional meet-and-confer to discuss the Amended Requests and Defendants' intention to raise disputes with the Court. Defendants repeated that Lead Plaintiffs' responses made it difficult to determine what documents, if any, Lead Plaintiffs were agreeing to produce. Lead Plaintiffs' counsel indicated a willingness to produce some documents and offered to share certain positions in a letter, but refused to serve amended responses and objections that would delineate what, if any, documents Lead Plaintiffs agreed to produce in response to the Amended Document Requests or that would respond in substance to the Amended Interrogatories. When counsel for Defendants asked Lead Plaintiffs' counsel why they were willing to memorialize their responses in a letter but not in an Amended Response, Lead Plaintiffs' counsel responded, "One is an Amended Response and one is a letter. One has certain legal obligations associated with them." Lead Plaintiffs' counsel also repeated their position that they would not entertain possible production of any documents or substantive responses to numerous requests unless Defendants cited "authority" for each request.[3] On July 7,

[1] Defendants' Amended Document Requests and Interrogatories are attached as Exhibits 1 and 2. Lead Plaintiffs' responses are attached as Exhibits 3–8.

[2] The circular nature of Plaintiffs' approach is laid bare by the fact that, in response to certain of Defendants' Interrogatories, Plaintiffs stated that they were willing to meet and confer and "thereafter" respond to the Interrogatory – but after the parties did, in fact, meet and confer, Plaintiffs responded by merely adopting their prior responses to the discovery requests, and did not, in fact, respond in substance.

[3] Defendants submit that they are not required to provide Plaintiffs with "authority" for each of their discovery requests. All parties are expected to know their obligations under the law. Defendants have articulated the purpose and relevance of the discovery requests. As Defendants have explained to Lead Plaintiffs numerous

2014, Lead Plaintiffs "memorialized" the July 2, 2014 meet-and-confer in a letter that misrepresented the discussion and suggested that Defendants were being unreasonable.

Until the eve of filing this motion, Lead Plaintiffs did not produce a single page of their own documents in response to Defendants' requests. On Friday evening, July 11, Defendants received notice via email that Lead Plaintiffs were making their *first* production via UPS. The disc arrived today—another example of gamesmanship. Even more astoundingly, today at 7:17 p.m. EDT, Lead Plaintiffs emailed a three-entry "privilege log" to Defendants. The woefully inadequate nature of this log and its time of service further highlight Plaintiffs' unreasonable approach to discovery. Defendants reserve the right to supplement this motion following review of today's production.

**Lead Plaintiffs Should Serve Amended Discovery Responses**

The effect of Lead Plaintiffs' approach to discovery is not merely dilatory. It is already complicating Defendants' ability to respond to Lead Plaintiffs' motion for class certification. Defendants' discovery requests go to core issues relevant to class certification. Indeed, pre-certification discovery is an indispensable tool for class action defendants in ensuring that the lead plaintiffs can fairly and adequately speak for the class. *See In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 380 (S.D.N.Y. 2000) ("Defendants thereafter will be entitled, and indeed required, to discharge their obligation of due diligence to ascertain whether [lead plaintiffs] do in fact meet the qualifications for a Class Representative discussed above and as provided by Rule 23."). Moreover, Defendants' discovery requests bear directly on an array of issues relating to the merits, including issues of materiality, reliance, loss causation and damages.

Because Lead Plaintiffs are unwilling to serve amended responses that unambiguously commit to producing specific categories of documents (and Lead Plaintiffs have only just today made their first production), Defendants cannot know what documents to expect; or even whether to expect *any* documents in response to their specific discovery requests. As a result, Lead Plaintiffs' responses make it difficult for Defendants to identify the areas of disagreement. *See Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 643 (D. Kan. 1999) (sanctioning defendant for not responding after plaintiff "reasonably and appropriately sought clarification of the supplemental responses"); *cf. Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 94 (D.N.J. 2006) (failure to identify the full range of responsive documents "compromised" the meet-and-confer process, justifying sanctions). Particularly where Lead Plaintiffs have intimated that they intend to produce some—but not all—of what was requested, it is impossible for Defendants to gauge where Lead Plaintiffs intend to "draw the line." Indeed, as Lead Plaintiffs' counsel acknowledged during the July 2 meet-and-confer, oral statements and written correspondence do not bind Lead Plaintiffs in the manner that amended responses do. Federal Rule of Civil Procedure 26(g) requires the certification of discovery responses for this specific reason: "The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection." *See* Fed. R. Civ. P. 26(g) Adv. Comm. Note to 1983 Amendment. Lead Plaintiffs should not be permitted to use the meet-and-confer

