COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel for Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | No. 2:12-cv-05275-SDW-MCA |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) ) ) | LEAD PLAINTIFFS' OPPOSITION TO NON-PARTY VERUS FINANCIAL LLC'S CROSS-MOTION |
| vs. | ) ) | TO QUASH SUBPOENA TO TESTIFY AT DEPOSITION |
| PRUDENTIAL FINANCIAL, INC., et al., | ) ) ) | MOTION DATE:  August 4, 2014 |
| Defendants. | ) ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................1

II.  FACTUAL BACKGROUND UNDERLYING THE DISCOVERY
DISPUTE ................................................................................3

III.  ARGUMENT ..........................................................................6

    A.  The Information Collected by Verus in Its Investigation of
Prudential Is Critically Relevant to This Case .....................................6

    B.  Verus' Asserted Trade Secret Privilege Does Not Apply.....................9

    C.  Verus Has Not Set Forth Adequate Justification for Importing
an Unspecified State Insurance Code into Federal Common
Law Nationwide ..................................................................14

IV.  CONCLUSION ........................................................................20

957406_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Branzburg v. Hayes*,
　　408 U.S. 665 (1972)...............................................................................17

*Centurion Indus., Inc. v. Warren Steurer & Assocs.*,
　　665 F.2d 323 (10th Cir. 1981) ..............................................................13

*Coca-Cola Bottling Co. v. Coca-Cola Co.*,
　　107 F.R.D. 288 (D. Del. 1985) ..............................................................11

*Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enters., Inc.*,
　　160 F.R.D. 70 (E.D. Pa. 1995)...............................................................12

*Couch v. United States*,
　　409 U.S. 322 (1973)...............................................................................17

*Covia P'ship v. River Parish Travel Ctr., Inc.*,
　　No. 90-3023, 1991 U.S. Dist. LEXIS 17647
　　(E.D. La. Dec. 4, 1991) .........................................................................18

*Dawson v. Ocean Twp.*,
　　No. 09-6274 (JAP), 2011 U.S. Dist. LEXIS 25545
　　(D.N.J. Mar. 14, 2011)........................................................................8, 9

*Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*,
　　443 U.S. 340 (1979)...............................................................................11

*Gabe Staino Motors v. Volkswagen of Am.*,
　　No. 99-5034, 2003 U.S. Dist. LEXIS 3194
　　(E.D. Pa. Feb. 28, 2003) ........................................................................12

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*,
　　202 F.R.D. 418 (E.D. Pa. 2001)........................................................16, 19

*Greet v. Zagrocki*,
　　No. 96-2300, 1996 U.S. Dist. LEXIS 18635
　　(E.D. Pa. Dec. 16, 1996) ........................................................................18

**Page**

*Herbert v. Lando*,
   441 U.S. 153 (1979)...................................................................17

*In re Bell Commc'ns Research*,
   No. 5-96CV45, 1997 U.S. Dist. LEXIS 191
   (S.D.N.Y. Jan. 13, 1997)........................................................18

*In re Grand Jury Impaneled on January 21, 1975*,
   541 F.2d 373 (3d Cir. 1976) ..................................................15

*In re Grand Jury Investigation*,
   918 F.2d 374 (3d Cir. 1990) ...................................................15

*In re Grand Jury Proceedings*,
   103 F.3d 1140 (3d Cir. 1997) .................................................17

*In re Letters Rogatory Issued by Nat'l Court of First Instance
in Commercial Matters etc.*,
   144 F.R.D. 272 (E.D. Pa. 1992)..............................................13

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   No. 06-0620, 2012 U.S. Dist. LEXIS 12319
   (E.D. Pa. Jan. 31, 2012) .........................................................12

*In re Rehberger*,
   No. 13-831, 2013 U.S. Dist. LEXIS 71453
   (D.N.J. May 21, 2013) ..............................................................7

*In re Sealed Case*,
   148 F.3d 1073 (D.C. Cir. 1998).............................................17

*In re Teleglobe Commc'ns Corp.*,
   493 F.3d 345 (3d Cir. 2007) ...................................................19

*In re Tylenol (Acetaminophen) Mktg., Sales Practices &
Prods. Liab. Litig.*,
   No. 14-mc-00072, 2014 U.S. Dist. LEXIS 89981
   (E.D. Pa. July 1, 2014).............................................................7

**Page**

*JAB Distribs., LLC v. London Luxury, LLC*,
   No. 09-CV-5831, 2010 U.S. Dist. LEXIS 109178
   (N.D. Ill. Oct. 13, 2010)........................................................................18

*Jackson v. Harvard Univ.*,
   721 F. Supp. 1397 (D. Mass. 1989),
   *aff'd*, 900 F.2d 464 (1st Cir. 1990) ....................................................15

*Jones v. Derosa*,
   238 F.R.D. 157 (D.N.J. 2006)................................................................8

