# COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP

## COUNSELLORS AT LAW



PARK 80 WEST - PLAZA ONE, 250 PEHLE AVE., SUITE 401, SADDLE BROOK, NJ 07663
201-845-9600 • FAX 201-845-9423 • clphk@njlawfirm.com • www.njlawfirm.com

PETER S. PEARLMAN, ESQ.  Email: **psp@njlawfirm.com**
Direct Dial: 551-497-7131/Cell Phone: 201-709-0597

July 25, 2014

**VIA ECF**

The Honorable Madeline Cox Arleo
United States District Court, District of New Jersey
Martin Luther King Courthouse
50 Walnut Street, Room 2060
Newark, NJ  07101

> Re:   *City of Sterling Heights General Employees' Retirement System v.*
> *Prudential Financial, Inc.*, No. 2:12-cv-05275-SDW-MCA (D.N.J.)

Dear Judge Arleo:

Lead Plaintiffs are anxious to move discovery forward and have diligently sought to do so.  They have timely and comprehensively responded to Defendants' discovery requests and provided documents and information consistent with Rules 26, 33 and 34 of the Federal Rules of Civil Procedure.  While the parties have met and conferred on the timing and parameters of discovery, those conferences have failed to yield meaningful agreements.  For the first time, in their July 14, 2014 Letter (Dkt. No. 76) ("Defendants' Letter"or 'Defs' Letter"), Defendants attempt to articulate their reasons for seeking the broad discovery propounded. Their contentions confirm that much of what they demand is either irrelevant or imposes an undue burden outweighing any of its potential benefit.  Despite Defendants' overbroad demands, Lead Plaintiffs have in fact produced the relevant information requested, including trading records for each Lead Plaintiff's purchases in Prudential Financial, Inc. ("Prudential" or the "Company") securities during and after the Class Period.[1]  Lead Plaintiffs also maintain their willingness to continue good faith negotiations regarding any outstanding discovery disputes.  Below, Lead Plaintiffs respond to Defendants' Letter, demonstrating that each of Defendants' complaints lacks merit.

### A.    Defendants' Demand For Amended Discovery Responses Is Unwarranted

On May 14, 2014, Lead Plaintiffs served objections and responses to Defendants' First Set of Interrogatories and Defendants' First Set of Requests for the Production of Documents. Declaration of Erica S. Weisgerber (Dkt. No. 76-1) ("Weisgerber Decl."), Exs. 3-8.  Largely ignoring those detailed responses, Defendants now seek to compel Lead Plaintiffs to change the substance of their written responses to state something other than their positions.  Indeed, while Defendants conceded during the meet-and-confer discussions that many of their requests were vague and overbroad and agreed to revise several, they served amended document requests revising only a single definition.  The amended requests were virtually identical to the initial

---

[1]        May 5, 2010 through November 4, 2011.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

July 25, 2014
Page 2

requests, as evidenced by the redline comparison filed herewith.   Declaration of Armen Zohrabian in Support of Opposition to Defendants' July 14, 2014 Letter ("Zohrabian Decl."), Ex. A.   Thus, Lead Plaintiffs responded to Defendants' reissuance of the same broad requests by standing on the same objections and responses, which, contrary to Defendants' assertions, are specific and clear.   During the meet and confers and in written correspondence, Lead Plaintiffs explained which documents would be produced and which were being withheld on privilege or other grounds.   In fact, apart from the information to which Lead Plaintiffs lodged objections, Lead Plaintiffs have produced more than seven thousand pages of trading records and detailed interrogatory responses.   *See id.*, Ex. B   Further, Lead Plaintiffs confirmed that more responsive information will be provided as it is collected.

