



**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**

COUNSELLORS AT LAW

Celebrating 90 years | EST. 1924

PARK 80 WEST - PLAZA ONE, 250 PEHLE AVE., SUITE 401, SADDLE BROOK, NJ 07663
201-845-9600 • FAX 201-845-9423 • clphk@njlawfirm.com • www.njlawfirm.com

PETER S. PEARLMAN, ESQ.  Email: psp@njlawfirm.com
Direct Dial: 551-497-7131/Cell Phone: 201-709-0597

August 14, 2014

The Honorable Madeline Cox Arleo
United States District Court
District of New Jersey
Martin Luther King Courthouse
50 Walnut Street, Room 2060
Newark, NJ 07101

> Re:  *City of Sterling Heights General Employees' Retirement System v. Prudential Financial, Inc.*, No. 2:12-cv-05275-SDW-MCA (D.N.J.)

Dear Judge Arleo:

We represent Lead Plaintiffs National Shopmen Pension Fund, Heavy & General Laborers' Locals 472 & 172 Pension and Annuity Funds and Roofers Local No. 149 Pension Fund (collectively "Lead Plaintiffs") in the above-captioned matter. We respectfully submit this letter motion to request that the Court issue an order compelling Defendants Prudential Financial, Inc. ("Prudential or the "Company"), John R. Strangfeld, Richard J. Carbone and Mark B. Grier (collectively, "Defendants") to provide substantive responses to Lead Plaintiffs' First Set of Interrogatories to Defendant Prudential Financial, Inc. (the "Interrogatories"). Ex. A.

**Procedural Background**

For over three months, Defendants have failed to provide substantive responses to Lead Plaintiffs' Interrogatories served on April 28, 2014. On June 2, 2014, Defendant Prudential served its Responses and Objections to Lead Plaintiffs' First Set of Interrogatories (the "Responses and Objections"). Ex. B. Defendants did not provide a substantive answer to *any* of the five Interrogatories, but instead asserted boilerplate, general objections and objected to basic definitions. On June 11, 2014, Lead Plaintiffs wrote a letter (the "June 11 Letter") detailing the relevance of the Interrogatories to the claims in the Amended Complaint for Violations of Federal Securities Laws ("Complaint"), as well as the inadequacy of the Responses and Objections. The June 11 letter further requested the parties meet and confer and that Defendants supplement their Responses and Objections forthwith.

On July 29, 2014, after 48 days passed without a response to the June 11 Letter, Lead Plaintiffs wrote another letter to Defendants again requesting to meet and confer. On August 4, 2014, the parties met and conferred in accordance with Civil Local Rules 26.1 and 37.1(a)(1). Defendants refused to supplement unless Lead Plaintiffs agreed to serve amended Interrogatories. In an attempt to resolve the issue without Court intervention, Lead Plaintiffs

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

August 14, 2014
Page 2

again met and conferred with Defendants on August 12, 2014. Again, Defendants refused to supplement based on undue burden, despite the fact that Eileen Geary, Vice President of Financial Operations at Prudential, testified as Prudential's Rule 30(b)(6) designee that much of the information requested was easily accessible. Exhibit C at 13:1-2; *Steele v. Aramark Corp.*, No. 09-4340 (JBS/JS), 2013 U.S. Dist. LEXIS 175037, at *3 (D.N.J. Dec. 13, 2013) ("a party has a duty to supplement in a timely manner its . . . answers to interrogatories").

As detailed below, Lead Plaintiffs respectfully request that the Court compel Defendants to provide substantive responses to the Interrogatories.

**Defendants Insist Upon an Overly Restrictive Time Period**

Defendants' objection to the Relevant Time Period hinders the discovery of relevant information. *See, e.g., Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 1579 (HB) (JCF), 2012 U.S. Dist. LEXIS 167981, at *6 (S.D.N.Y. Nov. 21, 2012) ("Documents that post-date the transactions may nevertheless relate back to the state of affairs as it existed at the crucial time."); *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005) (same). In response to Interrogatory No. 4, for example, Defendants refuse to produce Unclaimed Property Reports ("UPRs") created after January 31, 2012 pursuant to state regulatory settlements. According to the Global Resolution Agreement ("GRA"), the UPRs are prepared and submitted to the Company by Verus Financial LLC ("Verus") to identify property that Verus determined to be payable to a State by Prudential. Ex. D at 6. These reports are pertinent to the claims in the Complaint because they relate to the matches Verus identified, and Prudential accepted which figured into reserve charges that Prudential took. ¶¶22-24, 57(g), 91, 97, 109 n.11. [1]