---

times, and as is evident from even a cursory examination of Defendants' discovery requests, the requests are all relevant to issues relating to class certification and elements of securities claims.



process to make promises that carry no weight. *Adolph Coors Co. v. Am. Ins. Co.*, 164 F.R.D. 507, 517 (D. Colo. 1993) (meet-and-confer rule "is not a device which permits a party to . . . obdurately discuss the matter to death in a vain attempt to avoid going to court").

Defendants respectfully request that the Court order Lead Plaintiffs to serve amended discovery responses, signed and verified by each responding Lead Plaintiff, that clearly delineate those documents that Lead Plaintiffs intend to produce in responses to Defendants' Amended Requests and that provide complete responses to Defendants' Amended Interrogatories.

**Specific Discovery Requests**

Notwithstanding Lead Plaintiffs' refusal to delineate those documents that they intend to produce, they have (at least orally) categorically refused to produce certain documents. Defendants address the current areas of dispute below. We ask that the Court compel production of the requested documents and compel substantive responses to the interrogatories below.[4]

Lead Plaintiffs' Trading History (Doc. Request Nos. 5 & 6; Interrogatory No. 3)

Document Request No. 5 seeks "All documents showing any purchases, holdings, or sales by any Lead Plaintiff of Prudential Common Stock from 2001 to the present." Document Request No. 6 seeks "All documents showing Lead Plaintiff's trading and holding of public securities [from January 1, 2010 to January 31, 2012], including but not limited to brokerage statements." Similarly, Interrogatory No. 3 seeks details regarding Lead Plaintiffs' transactions involving Prudential Common Stock or other Prudential securities from 2001 to the present.

Lead Plaintiffs' initial written responses merely agreed to "meet and confer" regarding the requests and thereafter produce documents or "provide substantive responses." After the May 21 meet-and-confer, Defendants served the Amended Requests. In response, Lead Plaintiffs merely re-adopted their prior responses and objections. During the meet-and-confer, Lead Plaintiffs indicated that they are only willing to consider producing documents in response to Requests 5 and 6 for a period encompassing slightly more than the Class Period: from "some time" in 2009 or 2010 through 90 days after the close of the Class Period (May 5, 2010– November 2, 2011).[5] Lead Plaintiffs have also stated their intent to only produce documents relating to Prudential Common Stock, not other Prudential securities or other public securities.

Defendants are entitled to the requested discovery. A putative class representative's full trading history is relevant to the issues of typicality and adequacy. Any irregular, atypical, or unusual trading pattern would set any proposed class representative apart from the other members of the potential class and might expose them to unique defenses that might not be available with respect to other members of the proposed class. Courts have ordered discovery covering a wide period with respect to this type of request. *Degulis v. LXR Biotech., Inc.*, 176 F.R.D. 123, 127 (S.D.N.Y. 1997) (authorizing discovery relating to any and all brokerage

---

[4]     Defendants assume for the purposes of this motion that Lead Plaintiffs intend to produce documents in response to Document Request Nos. 1, 2, 3, 4, 10, and 13. Defendants request that Lead Plaintiffs confirm whether that understanding is incorrect.