*Maple Creek Commons Homeowners Ass'n v. State Farm
Fire & Cas. Co.*,
   No. 1:08-cv-00475-TWP-MJD, 2012 U.S. Dist. LEXIS 909
   (S.D. Ind. Jan. 4, 2012) ................................................................19, 20

*Mycogen Plant Sci. v. Monsanto Co.*,
   164 F.R.D. 623 (E.D. Pa. 1996).......................................10, 11, 12, 13

*Oppenheimer Fund v. Sanders*,
   437 U.S. 340 (1978).................................................................................7

*Opperman v. Allstate N.J. Ins. Co.*,
   No. 07-1887 (RMB), 2008 U.S. Dist. LEXIS 95738
   (D.N.J. Nov. 24, 2008)...........................................10, 11, 13, 18

*Pearson v. Miller*,
   211 F.3d 57 (3d Cir. 2000) ...................................................................14

*Rhone-Poulenc Rorer v. Home Indem. Co.*,
   32 F.3d 851 (3d Cir. 1994) .............................................................16, 19

*Rossi v. Standard Roofing*,
   156 F.3d 452 (3d Cir. 1998) .................................................................18

*Sedona Corp. v. Open Solutions, Inc.*,
   249 F.R.D. 19 (D. Conn. 2008) ............................................................13

- iv -

**Page**

*Spencer Sav. Bank v. Excell Mortg. Corp.*,
   960 F. Supp. 835 (D.N.J. 1997) ........................................................15

*Todd v. S. Jersey Hosp. Sys.*,
   152 F.R.D. 676 (D.N.J. 1993).............................................................18

*Trammel v. United States*,
   445 U.S. 40 (1980)..........................................................13, 14, 16, 17

*United States v. Arthur Young & Co.*,
   465 U.S. 805 (1984) ..........................................................................17

*United States v. Pechiney Plastics Packaging, Inc.*,
   No. 09-5692 (PGS), 2013 U.S. Dist. LEXIS 37640
   (D.N.J. Mar. 19, 2013) ......................................................................18

*United States v. Penn*,
   647 F.2d 876 (9th Cir. 1980) .............................................................17

*Univ. of Pa. v. EEOC*,
   493 U.S. 182 (1990).....................................................................14, 17

*Vital State Can., Ltd. v. Dreampak, LLC*,
   303 F. Supp. 2d 516 (D.N.J. 2003) ....................................................10

*Whalen v. Roe*,
   429 U.S. 589 (1977)...........................................................................17

*Williams v. Univ. Med. Ctr. of S. Nev.*,
   760 F. Supp. 2d 1026 (D. Nev. 2010).................................................15

*Zoom Imaging, L.P. v. St. Luke's Hosp. & Health Network*,
   513 F. Supp. 2d 411 (E.D. Pa. 2007)..................................................15

**Page**

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure

    Rule 26 .................................................................................................7, 11

    Rule 26(b)(1) ...........................................................................................6

    Rule 26(b)(5) ....................................................................................18, 19

    Rule 45 .................................................................................................7, 11

    Rule 45(d)(3)(B)(i) .................................................................................9

Federal Rules of Evidence

    Rule 501 ..................................................................................................14

## I.      INTRODUCTION

On March 25, 2014, Lead Plaintiffs National Shopmen Pension Fund, Heavy &

General Laborers' Locals 472 & 172 Pension and Annuity Funds and Roofers Local

No. 149 Pension Fund (collectively, "plaintiffs") served a subpoena for deposition on

Verus Financial LLC ("Verus") seeking testimony on three discrete subjects:

(i) agreements and reports relating to the examination of Prudential's ("Prudential" or

the "Company") unclaimed property and escheatment practices; (ii) Verus' processes

for analyzing Prudential's records of its insureds against the SSA-DMF in connection

with the State Investigations; and (iii) Verus' document retention practices.

Declaration of Aelish M. Baig in Support of Lead Plaintiffs' Opposition to Non-Party

Verus Financial LLC's Cross-Motion to Quash Subpoena to Testify at Deposition

("Baig Decl."), Ex. 1.

The discovery requested is relevant to plaintiffs' allegations and the Company's

defenses.  Verus objected to the subpoena for deposition and has been steadfast in its

refusal to produce a witness to testify.[1]  Memorandum of Law in Support of Non-Party

Verus Financial LLC's Cross-Motion to Quash Subpoena to Testify at a Deposition

(Dkt. No. 71-1).  Plaintiffs sought to meet and confer with Verus regarding the

---

[1]    Previously, on March 12, 2014, plaintiffs caused to be served a Subpoena to
Produce Documents, to which Verus also objected and refuses to produce responsive
documents.  The document requests are the subject of Plaintiffs' Motion to Compel
Verus Financial LLC to Produce Subpoenaed Documents currently pending and set to
be heard with the instant motion on August 4, 2014.  Dkt. No. 56.

objections; however, Verus stated at the outset that due to its concern for its business relationships with Prudential and the states, it would not produce any information responsive to plaintiffs' subpoenas absent a court order (save and except for a copy of its document preservation policy). Declaration of Paul H. Galligan Esq. in Support of Verus' Cross Motion to Quash and in Opposition to Plaintiffs' Motion to Compel Verus to Produce Subpoenaed Documents ("Galligan Decl."), Ex. C; Declaration of Armen Zohrabian in Support of Lead Plaintiffs' Opposition to Non-Party Verus Financial LLC's Cross-Motion to Quash Subpoena to Testify at Deposition, ¶2.