Defendants also take issue with the fact that in response to Interrogatory No. 3 subpart (b), Lead Plaintiffs identified the names of entities that served as investment advisors to the Lead Plaintiffs in a letter as opposed to an interrogatory response.   Defs' Letter at 2.   This purported issue is more perceived than practical.   As counsel explained during the meet and confer on July 2, 2014, Lead Plaintiffs had preliminarily identified the entities but still needed to confirm them before formally supplementing interrogatory responses.   In any event, Federal Rule of Civil Procedure 33 provides that interrogatory responses can and should be supplemented throughout the litigation.[2]

**B.     Defendants' Complaints About Lead Plaintiffs' Production of Trading Records Are Without Merit**

Defendants, in their Request for Production No. 5 and Interrogatory No. 3, have demanded all trading records in all securities (not only Prudential) for the Lead Plaintiffs' trades in the last thirteen years.   These requests call for information regarding every transaction of any type in any company since Prudential became a publicly traded Company.[3]   Lead Plaintiffs objected to Defendants' demand for transactions in Prudential securities other than common stock, and for transactions in non-Prudential securities, but nonetheless produced such documents from May 1, 2010 through January 1, 2012.   *See* Fed. R. Civ. P. 33(d)(1) (allowing for production of records in response to interrogatory).    Thus, Lead Plaintiffs have already produced thousands of pages of documents evidencing their transactions in Prudential common stock during the Class Period and beyond, and to the extent such documents included trades in other companies, that information was not redacted.

In meet-and-confer discussions, Lead Plaintiffs took the position that the only trades relevant are trades in Prudential's (not other companies') common stock (not options, bonds, derivatives or various other types of securities).   ¶¶1, 142.[4]   *In re Northfield Labs. Sec. Litig.*,

---

[2]       The parties met and conferred on Defendants' requests on July 2, 2014.   Nine days later, on July 11, 2014, Lead Plaintiffs produced responsive documents. Zohrabian Decl., Ex. B.   In contrast, it took Defendants months to produce anything at all.

[3]       Prudential held its Initial Public Offering on December 13, 2001.

[4]       All "¶_" and "¶¶_" references are to the Amended Complaint for Violations of Federal Securities Laws (Dkt. No. 22).

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

July 25, 2014
Page 3

264 F.R.D. 407, 411 (N.D. Ill. 2009) (denying discovery of plaintiffs' trading history in companies other than defendant). Lead Plaintiffs requested that Defendants explain how all transactions in any and every security as far back as 2001 could be relevant to this litigation, with its May 2010 through November 2011 Class Period. ¶1. Defendants declined to do so. Defendants' rationale, articulated for the first time in their letter to the Court, summarily contends that 13 years of trading history is relevant at class certification to a proposed class representative's typicality and adequacy, and to the presumption of reliance. Defs' Letter at 4-7. According to Defendants, they are "entitled" to this far-reaching discovery just to check for "any[thing] irregular." *Id.* at 4. This is incorrect. Indeed, it is precisely the sort of "fishing expedition for potential claims or defenses" that courts guard against. *Robinson v. Horizon Blue Cross-Blue Shield*, No. 2:12-CV-02981-ES-JAD, 2013 U.S. Dist. LEXIS 180325, at *6 (D.N.J. Dec. 23, 2013).

Moreover, Defendants wholly fail to explain what evidence they could possibly glean from 2001-2009 trading records that would rebut the presumption of reliance. Their cited cases, *Degulis v. LXR Biotechnology*, 176 F.R.D. 123 (S.D.N.Y. 1997), *In re ML-Lee Acquisition Fund II, L.P.*, 149 F.R.D. 506 (D. Del. 1993), and *In re Painewebber Sec. Litig*, 151 F.R.D. 248 (S.D.N.Y. 1993), are dated and inapposite. Courts have subsequently distinguished these cases as irrelevant where, like here, the plaintiffs have invoked the fraud-on-the-market presumption. ¶¶140-141, 151. In *Degulis*, for example, the court premised its decision to compel investment records dating back five years on the plaintiffs' allegations of direct reliance. 176 F.R.D. at 126. Here, Lead Plaintiffs do not allege direct reliance but instead invoke the fraud-on-the-market presumption of reliance. ¶¶140-141, 151. As noted in *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (WCC), 2006 U.S. Dist. LEXIS 98613 (S.D.N.Y. June 21, 2006), the distinction is critical. *Id.* at *9 (distinguishing *Degulis* and denying defendants' motion to compel production of investment history documents as irrelevant to typicality in fraud-on-the-market case).