Indeed, Lead Plaintiffs allege that during the Class Period, Prudential retained funds belonging to policyholder beneficiaries and unclaimed property belonging to the States, materially overstating income by failing to account for and reserve for these known liabilities. *See, e.g.*, ¶10 (Prudential retained money belonging to the states and beneficiaries; an allegation that Defendants deny); ¶57(c) (alleging that Prudential's restrictive use of the Social Security Administration's Death Master File ("SSA-DMF") limited the payments to beneficiaries and correspondingly misrepresented reserves); ¶103 (detailing regulator's "concerns regarding the adequacy of the Company's policies and procedures to ensure that life insurance and endowment policies, annuities, Retained Asset Accounts and other funds are timely paid out to Beneficiaries, and are timely reported or remitted in accordance with the Unclaimed Property Laws and the Insurance Laws"). UPRs identify the property that Prudential failed to account and reserve for during the Class Period. Ex. D at 6. Defendants' time-period objection means that the only information they may provide would be based on UPRs dated between Friday, January 27, 2012, the date the settlement requiring the creation of the UPRs became effective, and Tuesday,

---

[1]   All "¶_" references are to the Complaint.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

August 14, 2014
Page 3

January 31, 2012.  Such reports set forth liabilities incurred as a result of policyholder deaths dating back to 1992,[2] which should have figured into Class Period reserves.  Ex. D at 4.

**The Court Should Compel Defendants to Provide Substantive Answers to Interrogatory Nos. 2 Through 4 Because They Are Highly Relevant to the Claims in the Complaint**

Defendants stated that any supplemental information they may provide would be in documents produced at some future, undetermined date.  However, Federal Rule of Civil Procedure 33(d) requires Defendants to specify the documents which contain the answers sought by the Interrogatory.  A mere referral to documents in lieu of an answer is permissible "only if the burden of deriving the answer will be substantially the same for either party."  Fed. R. Civ. P. 33(d) (Notes to 2006 Amendments).  Below, Lead Plaintiffs address each Interrogatory in turn.

Interrogatory No. 2: Identify by name, address, and phone number each person to whom Prudential issued death benefits resulting from the application of new matching SSA-DMF criteria referenced by the Company during the Company's November 3, 2011 3Q11 conference call.

Interrogatory No. 2 seeks highly relevant information.  Indeed, the individuals sought are percipient witnesses, as they are individuals Prudential paid as a result of the GRA and Regulatory Settlement Agreement ("RSA"), and may provide information about the policyholders' actual date of death, whether or not they communicated the death to Prudential, when such communications were made, and whether the demographic information was in the SSA-DMF.  Lead Plaintiffs are entitled to discover these facts as they go to falsity and scienter; *i.e.*, when Prudential knew that a liability had been incurred (or likely had been incurred) that the Company should have reserved for.

Defendants object that answering Interrogatory No. 2 would require an "unduly extensive and unnecessarily expensive" search.  However, the party resisting discovery on the basis that the request is burdensome has to substantiate the burden alleged.  *Salamone v. Carter's Retail, Inc.*, No. 09-5856 (GEB), 2011 U.S. Dist. LEXIS 8425, at *13 (D.N.J. Jan. 28, 2011).  Here, Defendants have not met their burden as they have not explained how they searched for responsive information, the potential databases searched, or the cost of the search.  Moreover, this information was necessarily compiled as a result of the Verus audit and already exists in producible format.  If Prudential is in fact in compliance with the terms of the GRA and RSA, then this information should be readily available.  Moreover, any burden is a self-imposed consequence of Defendants' decision to redact policyholder information.  Defendants' burden argument is therefore tenuous at best.  Defendants repeat this baseless objection with respect to Interrogatory Nos. 3 and 4.