[5]     Today's production does not even cover Plaintiffs' allegedly agreed-to period. Heavy & General Laborers produced account statements for some months between May 2010 and December 2011; National Shopmen for some months between May 2010 and January 2012; and Roofers Local No. 149 for seven months in 2011.



accounts set up by plaintiff); *In re Painewebber Sec. Litig.*, 151 F.R.D. 248, 248 (S.D.N.Y. 1993) (authorizing discovery of 13 years' worth of stock trading records); *In re ML-Lee Acq. Fund II, L.P. Sec. Litig.*, 149 F.R.D. 506, 508 (D. Del. 1993) (finding plaintiffs' total investment history "relevant to the Court's determination of whether Plaintiffs satisfy the typicality requirement.").

The proposed discovery of the Lead Plaintiffs' investment histories and strategies is also relevant to the merits. The proposed discovery could lead to evidence that would rebut any presumption that Lead Plaintiffs relied upon the integrity of the market. *See In re Grand Casinos*, 181 F.R.D. 615, 620 (D. Minn. 1998); *accord Roseman Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 112 (M.D. Fla. 1996); *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 114 (S.D.N.Y. 1993). Lead Plaintiffs cannot both rely on the fraud-on-the-market theory and impede Defendants' attempts to build an affirmative defense that Plaintiffs did not rely on the integrity of the market price. In addition, a complete understanding of Plaintiffs' purchases and sales of Prudential stock is crucial to determining whether Plaintiffs suffered any injury and can allege any damages.

Moreover, each of the Lead Plaintiffs is a defined-benefit multi-employer retirement plan for members of labor unions and their beneficiaries. Such plans have fiduciary responsibilities under ERISA, and such plans must have a recordkeeping system to track investment flows.[6] The plans should have readily available information about transactions in Prudential securities since Prudential went public in 2001, as well as trading and holding of public securities between 2010 and 2012. Accordingly, Defendants' requests are reasonable, well-founded, and tailored to the purpose of the request. Defendants respectfully request that the Court compel Lead Plaintiffs to produce documents in response to Amended Document Requests Nos. 5 and 6, and compel Lead Plaintiffs to provide a substantive, written response to Amended Interrogatory No. 3.

Lead Plaintiffs' Knowledge of State Investigations or Inside Information About Prudential (Document Request No. 7; Interrogatory Nos. 1 & 4)

Document Request No. 7 seeks "All documents concerning Lead Plaintiffs' discussion, research, or consideration [from January 1, 2010 to January 31, 2012] of state inquiries into insurers' use of the Social Security Death Master File, escheatment, and abandoned property." Interrogatory No. 1 requests that Lead Plaintiffs "State whether you or any relative or business associate has ever been employed by or had any business dealings with Prudential and, if so, identify that person and describe the nature of the employment or business dealing," and Interrogatory No. 4 asks Lead Plaintiffs to "Describe the investigation you undertook concerning the allegations made in the Complaint, if any, prior to engaging counsel in this litigation."

Lead Plaintiffs have given no indication of their intention to respond to these requests. Following the May 21 meet-and-confer, Defendants amended their discovery requests to include a narrower definition of the term "Lead Plaintiffs," in response to Lead Plaintiffs' objections to the breadth of these requests. In response to the Amended Requests, Lead Plaintiffs merely adopted their previous objections.

---

[6] U.S. Dep't of Labor, Meeting Your Fiduciary Responsibilities, http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html.



Lead Plaintiffs' knowledge and awareness of the state investigations into insurance providers' use of the Social Security DMF is relevant to reliance, an essential element of securities fraud, *see, e.g.*, *Erica P. John Fund v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011), as well as the typicality and adequacy of proposed class representatives.  *See Halliburton Co. v. Erica P. John Fund*, 134 S. Ct. 2398, 2416–17 (2014).  Lead Plaintiffs intend to rely on the "efficient market" presumption established in *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988).  Am. Compl. ¶ 140.  If Lead Plaintiffs had direct knowledge of the relevant investigations or had an insider relationship with Prudential (either themselves or through a relative or associate), it would raise questions about their alleged reliance on Prudential's public filings and statements regarding these issues.  Further, such inside knowledge would distinguish Lead Plaintiffs from other members of the proposed class, the majority of which presumably will contend that their only knowledge of the investigations was based upon Prudential's financial disclosures.  This asymmetry would defeat typicality and render any proposed class representative inadequate to represent the class.  *See Beck v. Maximus*, *Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").  Accordingly, Defendants request that the Court compel Lead Plaintiffs to produce documents in response to Request No. 7 and to provide substantive responses to Interrogatory Nos. 1 and 4.