Protection of Verus' business relationship with Prudential, however, is not a valid basis for noncompliance with the subpoena(s). Nor does Verus articulate in its motion to quash any legitimate basis for its failed compliance. Plaintiffs' allegations regarding Verus' investigation of Prudential are core to the Amended Complaint for Violations of Federal Securities Laws (Dkt. No. 22) ("Complaint"). They also formed the basis of  plaintiffs' scienter argument briefed in plaintiffs' opposition to defendants' motion to dismiss, which this Court found adequate in upholding plaintiffs' Complaint and denying defendants' motion to dismiss.[2] To prohibit plaintiffs' discovery on allegations central to their Complaint (¶¶57(e), 68, 80, 101,

---

[2]   Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 29) ("MTD Opp.") at 3-4; Order on Motion to Dismiss (Dkt. No. 34) ("MTD Order") at 1.

103-105)[3] – the allegations regarding Verus' investigation of Prudential – would essentially be to require plaintiffs to prove a significant portion of their case on the Complaint's allegations alone.  The motion to quash should be denied in its entirety.

## II.   FACTUAL BACKGROUND UNDERLYING THE DISCOVERY DISPUTE

Plaintiffs allege that Prudential selectively disregarded deaths listed on the Social Security Administration's Death Master File ("SSA-DMF")[4] in paying death benefits, escheating funds to states, reporting liabilities and setting reserves, and thus knowingly or recklessly reported materially false and misleading earnings and reserve figures.  ¶¶57(a)-(g), 105-113.  Verus thoroughly examined and audited Prudential for precisely this issue on behalf of more than 40 states.  ¶¶57(e), 80, 103, 105.

Verus' examination of Prudential, which commenced in 2009, resulted in the execution of the Global Resolution Agreement ("GRA") and Regulatory Settlement Agreement ("RSA") in December 2011 and February 2012, respectively.  Baig Decl., Exs. 2, 3.

The GRA required Prudential to provide Verus with the data necessary to identify all unclaimed property owed to the signatory states with respect to life insurance policies, annuity contracts and retained asset accounts that were in force at

---

[3]   Unless otherwise noted, all "¶_" and "¶¶__" references are to the Complaint.

[4]   The SSA-DMF is a file that contains information about individuals with Social Security numbers whose deaths were reported to the SSA from 1962 to the present.

any time during the period from January 1, 1992 through December 31, 2010.  *Id.*,
Ex. 2 at 6, 21 & Schedule C.  In accordance with the GRA, Verus was provided with
access to a virtual data room set up by Prudential loaded with raw data including
policyholder information, as well as answers and documents responsive to a series of
detailed requests for information posed by Verus to Prudential.  *See, e.g.*, *id.*; Ex. 4.
Verus also obtained from Prudential and/or the states, escheatment reports identifying
amounts escheated to the states over the years.  With the information obtained, Verus
processed the policy information through the SSA-DMF, identified deceased
policyholders and calculated amounts owed by Prudential to beneficiaries and the
states.  *Id.*, Ex. 2 at 6, 21 & Schedule C.

The RSA required Prudential to compare all of its records against the SSA-
DMF incremental update file on a monthly basis and against the complete SSA-DMF
at least annually to search for potential unclaimed death benefits and otherwise
perform a "Thorough Search" for beneficiaries as specifically defined.  *Id.*, Ex. 3 at 6-
8.  Prudential also agreed to provide to the states leading the multi-state market
conduct examination (California, Florida, Illinois, New Hampshire, New Jersey, North
Dakota and Pennsylvania (collectively, "Lead States")), quarterly reports on the
implementation and execution of the requirements of the RSA for a period of 36
months following the effective date of the RSA (*i.e.*, until February 2015).  *Id.* at 4, 8-
10.  The Lead States are expected to complete the multi-state market conduct

- 4 -

examination within five years of the execution date (*i.e.*, February 2017), with a final review concerning Prudential's compliance with the RSA. *Id.* at 13-14. If that review confirms that the Company has fulfilled its obligations under the RSA, the multi-state examination will then be closed. *Id.*

After analyzing documents and data from Prudential, Verus identified funds subject to remittance to beneficiaries or escheatment to the states in monthly Unclaimed Property Reports in accordance with the GRA and RSA (historical failure to identify deceased policyholders using the SSA-DMF). Baig Decl., Ex. 2 at C-1. Thus, the ultimate findings of the multi-state market conduct investigation are represented in these Unclaimed Property Reports, many of which Prudential refuses to produce in this action. *Id.*, Ex. 5 at 7.