Similarly, in *ML-Lee*, another pre-PSLRA decision, the District of Delaware was again analyzing actual reliance in finding trading records relevant for a five-year period. 149 F.R.D. at 508. More recently, in *In re Intel Corp. Microprocessor Antitrust Litig.*, 526 F. Supp. 2d 461 (D. Del. 2007), the District of Delaware declined to allow such broad discovery of trading records, expressly distinguishing its previous decision in *ML-Lee. Intel Corp.*, 526 F. Supp. 2d at 465-66 (finding that "in large measure, its decision in *ML-Lee* was driven by the unique concern that the *ML-Lee* class representatives might have been professional plaintiffs who invested in securities for the purpose of bringing strike suits"); s*ee also GAMCO Investors, Inc. v. Vivendi*, 917 F. Supp. 2d 246, 256 (S.D.N.Y. 2013) ("the 'unique defense' that might be deployed against the lead plaintiffs relates to their ***actual*** reliance, not to whether it would be ***unreasonable*** to rely on the market price of a security") (citation omitted).

Numerous cases more recent than those relied upon by Defendants have held that a more limited period of discovery for trading records is appropriate. *See, e.g.*, *Flag Telecom*, 2006 U.S. Dist. LEXIS 98613, at *10 ("[W]e fail to see how this extensive production of the plaintiffs' investment history and account statements would establish non-reliance and/or rebut the

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

July 25, 2014
Page 4

presumption of reliance under the fraud-on-the-market theory.  There is nothing to indicate that production of these documents could somehow lead to severing the link between the defendants' allegedly fraudulent statements and the market price or plaintiffs' decision to buy or sell FTHL stock."); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 (LAK) (JLC), 2013 U.S. Dist. LEXIS 155127, at \*51-\*52 (S.D.N.Y. Oct. 24, 2013) (refusing to expand time frame for trading history beyond the class period and 90-day lookback period because "the Court is not persuaded that documents pertaining to Plaintiffs' trading in BNYM securities after the Class Period has any meaningful bearing as to whether they relied on BNYM's representations *during* the Class Period").  And in *Halliburton Co. v. Erica P. John Fund, Inc.*, \_\_U.S.\_\_, 134 S. Ct. 2398 (2014), the Supreme Court recently reaffirmed that to invoke the presumption of reliance, a proposed class representative need only establish that he purchased the security at issue during the Class Period. [5]  *Halliburton*,  at 2410, 2413.  This is easily established with class period trading records relating to the defendant company.

In any event, as set forth in the Motion for Class Certification, only one of the Lead Plaintiffs, National Shopmen Pension Fund, is a proposed class representative; thus, the other Lead Plaintiffs' trading records are completely irrelevant to any class certification issue.  *See* Dkt. No. 74.

Defendants' assertion that such records are relevant to damages is also misplaced.  Defs' Letter at 8.  The damages alleged in this case result exclusively from purchases of Prudential common stock between May 2010 and November 2011, not 2001-2009.[6]  ¶¶1, 124, 145.

Lead Plaintiffs have already produced records of their trades during the Class Period, and they did not redact trades in other companies identified on the same records.  This is more than sufficient.  *See Flag Telecom*, 2006 U.S. Dist. LEXIS 98613, at \*9.

C.   **Defendants' Demand for Information from Tens of Thousands of Pension Fund Employees Is Unreasonably Overbroad**

Lead Plaintiffs have objected to Defendants' indiscriminate demand for the identification of any person, relative, or business associate ever employed by or having any business dealings with Prudential.  *See* Weisgerber Decl., Ex. 2 at Interrogatory No. 1.  Even on its face, this discovery request plainly violates Rule 26.  Lead Plaintiffs explained the difficulty of collecting such information, even if it were relevant, given that Lead Plaintiffs have tens of thousands of members and countless former employees.  That number exponentially increases once "relatives or business associates" are included.  Defs' Letter at 5.  During the meet-and-confer process,