---

[2]    The GRA defines "Scope of the Audit" to include unclaimed property to be reported and remitted to the States under life insurance policies, annuity contracts, and retained asset accounts that were in force at any time during the period January 1, 1992 through May 31, 2010.  Ex. D at 4.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

August 14, 2014
Page 4

Defendants' objection that Interrogatory No. 2 seeks "sensitive personal information" lacks a legal basis. Ex. B at 7; *see Hannah v. Wal-Mart Stores, Inc.*, No. 3:12CV1361 (JCH), 2014 U.S. Dist. LEXIS 75745, at *25 (D. Conn. June 4, 2014) (ordering the production of tax returns despite objection that they contained "sensitive personal information," with social security numbers redacted); *Diodato v. Wells Fargo Ins. Servs. USA*, No. 1:12-CV-02454, 2013 U.S. Dist. LEXIS 162912, at *15-*16 (M.D. Pa. Nov. 15, 2013) (granting motion to compel response to interrogatory, ordering that the party identify each customer with whom employee communicated and details including substance, date, methods of communication, the identity of all participants, and who initiated the communication as it was likely to lead to the discovery of admissible evidence). Moreover, any privacy interest in information in a public database such as the SSA-DMF is minimal. More importantly, the protection of "sensitive personal information" is squarely addressed by the Discovery Confidentiality Order. Dkt. No. 52. Defendants repeat this baseless objection with respect to Interrogatory Nos. 3 and 4.

> Interrogatory No. 3: Identify each death benefit payment made after August 2011 in connection with previously unreported deaths identified through use of the SSA-DMF.

As previously stated, the identification of benefits paid in connection with matches made against the SSA-DMF since August 2011 is directly relevant to the Company's knowledge of the death of the policyholders, when that information was available in the SSA-DMF and Prudential's efforts to locate the beneficiaries. This information is pertinent to falsity and materiality. Moreover, the information sought is plainly relevant to allegations in the Complaint regarding the State Investigations, the GRA and the RSA. ¶¶101, 104-107, 109-115. Prudential, through Eileen Geary, its Rule 30(b)(6) designee, testified that the Company keeps a database of payments made as a result of the current investigation referred to in both the RSA and the GRA. Ex. C at 77:5-11, 122:12-123:16, 224:3-22. In fact, at least some of this information was produced to the State of New York Department of Financial Services. *Id.* at 123:1-5. Considering the foregoing, the Court should compel Prudential to provide a substantive response forthwith.

> Interrogatory No. 4: Identify all proceeds by dollar amount that Verus identified as payable in accordance with the terms of the Global Resolution Agreement.

While Defendants state that the UPRs contain responsive information, they refuse to produce those created after January 31, 2012. As detailed above, Defendants' objection to the Relevant Time Period means that Lead Plaintiffs will only receive a few UPRs at best, even though the information they contain relates back to Class Period liabilities. Moreover, if Defendants wish to respond to Interrogatory No. 4 by referencing the UPRs, they must produce them and identify them by Bates range. *Healthamerica Pa., Inc. v. Susequhanna Health Sys.*, No. 3:00 CV1525, 2002 U.S. Dist. LEXIS 26585, at *5 (M.D. Pa. Feb. 5, 2002).

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

August 14, 2014
Page 5

>    Interrogatory No. 5: Identify by state and dollar amount any money or unclaimed property that has been escheated to states as a result of the Verus audit or since August 2011, regardless of the Verus audit.

Interrogatory No. 5 requests information relevant to the claims in the Complaint, including the reserve increase to account for previously reported deaths that should have been escheated to the states. Again, Eileen Geary, on behalf of Prudential, testified under oath that Prudential can easily generate reports which contain the amounts escheated to the states. Ex. C at 77:5-11, 219:18-25. In fact, she testified that Prudential's Global Business Technology Solutions practice possessed a centralized capacity to provide amounts escheated to the states as well. *Id.* at 119:18-21. Indeed, Geary stated that Prudential tracks escheatments related to the Verus investigations. *Id.* at 120:6-9, 120:14-23, 219:18-25.

**Conclusion**

More than six months have passed since discovery opened. Defendants' evasive answers to the Interrogatories propounded by Lead Plaintiffs are insufficient. Lead Plaintiffs respectfully request that the Court grant this motion to compel.

>    Respectfully submitted,
>
>    */s/ Peter S. Pearlman*
>
>    PETER S. PEARLMAN

PSP:glv
Enclosures
cc: All Counsel of Record (via ECF only)