Lead Plaintiffs' Litigation History (Document Request No. 8; Interrogatory No. 6)

Document Request No. 8 requests "All complaint(s) and transcript(s) of depositions you have given in any other securities, breach of fiduciary duty, shareholder derivative, waste of corporate asset litigation, or class action to which you have been a party since April 1, 2004 to present."  Interrogatory No. 6 also seeks information regarding the other actions in which Lead Plaintiffs served as plaintiff.  In response, Lead Plaintiffs have provided the names of cases in which they served as plaintiff, whether they testified, and whether they received any recovery.  Lead Plaintiffs have refused to provide the complaints or deposition transcripts from those actions, claiming that the complaints are public and that Lead Plaintiffs' depositions are irrelevant to this action and subject to confidentiality agreements.[7]

The litigation history of a lead plaintiff is extraordinarily relevant at the class certification stage.  Lead Plaintiffs' litigation history may give rise to an inference that proposed class representatives are, in fact, professional litigants rather than ordinary investors.  This would militate against a finding of their typicality and adequacy with respect to the proposed class.  *See, e.g.*, *Roseman*, 165 F.R.D. at 110, 111 (ordering discovery of plaintiffs' prior deposition transcripts because "plaintiffs' involvement in prior securities litigation is relevant to whether the named representatives can adequately represent the class"); *In re K Mart Corp. Sec. Litig.*, No. 95-75584-DT, 1996 WL 924811, at *5 (E.D. Mich. Dec. 16, 1996) ("A court may consider whether the litigious nature of a putative representative renders him atypical of the class."); *ML-Lee*, 149 F.R.D. at 508 (ordering further inquiry into putative lead plaintiff who had four actions in past two years with same counsel).   "Professional plaintiffs" are not proper class representatives because their unique situation disrupts typicality and adequacy.  *ML-Lee*, 149 F.R.D. at 508; *see also* Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(2)(A)(ii) (2014) (requiring certification by lead plaintiff that she has not "purchase[d] the

---

[7]        Concerns regarding confidentiality are addressed by the Protective Order entered by the Court in this action.



security that is the subject of the complaint . . . in order to participate in any private action arising under this chapter").

This inquiry is also relevant to the merits of securities claims. Professional plaintiffs cannot plead reliance on alleged misstatements through the "efficient market" presumption. *See Roseman*, 165 F.R.D. at 111 ("Thus, defendant may rebut the presumption [of reliance on the market] by showing plaintiffs' true motives for purchasing the stock were not to make money but to initiate 'strike suits.'"); *Murphy v. Hollywood Entm't Corp.*, CIV. 95-1926-MA(LEAD), 1996 WL 393662, at *8 (D. Or. May 9, 1996) ("significant history of securities litigation" sufficient to "raise serious questions relative to the rebuttal of the presumption of reliance which arises with the fraud on the market theory"); *In re Harcourt Brace Jovanovich, Inc., Sec. Litig.*, 838 F. Supp. 109, 111, 114 (S.D.N.Y. 1993) (ordering production of complaints and deposition transcripts, noting that "a named plaintiff's involvement in other securities and class action litigation is also relevant to the issue of reliance"); *Shields v. Smith*, No. C-90-0349 FMS, 1991 WL 319032 (N.D. Cal. Nov. 4, 1991) (plaintiff's suspected motive "to buy a lawsuit" with the purchase of relevant stock, among other factors, created "serious questions concerning the materiality to Plaintiff of the integrity of the market and his reliance on misrepresentations of Defendants in making his decision to purchase"). Accordingly, Defendants request that the Court compel Lead Plaintiffs to produce documents in response to Document Request No. 8 and to provide substantive responses to Interrogatory No. 6.