In short, Verus has performed an investigation that uncovered facts and records resulting in the recovery of more than $1.4 billion in unclaimed property for the states and more than $300 million in unclaimed benefits to individuals. Prudential alone had improperly withheld hundreds of millions of dollars. *See, e.g.*, ¶109. These facts and records bear upon plaintiffs' claims that defendants materially overstated earning and understated reserves and thereby artificially inflated Prudential's stock price. ¶¶12, 15-18, 45-75. Nevertheless, plaintiffs have thus far been blocked from receiving the bulk of this information from the various parties in possession of it – Prudential, Verus and the state agencies – and not for lack of effort.

Plaintiffs have sought the information from the original source (Prudential), from Verus, and from certain of the primary states involved in the multi-state market conduct investigation. Prudential conveniently and improperly asserts that all documents dated after January 31, 2012 are irrelevant and on that basis has withheld, for example, most if not all, of the Unclaimed Property Reports showing Verus' findings regarding the amounts Prudential owed as a result of its historical failure to use the SSA-DMF. Baig Decl., Ex. 5 at 7. Prudential also refuses to provide the raw policy data and instead redacted all key personal policyholder data, rendering it virtually worthless. *See, e.g.*, *id.*, Ex. 6. Similarly, Verus refuses to produce testimony (or a single document) on the subject of its investigation without a court order, and the states take the position that they should not be put to the burden of having to produce documents that plaintiffs should be able to obtain from Prudential or Verus. Discovery under the federal rules should not be allowed to devolve into a game of hot potato wherein parties endlessly elude disclosure obligations by simply passing the buck. The buck should stop here and Verus should be ordered to produce relevant testimony and documents.

## III. ARGUMENT

### A. The Information Collected by Verus in Its Investigation of Prudential Is Critically Relevant to This Case

Under Federal Rule of Civil Procedure 26(b)(1), the scope of discovery includes matters that are relevant to any party's claim or defense. "A subpoena may command

[a nonparty to] produce" documents and testimony "regarding any non-privileged matter that is relevant to any party's claim or defense." *See* Fed. R. Civ. P. 45, 26. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978); *accord In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 14-mc-00072, 2014 U.S. Dist. LEXIS 89981, at *6, *17 (E.D. Pa. July 1, 2014); *In re Rehberger*, No. 13-831, 2013 U.S. Dist. LEXIS 71453, at *8-*10 (D.N.J. May 21, 2013).

Here, relevance cannot reasonably be disputed.  The information collected by Verus from Prudential and processed as part of its multi-state market conduct exam goes to the heart of plaintiffs' allegations that defendants knowingly or recklessly issued financial statements that materially overstated income and understated expenses by failing to both account and reserve for known liabilities associated with policyholders identified as deceased on the SSA-DMF.  ¶¶12, 54, 57(a)-(c), 68, 77-79, 86, 100, 107.  The states essentially tasked Verus with investigating the adequacy of the Company's policies and procedures, including its historical use or non-use of the SSA-DMF, to ensure that life insurance and other funds were paid out to beneficiaries of deceased policyholders or remitted to states in accordance with state unclaimed property laws.  Baig Decl., Ex. 2 at 1, 8-9, 16, Schedules C & D; *id.*, Ex. 3 at 1, 3.

Verus' investigation into and findings regarding Prudential's use and non-use of the SSA-DMF are plainly relevant to the element of scienter, *i.e.*, plaintiffs' allegations that Prudential knowingly or recklessly failed to make payments to beneficiaries by ignoring information readily accessible via the SSA-DMF.  ¶¶57(f), 119, 126.  Plaintiffs specifically alleged that Verus' investigation into, and execution of a Nondisclosure Agreement with, Prudential supported a strong inference of scienter.  ¶¶57(e), 103-104.  Plaintiffs further alleged and argued at the motion to dismiss stage that Prudential's ultimate settlements with the states resulting from Verus' investigation (the GRA and RSA), supported a strong inference of scienter.  MTD Opp. at 30-33.  This Court found such allegations to be sufficient.  *See* MTD Order.  To now deny plaintiffs' discovery into the very facts alleged and upheld in support of scienter would be an absurdity.  *See Dawson v. Ocean Twp.*, No. 09-6274 (JAP), 2011 U.S. Dist. LEXIS 25545, at *40 (D.N.J. Mar. 14, 2011) ("'Whether certain documents are relevant is viewed in light of the allegations of the complaint . . . .'") (quoting *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006)).