---

[5]    While the proposed class representative must also show before class certification that the alleged misrepresentations were publicly known and the stock traded in an efficient market to involve the fraud-on-the-market presumption, none of these issues requires the breadth of trading records Defendants have demanded. *Flag Telecom*, 2006 U.S. Dist. LEXIS 98613, at \*10; *Bank of N.Y. Mellon*, 2013 U.S. Dist. LEXIS 155127, at \*51-\*52.
[6]    That Lead Plaintiffs are defined benefit multiemployer retirement plans with recordkeeping obligations, is beside the point. Defs' Letter at 5. There is no dispute over whether records exist. Rather, Lead Plaintiffs contend the scope of Defendants' requests is overbroad and seeks irrelevant materials.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

July 25, 2014
Page 5

Defendants refused to explain why such information is relevant, let alone explain how Lead Plaintiffs could determine whether any employee of any of the funds ever had any "business dealings" with Prudential. *Id.* Nor do they do so in Defendants' Letter. The best Defendants come up with is unfounded speculation that some current or former employee of Lead Plaintiffs' pension fund, or relative, might have had "business dealings" with Prudential some undefined time ago which could have alerted them to the Company's fraud thereby rebutting the presumption of reliance. *Id.* at 6. Defendants cite no authority for such a far-fetched and attenuated proposition. In any event, the undue burden of attempting to collect and produce it would far exceed anything contemplated by Federal Rule of Civil Procedure 26. *See Takacs v. Union Cnty.*, No. 08-711 (KSH) (MAS), 2009 U.S. Dist. LEXIS 87632, at *3 (D.N.J. Sept. 23, 2009).

> **D.    Lead Plaintiffs Have Produced the Requested Litigation History**

Lead Plaintiffs have already provided their litigation history to Defendants, in all securities class actions, shareholder derivative suits, and actions for breaches of fiduciary duty where they served as plaintiffs. Defs' Letter at 6 ("Lead Plaintiffs have provided the names of cases in which they served as plaintiff, whether they testified, and whether they received any recovery"). Yet Defendants complain that Lead Plaintiffs' response did not include every complaint they filed in the last decade, no matter how unrelated they were to securities fraud claims. *See* Weisgerber Decl., Ex. 1 at Request No. 8 & Ex. 2 at Interrogatory No. 6. Lead Plaintiffs object to these discovery requests on multiple grounds and have explained that Defendants can themselves obtain publicly filed documents. Surely, Prudential would never agree to produce every complaint filed by the Company, much less all deposition transcripts from every case. Lead Plaintiffs have offered to review deposition transcripts from prior litigation if available, however, much of that information is likely covered by confidentiality agreements governing those cases. *In re C. R. Bard*, MDL No. 2187, 2014 U.S. Dist. LEXIS 89147, at *23-*24 (S.D. W.Va. June 30, 2014) (refusing to compel production of transcripts subject to protective order in cases involving dissimilar products).

> **E.    Defendants' Demand For Lead Plaintiffs' Damages Calculations Is Premature**

Defendants have also demanded all documents regarding Lead Plaintiffs' calculation of damages, including all documents, theories, and data regarding the calculation of damages. *See* Weisgerber Decl., Ex. 1 at Document Request No. 12 & Ex. 2 at Interrogatory No. 9. Lead Plaintiffs met and conferred with Defendants and explained that, only three months after discovery began, discovery on damages is premature because it will be subject to expert analysis and review. *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 301 (3d Cir. 1991); *see also In re DVI, Inc. Sec. Litig.*, No. 03-5336, 2013 U.S. Dist. LEXIS 164199, at *24 (E.D. Pa. Nov. 18, 2013). Notwithstanding clear authority, Defendants refuse to accept that the calculation of damages in securities class actions is complex, subject to expert testimony, and thus premature at this time. To the extent Defendants' Letter suggests that damages are relevant at this stage, any relevance is limited to assuring there exists a viable methodology for measuring damages on a

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

July 25, 2014
Page 6

class-wide basis.[7]  Lead Plaintiffs have already provided Defendants with the expert report of Steven P. Feinstein Ph.D., CFA, which details a methodology for measuring damages in this case.  *See* Dkt. No. 74-8.