> Lead Plaintiffs' Initiation of, Involvement with, and Engagement in This Action
> (Document Request No. 9; Interrogatory Nos. 4 & 8)

Document Request No. 9 seeks "All documents concerning communications between the Lead Plaintiffs regarding the decision to jointly apply for Lead Plaintiff status." The Request seeks communications among *Lead Plaintiffs*, not their counsel. Lead Plaintiffs have nonetheless indicated that they believe any discussions falling within Request No. 9 would be privileged, and will not provide any documents in response to this Request.[8]

Interrogatory No. 4 states: "Describe the investigation you undertook concerning the allegations made in the Complaint, if any, prior to engaging counsel in this litigation." Interrogatory No. 8 requests that Lead Plaintiffs "State the first date on which discussions or communications were had with attorneys concerning the initiation of this lawsuit." Lead Plaintiffs indicated in their Interrogatory responses that they would provide a response to Interrogatory No. 4 (but have not done so, despite the fact that their class certification motion was filed on July 11), and indicated only that they were willing to meet and confer regarding Interrogatory No. 8—a response that they reiterated *after* the May 21 meet-and-confer.

Communications among the Lead Plaintiffs regarding the decision to seek lead plaintiff status are highly relevant to adequacy, because such communications provide insight into

---

[8]     Whether any such documents are privileged is irrelevant to the propriety of the request. Even assuming that all requested documents are privileged, the proper response is to so state in Lead Plaintiffs' written responses and produce a privilege log, not to categorically refuse production. *See* Fed. R. Civ. P. 26(b)(5)(A). Lead Plaintiffs' privilege log, however, appears to have only three entries – all relating to Investment Portfolio Monitoring. Due to the belated service of this log, Defendants reserve their rights to file a separate motion regarding the inadequacy of Plaintiffs' purported privileged log.



whether putative lead plaintiffs have "the ability and the incentive to represent the claims of the class vigorously." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988); *In re Vesta Ins. Grp., Inc., Sec. Litig.*, No. CV-98-AR-1407-S, 1999 WL 34831474, at *1 (N.D. Ala. May 28, 1999) (ordering discovery of communications among several plaintiff groups). In addition, such communications may reveal admissions relevant to the merits as well as evidence that the litigation is in fact driven by Lead Plaintiffs' counsel, rather than Lead Plaintiffs' own independent decisions to litigate. If any proposed class representative's counsel is driving the litigation, such proposed representative is not adequate to represent the interests of the class. Defendants' Interrogatories seek information relevant to similar issues, since the absence of any pre-engagement investigation by the Lead Plaintiffs would further the inference that counsel, not Lead Plaintiffs, is "running" the litigation. Indeed, overreaching by counsel was one of the chief concerns that led to the Private Securities Litigation Reform Act of 1995. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 484 (5th Cir. 2001) (adequacy standard must reflect "Congress's emphatic command that competent plaintiffs, rather than lawyers, direct such cases"); *In re Network Assoc., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999) (noting that "Congress singled out the Milberg firm to illustrate" the attorney-driven model of pre-PSLRA securities class actions). This discovery is relevant, and Defendants' discovery requests are targeted to learn more about Lead Plaintiffs' knowledge of the background allegations in this action, initiation of their involvement with this lawsuit, and their engagement in the litigation. If any proposed class representative lacks this knowledge or involvement, it suggests they will be inadequate representatives, and the class should not be certified. Accordingly, Defendants request that the Court compel Lead Plaintiffs to produce documents in response to Request No. 9 and to provide substantive responses to Interrogatory Nos. 4 and 8.

Lead Plaintiffs' Damages (Document Request No. 12; Interrogatory No. 9)

Document Request No. 12 seeks "All documents concerning the methodology used for Lead Plaintiffs' calculation of damages." Interrogatory No. 9 requests that Lead Plaintiffs "Identify the nature and amount of, and facts and data supporting, each and every claim of damages in this action, including a description of *(a)* the method used to calculate the total amount of such damages, *(b)* the source of all facts and data supporting such damages, including any documents on which you relied in calculating damages, *(c)* all persons involved in making such calculations of damages, and *(d)* all persons with knowledge of such damages or any data used to calculate such damages." Lead Plaintiffs have refused to meet and confer regarding these requests, and have objected on the grounds that the requests are untimely, call for information in Defendants' possession, and call for disclosure of privileged material.