For example, to the extent that Verus uncovered facts showing that Prudential used the SSA-DMF to stop annuity payments, but not to pay death benefits, this would support plaintiffs' allegations to the same effect.  ¶¶9-10, 57-58, 103-105.  To the extent that Verus communicated in 2009 or 2010 to Prudential that it was likely to owe significant funds to the states or beneficiaries, this would support plaintiffs'

- 8 -

claims that the Class Period financials issued in 2011 were made with knowledge or reckless disregard of their falsity.  *Id*.

Verus essentially serves as a central repository for all of the state and Company information needed to generate amounts owed by Prudential to beneficiaries and the states as a result of the identification of deceased policyholders on the SSA-DMF.  It has collected records identifying policyholders, their dates of death as cross-referenced on the SSA-DMF and beneficiaries, and showing amounts escheated; and it has used all of this information to calculate dollar amounts owed or potentially owed by Prudential to the beneficiaries and states.[5]  These figures as they relate to Prudential, and the information underlying them, bear directly on the extent to which the Class Period financial statements were issued with knowing or reckless disregard of their falsity and should be produced.  ¶¶57(e), 72, 86.

**B.    Verus' Asserted Trade Secret Privilege Does Not Apply**

The provision of the federal rules (Fed. R. Civ. P. 45(d)(3)(B)(i)) providing that quashing a subpoena may be permitted to protect trade secrets does not apply here because plaintiffs' subpoenas to Verus do not seek confidential trade secrets.

---

[5]    For example, according to the California State Controller's Office ("CSCO"), Verus identified more than 1,000 Prudential policies being held for individuals in California who had been dead for more than 15 years.  ¶102; *see also* Baig Decl., Ex. 7.  According to California Controller John Chiang, the CSCO found that Prudential had direct knowledge of deaths and failed to notify the beneficiaries. ¶57(b).

Plaintiffs' subpoenas do not require that Verus disclose how any of Verus' patented computerized algorithms for SSA-DMF matching processes and procedures work.  In any event, Verus conveniently fails to alert the Court that Verus' matching processes and procedures are already in the public domain as they are exhaustively detailed and diagrammed in Verus' public patent application.  Baig Decl., Ex. 8; *see Vital State Can., Ltd. v. Dreampak, LLC*, 303 F. Supp. 2d 516, 525 (D.N.J. 2003) ("whatever the trade secret status of the four potential trade secrets may have been . . . the publication of the patent applications on this date disclosed the information," thereby eliminating the secrecy "essential to preserve trade secret status").  Moreover, the parameters for running SSA-DMF matches (and "Thorough Searches") are also expressly set forth in the GRA and the RSA, which are both in the public domain.  Baig Decl., Ex. 2 at B-1 to B-4 ("Rules for Identifying Death Matches"); *id.*, Ex. 3 at 6-10.

Rather, plaintiffs seek to discover information related to Verus' substantive investigation of Prudential's practices and Verus' findings based on that information regarding amounts owed by Prudential to the states and/or beneficiaries due to Prudential's historical failure to use the SSA-DMF to locate deceased policyholders.

Even if plaintiffs were seeking trade secret information, "[i]t is well-established that there is no absolute privilege protecting trade secrets and similar confidential information from discovery." *Opperman v. Allstate N.J. Ins. Co.*, No. 07-1887 (RMB), 2008 U.S. Dist. LEXIS 95738, at *8 (D.N.J. Nov. 24, 2008); *Mycogen Plant*

*Sci. v. Monsanto Co.*, 164 F.R.D. 623, 626 (E.D. Pa. 1996) ("Although both Rule 26 and Rule 45 protect trade secrets, that protection is not absolute.").   Where the privilege is asserted, the party resisting discovery of trade secrets must demonstrate that the disclosure of the information will be harmful.  *Opperman*, 2008 U.S. Dist. LEXIS 95738, at *8.  "If this is demonstrated the burden shifts to the party seeking disclosure to establish that the requested information is relevant and necessary to the action."  *Id*.  The Court must then "balance the need for the trade secret information against the claim of injury that could result from the disclosure."  *Id*. at *8-*9.  As noted by the U.S. Supreme Court, "'orders forbidding any disclosure of trade secrets or confidential commercial information are rare.  More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties.'"  *Mycogen*, 164 F.R.D. at 626 n.7 (quoting *Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 n.24 (1979)).[6]  Courts must balance the requesting party's "legitimate desire for discovery" with the producing party's "***legitimate fear of financial ruin arising out of that disclosure***."  *Id*. at 626 (emphasis in original).  The balancing test is "'tilted in favor of disclosure'"; thus, "'***discovery is virtually always ordered***.'"  *Id*. at 626 n.7 (quoting *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 292-93 (D. Del. 1985)).

---

[6]   Citations and footnotes are omitted and all emphasis is added unless otherwise indicated.