> **F.     Defendants' Letter Is Strategically Designed to Distract This Court from Defendants' Failure to Produce Information Critical to Lead Plaintiffs' Claims**

Lead Plaintiffs have diligently responded to Defendants' requests.  Defendants' characterization of Lead Plaintiffs' discovery responses as obstructive amounts to nothing more than a diversionary tactic to draw this Court's attention away from Lead Plaintiffs' legitimate concerns over Defendants' failure to produce key information.  In fact, Defendants' lack of diligence in making any meaningful document production, their heavy redactions of relevant documents, refusal to produce responsive e-mails, insistence on a rigid time period for relevance and their failure to prepare Rule 30(b)(6) designees have all served to obstruct discovery, effectively shortening the time Lead Plaintiffs have for meaningful fact discovery.  Defendants have also engaged in tactics to block and delay third-party productions by, for example, insisting on performing a privilege review of PricewaterhouseCooper's ("PwC") documents prior to their production, despite the fact that there is no privilege between Prudential and PwC.  *United States v. Arthur Young & Co.*, 465 U.S. 805, 818 (1984); *Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 312 (W.D. Pa. 2011); *Medinol v. Boston Sci. Corp.*, 214 F.R.D. 113, 116-17 (S.D.N.Y. 2002).  Though Lead Plaintiffs served a subpoena on PwC on March 26, 2014, they still have not received any responsive documents as a result of the delay injected into the process by Prudential.  At this rate, Defendants' delay tactics will effectively impose the eight-month fact discovery cutoff that Defendants sought and this Court rejected as "very unrealistic" during the April 7, 2014 Scheduling Conference.  April 7, 2014 Hearing Transcript (Dkt. No. 50) at 14:21-15:5, 15:12-25.

> 1.     Defendants Have Not Made A Meaningful Document Production

Though Defendants will parade the number of pages they have produced, that metric is meaningless given the content and form of their production.  More than four months after Lead Plaintiffs served their document requests, Defendants have yet to make any meaningful production of e-mails.  Indeed, almost 98 percent of the pages produced are heavily redacted without the corresponding native Excel files.  Joint Case Management and Federal Rule of Civil Procedure 26(f) Conference Statement (Dkt. No. 40) at 12 ("spreadsheet-type files including [Excel] shall be produced in native format"); *Covad Commc'ns Co. v. Revonet, Inc.*, 267 F.R.D. 14, 19 (D.D.C. 2010).

---

[7]      Lead Plaintiffs agreed to produce transactions in Prudential common stock for at least the period of 90 days beyond the Class Period consistent with the PSLRA's limitation of damages in securities class actions.  15 U.S.C. §78u-4(e)(1) & (2).

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

July 25, 2014
Page 7

2.      <u>Defendants Have Heavily Redacted Wide Swaths of Relevant Information</u>