Lead Plaintiffs' theory of damages is highly relevant to class certification and to the merits of their claims. If Lead Plaintiffs' losses are not representative, or their proposed method of determining damages is not consistent with their theory of liability, individual questions of damages will overwhelm class-wide proof, since no viable class-wide damages methodology will be before the court. *See In re BP p.l.c. Sec. Litig.*, No. 10-md-2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) (denying class certification because plaintiffs failed to demonstrate that damages could be calculated on a class-wide basis in a way that was still consistent with the plaintiffs' theories of liability); *see also Franco v. Conn. Gen. Life Ins. Co*., No. 07–6039 (SRC), 2014 WL 1415949, at *12 (D.N.J. April 14, 2014) (denying class certification on same grounds in ERISA class action). Accordingly, Defendants request that the Court compel Lead Plaintiffs



to produce documents in response to Document Request No. 12 and to provide substantive responses to Interrogatory No. 9.

Third-Party Discovery (Document Request No. 14)

Lead Plaintiffs have served a blizzard of subpoenas on third parties, including Verus Financial LLC, at least six state regulators, Navigant Consulting, Inc., PriceWaterhouse Coopers (Prudential's auditors), as well as other unclaimed property auditors. Document Request No. 14 seeks "All documents pertaining to a non-party's response to a subpoena issued by Lead Plaintiffs, including but not limited to any productions made to Lead Plaintiffs by a non-party, any objections to the subpoena by the non-party, or any communication indicating that the non-party would not produce any documents or would produce a limited set of documents." Lead Plaintiffs have indicated willingness to produce documents that are actually produced by third parties pursuant to subpoena, but have refused to produce other related communications with those third parties. Lead Plaintiffs have also claimed privilege over such documents.

Communications with the parties under subpoena will serve to properly contextualize the documents actually produced. For example, such communications will make it clear to Defendants whether a third party produced all documents requested; whether it claimed inability to locate certain documents; or whether Lead Plaintiffs elected to accept production of a reduced scope after discussion. Such documents are relevant to this action, are non-privileged, and should be provided to Defendants contemporaneous with such communications. Indeed, courts have recognized that it makes no sense to have a defendant seek through subpoena the same information a plaintiff has requested. *Sharp v. Baltimore City Police Dep't*, No. 11-2888, 2013 WL 937903, at n.1 (D. Md. Mar. 1, 2013) ("[I]t is the better practice—indeed the professional practice—to provide copies, rather than requiring the opposing party to issue its own subpoena, unnecessarily burdening that third party again and unnecessary putting the opposing party to expense and possible delay in the case). Accordingly, Defendants request that the Court compel Lead Plaintiffs to produce documents, including communications with the parties under subpoena, in response to Document Request No. 14.

**Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court direct Lead Plaintiffs to serve amended discovery responses that clearly indicate what documents, if any, Lead Plaintiffs intend to produce in response to each Amended discovery request. Defendants further request that the Court compel Lead Plaintiffs to produce documents responsive to

*Remainder of Page Left Intentionally Blank*



Requests 5, 6, 7, 8, 9, 12, and 14; and provide verified substantive written responses to Interrogatories 1, 3, 4, 8, and 9.

Respectfully submitted,

/s/ Edwin G. Schallert
Edwin G. Schallert
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
T: 212.909.6000
F: 212.909.6836
*Attorneys for Defendants Prudential Financial, Inc., John R. Strangfeld, Richard J. Carbone and Mark B. Grier*

/s/ Daniel C. Fleming
Daniel C. Fleming
**Wong Fleming**
821 Alexander Road, Suite 200
Princeton, NJ 08540
T: 609.951.9520
F: 609.951.0270
*Attorneys for Defendants Prudential Financial, Inc., John R. Strangfeld, Richard J. Carbone and Mark B. Grier*