Here, Verus has not and cannot satisfy its burden of "'show[ing], with specificity, that disclosure will work a clearly defined and serious injury.'" *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 U.S. Dist. LEXIS 12319, at *39-*40 (E.D. Pa. Jan. 31, 2012) (quoting *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enters., Inc.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995)); *see also Gabe Staino Motors v. Volkswagen of Am.*, No. 99-5034, 2003 U.S. Dist. LEXIS 3194, at *6 (E.D. Pa. Feb. 28, 2003); *Composition Roofers*, 160 F.R.D. at 73.  Verus has already exchanged much of the information requested with Prudential and/or the states; and there has been no showing of a specific harm or injury, much less a "*legitimate fear of financial ruin*." *Mycogen*, 164 F.R.D. at 626 (emphasis in original).  As noted above, much of what Verus claims to be trade secrets has already been publicized by virtue of the GRA, RSA and Verus' patent application.[7]  Moreover, to the extent any confidential proprietary information is produced, the Discovery Confidentiality Order (Dkt. No. 52) ("Confidentiality

_____

[7]   Baig Decl., Ex. 8 at 3-8 ("The present invention provides methods, systems and program products that uniquely associate one or more of these non-unique digital footprints with other non-unique footprints, and using the accumulations and groupings of these non-unique footprints provides a unique identification of an individual(s) to the exclusion of all others. . . .  In accordance with one or more embodiments of the invention, at least one of the databases searched is a Federal Death Master File Database."); *see also id*. at 14 (describing various patented steps in extensive detail).

Order") entered in this case, which strictly limits the use of confidential information to the prosecution of this litigation, provides more than adequate protection.[8]

For these reasons, plaintiffs' legitimate interest in "utilizing all rational means for ascertaining truth" in these legal proceedings outweighs the vague, amorphous harm Verus claims will result from infringing on its privacy interest. *See Trammel v. United States*, 445 U.S. 40, 50 (1980).[9]

---

[8] The Confidentiality Order expressly extends to third parties: "Any Named Party to this litigation and any non-party shall have the right to designate as 'Confidential' . . . any information, document, or thing . . . ." Confidentiality Order at 1. It further provides that "[a]ll Confidential information shall be used solely for purposes of the prosecution or defense of this action, shall not be used for any other purpose whatsoever, and shall not be disclosed to anyone except in accordance with the terms of this Discovery Confidentiality Order . . . ." *Id.* at 2.

[9] It is further noted that even if there were trade secret information at issue, "[n]umerous cases have ordered third-parties to produce trade secret information in lawsuits in which they were not directly involved." *Opperman*, 2008 U.S. Dist. LEXIS 95738, at *16-*17 (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (ordering Cybernetic to produce technical operating details of its teaching devices, including software)); *Mycogen*, 164 F.R.D. at 629 (ordering Ecogen to produce information regarding B+ toxin genes or B+ toxins to its competitor, Monsanto); *In re Letters Rogatory Issued by Nat'l Court of First Instance in Commercial Matters etc.*, 144 F.R.D. 272, 279 (E.D. Pa. 1992) (holding mere fact that information contains trade secrets does not make it *per se* undiscoverable and ordering production of such information even where disclosure was argued to threaten national security); *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 24-25 (D. Conn. 2008) (ordering plaintiff to produce the confidential information of third parties in direct competition with defendant).

- 13 -

### C.    Verus Has Not Set Forth Adequate Justification for Importing an Unspecified State Insurance Code into Federal Common Law Nationwide[10]

Verus, by purporting to invoke a privilege on behalf of State agencies, essentially asks this Court to take the unprecedented step of creating an entirely new federal insurance investigation privilege nationwide.  In federal court, federal claims are only subject to federal privileges.  Fed. R. Evid. 501.  Even those are disfavored and strictly construed.  *Univ. of Pa. v. EEOC*, 493 U.S. 182 (1990).  The Supreme Court and Third Circuit have repeatedly admonished federal courts to be exceedingly reluctant, if ever, to recognize new federal privileges.  *See id.*; *Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000) ("with very limited exceptions, federal courts have generally declined to grant requests for new privileges").

New federal privileges can only be recognized, and to a very limited extent, where necessitated by clearly transcendent public interests.  *Trammel*, 445 U.S. at 50

---

[10]  California's attempt to assert a state law privilege was briefed extensively by plaintiffs in Lead Plaintiffs' Opposition to the California Department of Insurance's Motion to Quash before the Honorable Judge William Alsup in the Northern District of California (Baig Decl., Ex. 9), hereby incorporated herein.  Judge Alsup declined to order such an extraordinary measure and instead found plaintiffs' reissuance of the subpoenas would be permitted in the event the relevant information requested cannot be obtained from Prudential.  Order Granting Motion to Quash at 3-4, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. C 14-80161 WHA (N.D. Cal. June 19, 2014) ("If Judge Wigenton finds in the underlying action that plaintiffs are entitled to the evidence but Prudential no longer has the evidence or stonewalls production of the evidence, then the Court may consider enforcing a fresh subpoena . . . .").