Defendants insist on redacting every contract holders' and their beneficiaries' name, address, and other information and did so for the 25 spreadsheets which represent 98% of their production despite Lead Plaintiffs' repeated pleas that such information not be redacted.  By doing so, Defendants have redacted facts directly relevant to the claims alleged, including when policyholders first appeared on the Social Security Administration's Death Master File ("SSA-DMF") and whether and when notifications of death were made. These facts go directly to Defendants' knowledge of Prudential's liability that should have been – but were not – accounted for.  Defendants' redactions preclude Lead Plaintiffs from comparing the demographic information of Prudential's policyholders to those in the SSA-DMF, thereby preventing Lead Plaintiffs from assessing the extent to which Prudential's restrictive use of the SSA-DMF overstated income and understated liabilities.   As Judge Wigenton found during the motion to dismiss hearing, whether any law obligated Prudential to search the SSA-DMF is a red herring. Motion to Dismiss Hearing Transcript (Dkt. No. 38) at 15-17; *see also City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12 Civ. 0256 (LAK), 2013 U.S. Dist. LEXIS 28505, at \*24 (S.D.N.Y. Feb. 28, 2013) ("Whether or not a law required specifically that MetLife use the SSA-DMF is irrelevant.").  Defendants have insisted on redacting such information even though they recognize that "[c]oncerns regarding confidentiality are addressed by the Protective Order entered by the Court in this action."  Defs' Letter at 6 n.7.  Defendants should not be permitted to continue obstructing discovery through redactions on relevance/confidentiality grounds. *Grossman v. First Pa. Corp.*, No. 89-9234, 1992 U.S. Dist. LEXIS 2266, at \*7 (E.D. Pa. Feb. 24, 1992); *Green v. Monarch Recovery Mgmt., Inc.*, No. 1:13-cv-00418-SEB-MJD, 2014 U.S. Dist. LEXIS 57104, at \*9 (S.D. Ind. Apr. 24, 2014).

3.      <u>Defendants Are Imposing an Impermissibly Rigid Date Cutoff</u>

Defendants insist on applying a strict time period and refuse to produce documents outside of January 1, 2009 through January 31, 2012 (and for a few limited requests, December 31, 2012), irrespective of whether such documents relate to events within the Class Period. Defendants' position lacks legal support. *See, e.g.*, *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005).   Moreover, Defendants' hard date cutoff works to exclude relevant information particularly because key settlements were reached at the end of January 2012. Additionally Defendants' hard date cutoff thus excludes a series of monthly Unclaimed Property Reports beginning in January 2012, which listed funds Verus Financial LLC ("Verus") identified as owed to states.  Similarly, applying Defendants' restrictive date cutoff would exclude any internal discussions by Prudential's executives similar to Prudential's Chief Communications Officer who in December 2012 stated that Prudential settled with Verus and the states because: "We didn't want to become the poster-child for opposing getting money to the people it belonged to – it didn't make sense. So everything we did publicly was a demonstration of our wanting to be cooperative."  ¶79 n.7.  Numerous key documents fall outside of Defendants' restrictive time period and should be produced.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

July 25, 2014
Page 8

          4.     <u>Defendants Have Not Adequately Prepared Their Rule 30(b)(6) Witnesses</u>

       Early on, Lead Plaintiffs recognized that Defendants had embraced a strategy of delay. As such, Lead Plaintiffs sought to advance and streamline discovery by noticing several Rule 30(b)(6) depositions.  Despite the nine-plus weeks it took Prudential to designate witnesses, they came to the depositions unprepared to testify on the noticed subjects of testimony.  One witness admitted she had never seen the deposition notice setting forth the two topics she was to provide testimony on.  She could not provide any testimony on a crucial part of a noticed topic: the Prudential Board of Directors' review of and response to the state investigations of Prudential's unclaimed property practices.  Another designee could not testify how Prudential's use of the SSA-DMF Administration's Death Master File affected reserve calculations, stating that any details into this subject would require input from the actuarial department which she had not consulted in preparing to testify on the Company's behalf.  Similarly, Prudential's designee on electronic systems could not testify on the steps Prudential had taken to collect documents responsive to this action or in related investigations.  Rule 30(b)(6) demands prepared witnesses and Prudential should be obligated to produce the same.  *Black Horse Lane Assocs., L.P v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) ("we believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf"); *In re Neurontin Antitrust Litig.*, No. 02-1390 (FSH), 2011 U.S. Dist. LEXIS 6977 (D.N.J. Jan. 25, 2011) (same).

       For all of the reasons set forth above, and as may be made at oral argument, Lead Plaintiffs respectfully request that the Court grant the relief requested in Lead Plaintiffs' June 14, 2014 Letter to the Court and Defendants' requests made in their letter be denied in their entirety.

                             Respectfully submitted,

                             */s/ Peter S. Pearlman*

                             PETER S. PEARLMAN

SAW:amc
Enclosures
cc: All Counsel of Record (via ECF)