(holding new privileges may be recognized only to the extent that the exclusion of relevant evidence clearly furthers a "public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth"); *accord Williams v. Univ. Med. Ctr. of S. Nev.*, 760 F. Supp. 2d 1026, 1030 (D. Nev. 2010) ("Federal courts should not create and apply a new privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence.'"); *Jackson v. Harvard Univ.*, 721 F. Supp. 1397, 1406-07 (D. Mass. 1989) ("[T]he burden on the proponent of a new privilege is very high," met "only if it serves some transcendent public good."), *aff'd*, 900 F.2d 464 (1st Cir. 1990); *accord In re Grand Jury Impaneled on January 21, 1975*, 541 F.2d 373, 382 (3d Cir. 1976) (rejecting creation of new required government reports privilege); *Zoom Imaging, L.P. v. St. Luke's Hosp. & Health Network*, 513 F. Supp. 2d 411 (E.D. Pa. 2007) (rejecting creation of new self-critical analysis privilege despite various states' adoption of similar privileges); *Spencer Sav. Bank v. Excell Mortg. Corp.*, 960 F. Supp. 835 (D.N.J. 1997) (same).

With every evidentiary privilege, the burden of establishing the privilege rests on the party asserting it. *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990) ("a party who asserts a privilege has the burden of proving its existence and applicability"). With that overarching burden comes, *inter alia*, the constituent burdens of demonstrating that the purported privilege exists, applies to the contested

information and has not been waived. *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001) ("the party asserting the privilege has the burden of proving its applicability ***and non-waiver***") (emphasis in original) (citing *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994)).

Here, Verus cannot meet its tremendously high burden. First, Verus concedes, as it must, that none of the vast array of state law privileges it purports to invoke has ever been recognized under federal common law; and Verus provides no genuine, let alone transcendent, public need or interest in having this federal Court create an entirely new federal privilege based on varying state insurance codes. Indeed, Verus conveniently ignores the standards for creating a new federal privilege altogether. *Trammel*, 445 U.S. at 50. Verus does not even attempt to provide this Court with the state law statute[s] it would have the Court import into the nationwide federal common law but rather leaves the Court to guess as to which (California's? Pennsylvania's?) should be adopted as the new federal insurance investigation privilege to be applied nationwide. Each state's provision (to the extent it has one) is different. This alone certainly justifies Judge Alsup's decision to steer far clear of addressing the privilege issue even where the argument was raised by the actual holder of the privilege (the California Department of Insurance) and with respect to a single identifiable statute, the California Insurance Code provision. *See supra* n.9.

In order to import a state law privilege into the federal common law, this Court would first have to determine which of the 50 states' varying laws is most appropriate and then make the complex and comprehensive findings necessary to justify its adoption for the first time into the federal common law to be applied nationwide. This is an impossibly arduous task given the scant record supplied by Verus here. Indeed, the Supreme Court and circuit courts have routinely rejected new privileges involving institutions and relationships far more critical and fundamental to the public interest than the convenience of any single state's insurance regulator. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665 (1972) (no reporter-source identity privilege); *Whalen v. Roe*, 429 U.S. 589 (1977) (no physician-patient privilege); *Herbert v. Lando*, 441 U.S. 153 (1979) (no editorial process privilege); *Univ. of Pa.*, 493 U.S. 182 (no academic peer review privilege); *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984) (no accountant work-product privilege); *Couch v. United States*, 409 U.S. 322, 335 (1973) (no accountant-client privilege); *see also Trammel*, 445 U.S. at 53 (narrowing husband-wife privilege); *United States v. Penn*, 647 F.2d 876 (9th Cir. 1980) (en banc) (no parent-child privilege); *In re Grand Jury Proceedings*, 103 F.3d 1140 (3d Cir. 1997) (no parent-child privilege); *In re Sealed Case*, 148 F.3d 1073 (D.C. Cir. 1998) (no Secret Service privilege).

Second, even if the privilege did exist under the federal common law, Verus is not the holder of the privilege and cannot invoke it; nor does a nondisclosure

agreement confer a privilege.[11] *See Greet v. Zagrocki*, No. 96-2300, 1996 U.S. Dist. LEXIS 18635, at *3 n.2 (E.D. Pa. Dec. 16, 1996) ("Only the holder of a privilege can claim it . . . ."); *Todd v. S. Jersey Hosp. Sys.*, 152 F.R.D. 676, 688 (D.N.J. 1993) ("defendants themselves must hold the privilege inviolate if they seek to rely upon it").

Third, Verus' blanket assertion of privilege, without a privilege log, fails to establish its applicability in this case. *United States v. Pechiney Plastics Packaging, Inc.*, No. 09-5692 (PGS), 2013 U.S. Dist. LEXIS 37640, at *47 (D.N.J. Mar. 19, 2013) (under Federal Rule of Civil Procedure 26(b)(5), "providing a privilege log for all documents withheld on the basis of privilege is a basic discovery requirement"); *see also Rossi v. Standard Roofing*, 156 F.3d 452, 477 n.16 (3d Cir. 1998) ("Rule 26(b)(5) . . . requires that a party claiming a privilege 'describe the nature of the documents, communications, or things not produced or disclosed in a manner that . . .

---

[11] *See Opperman*, 2008 U.S. Dist. LEXIS 95738, at *16-*18 (rejecting "the proposition that parties to a licensing agreement can immunize relevant information from discovery"); *Covia P'ship v. River Parish Travel Ctr., Inc.*, No. 90-3023, 1991 U.S. Dist. LEXIS 17647, at *2 (E.D. La. Dec. 4, 1991) ("Parties may not foreclose discovery by contracting privately for the confidentiality of documents."); *In re Bell Commc'ns Research*, No. 5-96CV45, 1997 U.S. Dist. LEXIS 191, at *10 (S.D.N.Y. Jan. 13, 1997) (noting that permitting parties to use non-disclosure agreements to resist document production would "clearly impede 'the truth-seeking function of discovery in federal litigation'"); *JAB Distribs., LLC v. London Luxury, LLC*, No. 09-CV-5831, 2010 U.S. Dist. LEXIS 109178, at *11 (N.D. Ill. Oct. 13, 2010) (third-party confidentiality agreement does not preclude party from producing documents pursuant to protective order).

will enable other parties to assess the applicability of the privilege or protection.'") (quoting Fed. R. Civ. P. 26(b)(5)). It is inconceivable that all responsive information in Verus' possession is privileged, and it is impossible to ascertain which information is privileged and which is not without a log. For example, at deposition, plaintiffs could potentially ask a slew of questions regarding the impetus and timing of, and key players involved in, Verus' investigation of Prudential before being hired by the states, which would not and could not be covered by any state insurance privilege at all. Such information would certainly be relevant to Prudential's knowledge of likely payments owed and thus bears directly on scienter.

Fourth, the various states' sharing of information with the third-party auditor Verus, and wide publication of the fruits of Verus' investigation,[12] waive any privilege even if its applicability could be established. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) ("Disclosing a communication to a third party unquestionably waives the privilege."); *see also Greene*, 202 F.R.D. at 423 ("the party asserting the privilege has the burden of proving its . . . ***non-waiver***") (emphasis in original) (citing *Rhone-Poulenc*, 32 F.3d at 862).

Finally, even if it were clear that one of the vast array of varying state law privileges did apply, it would not divest this Court of its power to order the production of privileged documents. Such an issue was raised in *Maple Creek Commons*

---

[12] *See, e.g.*, Baig Decl., Ex. 10; *see supra* n.5.

*Homeowners Ass'n v. State Farm Fire & Cas. Co.*, No. 1:08-cv-00475-TWP-MJD, 2012 U.S. Dist. LEXIS 909, at *3 (S.D. Ind. Jan. 4, 2012). There, the plaintiff sought discovery of information uncovered by the Indiana Commissioner's investigation of State Farm. *Id.* The district court found that the Indiana state insurance statute "does not limit the [federal] Court's authority to order" production of investigatory information. *Id.* at *4. The district court reasoned that because there was a confidentiality order in place, the production of the information in discovery would not make it public. *Id.* at *7-*8. Here, too, there is no applicable statute that limits this Court's authority to order the production of discovery, especially where, like here, such information will be protected by a confidentiality order and not made public.

For all of these reasons, the information sought is not protected by any insurance law privilege.

## IV. CONCLUSION

Based on the foregoing, plaintiffs respectfully request that Verus' motion to quash be denied in its entirety.

DATED:  July 21, 2014             Respectfully submitted,

                                  COHN LIFLAND PEARLMAN
                                    HERRMANN & KNOPF LLP
                                  PETER S. PEARLMAN
                                  JEFFREY W. HERRMANN


                                  _____
                                       */s/ Peter S. Pearlman*
                                  PETER S. PEARLMAN

Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel for Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
AELISH M. BAIG
ARMEN ZOHRABIAN
DAVID W. HALL
SUNNY S. SARKIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER &
PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

THOMAS J. HART
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, NW,
Suite 450
Washington, DC  20036
Telephone:  202/797-8700
202/234-8231 (fax)

957406_1

ANDREW F. ZAZZALI, JR.
ZAZZALI, FAGELLA, NOWAK,
KLEINBAUM & FRIEDMAN
One Riverfront Plaza, Suite 320
1037 Raymond Boulevard
Newark, NJ  07102
Telephone:  973/623-1822
973/623-2209 (fax)

Additional Counsel for Plaintiff

957406_1