## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CITY OF STERLING HEIGHTS GENERAL
EMPLOYEES' RETIREMENT SYSTEM,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiffs,

 vs.

PRUDENTIAL FINANCIAL, INC., et al.,

        Defendants.

Civil Action No.
2:12-CV-05275-SDW-SCM

## AMICUS BRIEF OF THE CALIFORNIA, FLORIDA, ILLINOIS, NEW HAMPSHIRE, NEW JERSEY, NORTH DAKOTA AND PENNSYLVANIA INSURANCE DEPARTMENTS IN SUPPORT OF NON-PARTY VERUS FINANCIAL LLC'S APPEAL OF DECEMBER 3, 2014 ORDER

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY
By: Joseph E. Snow, Deputy Attorney General
   Richard E. Wegryn, Jr., Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 117
Trenton, New Jersey 08625-0117
(609) 777-3733

*Attorneys for Amicus the New Jersey Department of
Banking and Insurance and on behalf of Amici,
California, Florida, Illinois, New Hampshire, North
Dakota and Pennsylvania Insurance Departments*

## Contents

Table of Authorities ........................................................................ ii

Introduction .................................................................................. 1

Interest of Amici ........................................................................... 1

The State Insurer Examination Confidentiality Statutes ................. 4

ARGUMENT ................................................................................. 8

   I.   THE STATE INSURER EXAMINATION STATUTES APPLY
       DIRECTLY BECAUSE THEY ARE PROTECTED AGAINST
       PREEMPTION BY THE FEDERAL MCCARRAN-
       FERGUSON ACT ................................................................ 9

      A.   The State "No Subpoena" Statutes Protect Examination
          Records From Subpoena Under Federal Rule of Civil
          Procedure 45. ................................................................ 11

      B.   The Insurer Examination Statutes Create A State Privilege
          That Is Not Displaced By Federal Rule of Evidence 501. ............ 17

   II.   THE COURT SHOULD RECOGNIZE A PRIVILEGE FOR
       EXAMINATION RECORDS UNDER FEDERAL COMMON
       LAW ................................................................................ 20

CONCLUSION .............................................................................. 30

## Table of Authorities

**Cases**

Association for Women in Science v. Califano, 566 F.2d 339 (D.C. Cir. 1977) .................................................................. 28

Baldridge v. Shapiro, 455 U.S. 345 (1982) .................................................. 27

Bank of America Nat'l Trust & Sav. Ass'n v. Douglas, 105 F.2d 100 (D.C. Cir. 1939) .................................................. 25

Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25 (1996) .. 17, 20

Commissioner of Ins. v. First Nat'l Bank, 223 N.E.2d 684 (Mass. 1967) ............................................................ 5

Department of Treasury v. Fabe, 508 U.S. 491 (1993) ......................... passim

Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205 (1979) ...... 14

Humana Inc. v. Forsyth, 525 U.S. 299 (1999) ................................... 10, 16, 20

Illinois Hosp. Serv., Inc. v. Gerber, 165 N.E.2d 279 (Ill. 1960) .................... 5

In re England, 375 F.3d 1169 (D.C. Cir. 2004) .............................. 27

In re Grand Jury Investigation, 918 F.2d 374 (3d Cir. 1990) ...................... 25

In re Grand Jury, 103 F.3d 1140 (3d Cir. 1997) ...................................... 25, 27

In re Ins. Brokerage Antitrust Litigation, 618 F.3d 300 (3d Cir. 2010) ....... 14

In re Prudential Ins. Co. of Am. Sales Practice Lit., 962 F. Supp. 450 (D.N.J. 1997) ............................................... 16

In re Subpoena Served Upon Comptroller of Currency, 967 F.2d 630 (D.C. Cir. 1992) ................................................. 25, 26

Insurance Comm'r of Md. v. Blue Shield of Md., 456 A.2d 914 (Md. 1983) ........................................................ 5

Jaffee v. Redmond, 518 U.S. 1 (1996) ................................................. passim

Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003) ......... 14

Matter of Grand Jury Impaneled January 21, 1975, 541 F.2d 373 (3d Cir. 1976) .......................................................... 28

Pearson v. Miller, 211 F.3d 57 (3d Cir. 2000) ...................................... passim

Prudential Ins. Co. v. Benjamin, 328 U.S. 408 (1946) ............................. 12

Roviaro v. United States, 353 U.S. 53 (1957) ........................................ 26

Sabo v. Metropolitan Life Ins. Co., 137 F.3d 185 (3d Cir. 1998) ............... 12

SEC v. National Sec., Inc., 393 U.S. 453 (1969) ..................................... 13

Sibbach v. Wilson & Co., 312 U.S. 1 (1941) .......................................... 16

Sims v. Great Am. Life Ins. Co., 469 F.3d 870 (10th Cir. 2006) ............... 20

Suter v. Munich Reins. Co., 223 F.3d 150 (3d Cir. 2000) ........................ 10

Trammel v. United States, 445 U.S. 40 (1980) ....................................... 21

Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119 (1982) ...................... 14

United States v. King, 73 F.R.D. 103 (E.D.N.Y. 1976) ............................ 22

Upjohn Co. v. United States, 449 U.S. 383 (1981) ...................................... 23
Weiss v. First Unum Life Ins. Co., 482 F.3d 254 (3d Cir. 2007) ........... 10, 12

**Statutes**

Federal Statutes & Public Laws

10 U.S.C. § 618 ............................................................................ 27
13 U.S.C. § 9 ................................................................................ 27
15 U.S.C. § 1012 ...................................................................... passim
15 U.S.C. § 2055 .......................................................................... 26
28 U.S.C. § 2072 .................................................................... 15, 17
48 Stat. 1064 ............................................................................... 16
Pub.L. No. 93-595, 88 Stat. 1926 ................................................. 19

State Statutes & Session Laws

Ala. Code § 27-2-24 ...................................................................... 24
Alaska Stat. § 21.06.150 ............................................................... 24
Ariz. Rev. Stat. Ann. § 20-158 ................................................. 18, 24
Ark. Code Ann. § 23-61-207 ..................................................... 18, 24
Cal. Ins. Code § 730 ....................................................................... 5
Cal. Ins. Code § 735.5 ........................................................ 6, 7, 18, 24
Cal. Political Code § 597 (1903) ...................................................... 5
Colo. Rev. Stat. Ann. § 10-1-205 .............................................. 18, 24
Conn. Gen. Stat. Ann. § 38a-14 ................................................. 18, 24
D.C. Code § 31-1404 .................................................................. 18, 24
Del. Code Ann., tit. 18, § 321 .................................................... 18, 24
Fla. Stat. Ann. § 624.316 ................................................................ 5
Fla. Stat. Ann. § 624.319 ........................................................... 7, 24
Fla. Rev. Gen. Stat. § 4247 (1919) .................................................. 5
Ga. Code Ann., § 33-2-14 .......................................................... 18, 24
Haw. Rev. Stat. § 431:2-305 ...................................................... 18, 24
Idaho Code § 9-340D ..................................................................... 24
215 Ill. Comp. Stat. Ann. 5/132 ...................................................... 5
215 Ill. Comp. Stat. Ann. 5/132.5 ............................................ 6, 7, 18, 24
215 Ill. Comp. Stat. Ann. 5/401 ...................................................... 5
215 Ill. Comp. Stat. Ann. 5/401.5 .......................................... 6, 7, 18, 24
215 Ill. Comp. Stat. Ann. 5/404 ...................................................... 7
1937 Ill. Laws § 132.5 .................................................................... 5
Ind. Code Ann. § 27-1-3.1-15 .................................................... 18, 24
Iowa Code Ann. § 507.14 ................................................................ 24
Kan. Stat. Ann. § 40-222 ........................................................... 18, 24

Ky. Rev. Stat. Ann. § 304.2-250 ................................................................ 24

La. Rev. Stat. Ann. § 22:1983 .............................................................. 18, 24

Mass. Gen. Laws, ch. 175, § 4 ................................................................ 24

1855 Mass. Acts, c. 124, §§ 5-7 ............................................................... 5

Md. Code Ann., Ins., § 2-209 ............................................................. 18, 24

Me. Rev. Stat. tit. 24-A, § 225 ........................................................... 18, 24

Mich. Comp. Laws Ann. § 500.222 ..................................................... 18, 24

Minn. Stat. Ann. §60A.031 ................................................................ 18, 24

Miss. Code Ann. § 83-5-209 ............................................................... 18, 24

Mo. Ann. Stat. § 374.205 ................................................................... 18, 24

Mont. Code Ann. § 33-1-409 .............................................................. 18, 24

N.C. Gen. Stat. Ann. § 58-2-132 ........................................................ 18, 24

N.D. Cent. Code § 26.1-03-19.2 .............................................................. 5

N.D. Cent. Code § 26.1-03-19.4 ..................................................... 6, 7, 18, 24

N.D. Rev. Code § 3123 (1899) ................................................................. 5

N.H. Rev. Stat. Ann. § 400-A:37 ....................................................... passim

1913 N.H. Laws ch. 42, § 7 .................................................................... 5

N.J. Stat. Ann. § 17:23-22 ..................................................................... 5

N.J. Stat. Ann. § 17:23-24 ............................................................ 6, 7, 18, 24

N.J. Gen. Stat., Ins. §§ 48-50 (1895) .......................................................... 5

N.M. Rev. Stat. Ann. § 59A-4-11 ....................................................... 18, 24

N.Y. Ins. Law § 311 ............................................................................ 24

Neb. Rev. Stat. § 44-5906 .................................................................. 18, 24

Nev. Rev. Stat. Ann. § 679B.285.2 ..................................................... 18, 24

Ohio Rev. Code Ann. § 3901.48 ......................................................... 18, 24

Okla. Stat. Ann. tit. 36, § 309.4 ......................................................... 18, 24

Or. Rev. Stat. Ann. § 705.137 ............................................................ 18, 24

Or. Rev. Stat. Ann. § 731.312 ............................................................ 18, 24

40 Pa. Cons. Stat. Ann. § 323.3 ............................................................... 5

40 Pa. Cons. Stat. Ann. § 323.5 ..................................................... 6, 7, 18, 24

1921 Pa. Laws 285 § 213 ....................................................................... 5

R.I. Gen. Laws Ann. § 27-13.1-5 ........................................................ 18, 24

S.C. Code Ann. § 38-13-30 ................................................................. 18, 24

S.D. Codified Laws § 58-3-22 ................................................................ 24

Tenn. Code Ann. § 56-1-411 .................................................................. 24

Tex. Ins. Code Ann. § 401.058 ............................................................... 24

Utah Code Ann. § 31A-2- 207 ................................................................ 24

Utah Code Ann. §§ 31A-2-204 ............................................................... 24

Va. Code Ann. § 38.2-1320.5 ............................................................. 18, 24

Vt. Stat. Ann. tit. 8, § 3574 ............................................................... 18, 24

W.V. Rev. Code Ann. § 33-2-9 ............................................................... 18, 24
Wash. Rev. Code Ann. § 48.02.065 ....................................................... 18, 24
Wis. Stat. Ann. § 601.465 ............................................................................ 24
Wyo. Stat. Ann. § 26-2-121 .................................................................... 18, 24

**Rules**

Fed. R. Civ. P. 45 ............................................................................... passim
Fed. R. Evid. 501 ............................................................................... passim
Proposed Rules of Evidence, 56 F.R.D. 183 (1972) .................................... 27

## Introduction

The California Department of Insurance, Florida Office of Insurance Regulation, Illinois Department of Insurance, New Hampshire Insurance Department, New Jersey Department of Banking and Insurance, North Dakota Insurance Department, and Pennsylvania Insurance Department (collectively, the "Insurance Departments") submit this amicus brief in support of the appeal by non-party Verus Financial LLC ("Verus") from Magistrate Judge Madeline Cox Arleo's December 3, 2014 Order (ECF No. 130) pursuant to Local Rule 72.1(c).

## Interest of Amici

Amici are the insurance departments of California, Florida, Illinois, New Hampshire, New Jersey, North Dakota, and Pennsylvania (the "Lead States"). They act as the leaders of the targeted multistate market conduct examination of The Prudential Insurance Company of America, Pruco Life Insurance Company, Pruco Life Insurance Company of New Jersey, Prudential Retirement Insurance and Annuity Company, and Prudential Annuities Life Assurance Corporation (formerly known as American Skandia Life Assurance Corporation) (collectively, "Prudential"). The amici Insurance Departments seek to be heard to bring directly to the Court's attention the critical regulatory interests that underlie the statutory

1

confidentiality provided by state insurer examination statutes and to
articulate why those interests warrant and are entitled to protection as a
matter of federal law.

The amici regulators are charged under their respective state statutes
with enforcing the insurance laws of their states.  Among those laws are the
statutes concerning the proper and timely payment of claims and benefits
under insurance policies to policyholders and beneficiaries.  To evaluate and
determine whether Prudential was acting in compliance with those laws,
certain insurance regulators initiated "market conduct" examinations of
Prudential under state insurer examination statutes.  These examinations
were eventually brought together as a targeted multistate market conduct
examination of Prudential coordinated by the seven Lead States, with the
Pennsylvania Insurance Department acting as the managing lead state.  Such
multistate examinations are conducted pursuant to procedures promulgated
by the National Association of Insurance Commissioners ("NAIC").  Verus
was engaged by the managing lead state as an examiner to assist in
conducting the Prudential examination.  As a result of the examination,
Prudential and the Lead States entered a Regulatory Settlement Agreement
("RSA") under which Prudential agreed to change the way in which it
searched for and sought to contact beneficiaries of certain life insurance

2

policies in order to make payments of benefits under the policies. Forty-eight States, the District of Columbia, Puerto Rico and Guam subscribed to the Prudential RSA.

The ready access to information from insurers and open communication between insurers and regulators is critical to the effectiveness of the examination process. If the records and information provided by the insurers and the inquiries and commentary exchanged between the insurers and regulators in the course of an examination were available to others, the free and open flow of information and exchanges of views would be curtailed to the detriment of policyholders. Insurers would reasonably be concerned that information and commentary regarding compliance with insurance law could form the basis for private litigation, and that private litigants could "piggyback" on the regulators' investigation and analysis. As a result, insurers would likely resist providing information on troublesome issues and would more actively seek to shape disclosures with litigation in mind. This would create conflict over access to information, slow examinations, and reduce the regulators' ability to monitor insurers' compliance with law and cause insurers to change practices and thereby further the interests of policyholders.

As discussed below, the legislatures of the States have recognized the need to hold examination information confidential and to shield it from the type of non-party discovery sought here.  They have enacted confidentiality and non-discovery provisions as part of the state examination statutes to further the policyholder-protective purposes of state regulation of the business of insurance.

The discovery of examination records sought by plaintiffs through their subpoena of the Lead States' examiner Verus in this case is contrary to these statutes and would severely damage the framework for open communication in examinations that those statutes protect.  Overriding the statutory confidentiality afforded examination records as advocated by these plaintiffs would gravely affect the ability of state insurance regulators to conduct examinations and protect policyholders by assessing and requiring insurers to comply with insurance laws.  Amici seek to be heard to directly advance and safeguard the policyholder-protective purposes underlying the state insurer examination statutes.

### The State Insurer Examination Confidentiality Statutes

To enable state insurance regulators, who are the principal regulators of the business of insurance, to evaluate and determine whether insurance companies are acting in compliance with such statutes and to monitor

4

insurers' financial condition, the legislatures of the Lead States have enacted
statutes authorizing the insurance commissioners to appoint examiners and
to conduct examinations of insurance companies.  See Cal. Ins. Code § 730;
Fla. Stat. Ann. § 624.316; 215 Ill. Comp. Stat. Ann. 5/132 and 5/401; N.H.
Rev. Stat. Ann. § 400-A:37, III; N.J. Stat. Ann. § 17:23-22; N.D. Cent. Code
§ 26.1-03-19.2; 40 Pa. Cons. Stat. Ann. § 323.3.[1]  These statutes consistently
require insurers to provide free access to the records of the company to
examiners and authorize examiners to issue subpoenas and examine under
oath any person as to matters pertinent to the examination.[2]  The examiners
are to prepare reports concerning the examination to which the insurer may

---

[1] The States have long provided insurance commissioners with authority to
examine insurers.  See, e.g., 1855 Mass. Acts, c. 124, §§ 5-7.  The
legislatures of the Lead States all enacted examination statutes in the late
Nineteenth or early Twentieth Centuries.  See Cal. Political Code § 597
(1903) (citing acts of 1872); Fla. Rev. Gen. Stat. § 4247 (1919) (citing acts
of 1872, 1895, and 1915); 1937 Ill. Laws § 132.5; 1913 N.H. Laws ch. 42,
§ 7; N.J. Gen. Stat., Ins. §§ 48-50 (1895); N.D. Rev. Code § 3123 (1899)
(citing acts of 1891); 1921 Pa. Laws 285 § 213 (also repealing various
nineteenth century laws).  All 50 states have insurer examination statutes.

[2] These wide-ranging rights of access and investigation derive from the
concept of "visitorial" power.  See Insurance Comm'r of Md. v. Blue Shield
of Md., 456 A.2d 914, 925 (Md. 1983); Illinois Hosp. Serv., Inc. v. Gerber,
165 N.E.2d 279, 282 (Ill. 1960).  Insurance commissioners have "a duty to
exercise a broad surveillance over the operations of companies with a view
to instituting procedures and recommending changes which might prevent or
reduce the likelihood of unsuccessful ventures."  Commissioner of Ins. v.
First Nat'l Bank, 223 N.E.2d 684, 687-88 (Mass. 1967).

respond; final reports may typically be used as the basis for regulatory action.

The statutes seek to encourage candor and open communication between insurers and regulators in examinations. To that end, they typically provide that documents, information, and working papers produced by, obtained by, or disclosed to the regulator in the course of an examination "shall be given confidential treatment and are not subject to subpoena and shall not be made public by the [regulator] or any other person." See, using the Lead States as examples, Cal. Ins. Code § 735.5(c); 215 Ill. Comp. Stat. Ann. 5/132.5(f) and 5/401.5(c); N.H. Rev. Stat. Ann. 400-A:37, IV-a(a); N.J. Stat. Ann. § 17:23-24(f); N.D. Cent. Code § 26.1-03-19.4(6)(a); 40 Pa. Cons. Stat. Ann. § 323.5(f).[3] The statutes typically permit disclosure to the extent information is included in a final examination report and authorize the regulator to use the information in regulatory proceedings. Cal. Ins. Code § 735.5(a); 215 Ill. Comp. Stat. Ann. 5/132.5(e) & (f) and 5/401.5(c); N.H. Rev. Stat. Ann. 400-A:37, IV-a(a); N.J. Stat. Ann. § 17:23-24(e); N.D. Cent. Code § 26.1-03-19.4(5); 40 Pa. Cons. Stat. Ann. § 323.5(e). They also typically allow the confidential material to be shared with other insurance

---

[3] Some statutes provide that the examination records "shall not be subject to discovery or admissible in a private civil action" and are "privileged." E.g., N.H. Rev. Stat. Ann. 400-A:37, IV-a(a). The language quoted in the text is the most common formulation.

regulators, the NAIC, and other state or federal law enforcement agencies,

provided that these other entities agree to hold the material similarly

confidential. Cal. Ins. Code § 735.5(b); 215 Ill. Comp. Stat. Ann. 5/132.5(e)

& (f), 5/401.5(c) and 5/404(b); N.H. Rev. Stat. Ann. 400-A:37, IV(e); N.J.

Stat. Ann. § 17:23-24(e), (f); N.D. Cent. Code § 26.1-03-19.4(5), (6); 40 Pa.

Cons. Stat. Ann. § 323.5(e), (f).[4]

Significantly, the statutory examination confidentiality applies to

documents produced by, obtained by or provided to the examiners appointed

by the state insurance commissioner. It does not extend to the underlying

documents and information held by the insurer. That is, the insurers'

documents and information do not become confidential and non-

discoverable simply because they have been provided to the regulator. The

statutes protect the conduct of the examination, including what the examiner

requested, what was provided to the examiner, the communications between

examiner and insurer, and the examiner's analysis and commentary. While

documents and information provided in the course of an examination may

not be obtained from the regulator, they are available from the insurer.

---

[4] Florida's confidentiality provision varies somewhat but covers multistate examination records. It accords confidential treatment to information received from another governmental entity or the NAIC which is confidential or exempt when held by that entity. Fla. Stat. Ann. § 624.319(3)(b)(2)(b) and (4)(g).

## ARGUMENT

## THE COURT SHOULD REVERSE THE ORDER AND QUASH THE SUBPOENA TO THE LEAD STATES' EXAMINER VERUS SEEKING EXAMINATION RECORDS.

The Court should reverse the order overruling Verus' objections to discovery of records of the Lead States' Prudential examination.  The order did not consider that the state examination statutes govern the discoverability of the examination records as a matter of federal law under the McCarran-Ferguson Act, and it did not give appropriate weight to those state statutes in considering whether to protect the records as privileged as a matter of federal common law under Fed. R. Evid. 501.

The Court of Appeals for the Third Circuit set forth a general framework for discoverability of records protected by state confidentiality provisions in federal question actions in Pearson v. Miller, 211 F.3d 57 (3d Cir. 2000).  The court concluded that the question whether discovery is permitted is one of federal law, and it then addressed whether the state statutes should be recognized as a privilege under federal common law under Federal Rule of Evidence 501.  Id. at 61, 66.  However, this case differs from Pearson in that the state law provisions themselves apply directly through the federal McCarran-Ferguson Act, which provides that state insurance statutes will not be preempted by general federal statutes such as

8

the federal rules.  See 15 U.S.C. § 1012.  Even if the state statutes do not

apply directly, the concerns driving their enactment by the state legislatures

warrant recognition as a privilege under Rule 501.

The state insurer examination statutes prohibit subpoenas for

examination records in private civil litigation.  Such records are

"confidential" and "shall not be subject to subpoena."  The state statutes thus

provide a privilege and bar discovery of such records.  These protections

should be directly enforced under the McCarran-Ferguson Act or,

alternatively, should be recognized as a matter of federal law under Fed. R.

Evid. 501.

## I.   THE STATE INSURER EXAMINATION STATUTES APPLY DIRECTLY BECAUSE THEY ARE PROTECTED AGAINST PREEMPTION BY THE FEDERAL MCCARRAN-FERGUSON ACT.

The plaintiffs issued a subpoena to Verus pursuant to Fed. R. Civ. P.

45 seeking examination records subject to the state examination

confidentiality statutes that specifically provide that such documents are not

subject to subpoena.  Plaintiffs further contend that under Fed. R. Evid. 501

no privilege applies to such documents in a case involving a federal cause of

action, even though the state examination statutes create a privilege.

However, the state protections control because the McCarran-Ferguson Act

"reverse preempts" the federal subpoena and evidence rules.

The McCarran-Ferguson Act declares as a matter of federal policy that the regulation of the business of insurance is committed to the States:

> The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

15 U.S.C. § 1012(a).  The Act protects the States' regulation of the business of insurance from federal preemption, unless Congress expressly provides to the contrary:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance. . . .

15 U.S.C. § 1012(b).  The Act "thus precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede" the State's law." Humana Inc. v. Forsyth, 525 U.S. 299, 307 (1999).  See Department of Treasury v. Fabe, 508 U.S. 491, 501 (1993); Weiss v. First Unum Life Ins. Co., 482 F.3d 254, 258-59 (3d Cir. 2007); Suter v. Munich Reins. Co., 223 F.3d 150, 160-61 (3d Cir. 2000).  All these requisites are satisfied here.  Accordingly, the state insurer examination confidentiality statutes apply as a matter of federal law.

A. **The State "No Subpoena" Statutes Protect Examination Records From Subpoena Under Federal Rule of Civil Procedure 45.**

The state insurer examination statutes provide that examination records are not subject to subpoena. These state statutes were enacted for the purpose of regulating the business of insurance. Thus, under McCarran-Ferguson, they prevail over Fed. R. Civ. P. 45, which does not specifically relate to the business of insurance.

The State "no subpoena" statutes were "enacted for the purpose of regulating the business of insurance." The insurer examination statutes concern the regulation of insurance. They provide the state insurance regulators with tools to investigate, monitor, and assess insurers' financial condition and compliance with insurance laws and, when necessary, to enforce compliance with those laws. Financial examinations protect policyholders' interest in the solvency of insurers, while market conduct examinations protect policyholders' interest in insurers' compliance with insurance law. The "no subpoena" provisions of the examination statutes permit effective regulation by furthering the free exchange of information and views between the regulators and the insurers. Without the confidentiality afforded by those provisions, insurers would be resistant to

11

providing information; regulation and the consequent policyholder protection would be less effective.

As the Supreme Court stated shortly after passage of the Act, "[o]bviously Congress' purpose was broadly to give support to the existing and future state systems for regulating and taxing the business of insurance." Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 429 (1946). See Weiss, 482 F.3d at 259. Examination statutes are a critical part of that state system, and they plainly were enacted "for the purpose of regulating the business of insurance." "The broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." Fabe, 508 U.S. at 505. See Sabo v. Metropolitan Life Ins. Co., 137 F.3d 185,190 (3d Cir. 1998) ("The focus of section 1012(b) [of the McCarran-Ferguson Act] is not directed toward the business of insurance itself, but rather toward a certain subset of laws relating to insurance regulation under section 1012(a).").

Examination statutes plainly possess the intent to "regulate": they were enacted to provide insurance commissioners with the tools to adjust, manage or control the insurance business. The laws are in every state insurance code and are part of every insurance department's duties. They

12

require insurers to provide access to information, respond to requests for information and provide for reports and potential regulatory action. They provide the state regulators with the means to determine and evaluate insurers' financial condition and to assess insurers' compliance with the insurance laws that govern their conduct. In this case, the regulators were seeking to review Prudential's compliance with laws governing the payment of policy benefits. That review led to a policyholder-beneficial settlement with Prudential.

The state statutes regulate the "business of insurance" because they protect policyholders' interests in the reliability and enforceability of insurance policies. In construing the McCarran-Ferguson Act, the Supreme Court initially emphasized that the "relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement . . . were the core of the 'business of insurance.'" SEC v. National Sec., Inc., 393 U.S. 453, 460 (1969). Later, in the context of cases involving insurance company practices, the Court stressed three factors: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and insured; and third, whether the practice is limited to entities within the insurance

industry." Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982).

See Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 211

(1979).

These factors are only indirectly pertinent to cases not involving

insurer conduct but state regulation itself. When faced with a challenge to a

state insurer liquidation priority scheme, the Supreme Court again

emphasized the relationship between the insurance company and its

policyholders. Fabe, 508 U.S. at 501-503.[5] The Court held that the

performance of an insurance contract fell within the "business of insurance."

Fabe, 508 U.S. at 503-504. Enforcement of the policy concerned the

transfer of risk; it was central to the policy relationship; and it was confined

to entities within the insurance industry. Id. The Court concluded that the

liquidation priority statute in Fabe was "enacted 'for the purpose of

regulating the business of insurance' to the extent that it serves to ensure

that, if possible, policyholders ultimately receive payment on their claims."

---

[5] See In re Ins. Brokerage Antitrust Litigation, 618 F.3d 300, 359 (3d Cir.
2010) ("Fabe makes clear that the Royal Drug test is only a starting point in
the analysis for non-antitrust cases.") (quotation and punctuation omitted).
The Supreme Court noted in the ERISA context that "the McCarran-
Ferguson factors were developed in cases that characterized *conduct* by
private actors, not state laws." Kentucky Ass'n of Health Plans, Inc. v.
Miller, 538 U.S. 329, 340 (2003) (emphasis in original).

Id. at 506.  More generally, it held that the statute "escapes pre-emption to the extent that it protects policyholders."  Id. at 493.

The statutes at issue here serve to protect policyholders.  Financial examinations focus on protecting an insurer's solvency, which is essential to performance of the insurance contract.  See Fabe, 508 U.S. at 505-506.  Market conduct examinations focus on the insurer's compliance with insurance laws in their dealing with policyholders; that is, they directly address insurers' performance of policy obligations.  The Prudential examination, for instance, addressed concerns that Prudential was not properly taking steps to identify policyholders or their beneficiaries in order to pay benefits under the policies.  The examination statutes protect policyholder interests in the reliability and enforceability of insurance policies, and their "no subpoena" provisions further those purposes.  They were enacted for the purpose of regulating the business of insurance.

Federal Rule of Civil Procedure 45 conflicts with the state insurer examination statutes.  The rule authorizes subpoenas, while the "no subpoena" provisions of the state insurer examination statutes bar subpoenas.  The rule constitutes an Act of Congress covered by the McCarran-Ferguson Act.  The Federal Rules of Civil Procedure were promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, and

accordingly constitute Acts of Congress for purposes of the McCarran-Ferguson Act.[6]

Application of Rule 45 to examination records would "invalidate, impair, or supersede" the state statutes. "Invalidate" ordinarily means "to render ineffective, generally without providing a replacement rule or law"; "supersede" ordinarily means "to displace (and thus render ineffective) while providing a substitute rule"; and "impair" means "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." See Humana, 525 U.S. at 307-308, 309-310 (citations and quotations omitted). The federal rule would supersede, invalidate, and impair the state statutes by nullifying their "no subpoena" protections. If this case presented state-law causes of action in state court, any attempt to subpoena examination records would plainly be invalid. Application of Rule 45 here directly conflicts with state statutes, frustrates state policies, and interferes with states' administrative regimes. See id. at 310.

---

[6] In the course of holding that a proposed settlement could not violate McCarran-Ferguson, the district court has said that the Federal Rules of Civil Procedure are not an Act of Congress because the Supreme Court just transmits such rules to Congress. In re Prudential Ins. Co. of Am. Sales Practice Lit., 962 F. Supp. 450, 561 & n. 87 (D.N.J. 1997), aff'd, 148 F.3d 283 (3d Cir. 1998). This gives no weight to the Act of Congress authorizing the rules in the first place. It has long been clear that the rules, promulgated under the Act of June 19, 1934, c. 651, 48 Stat. 1064, have "the force of a federal statute." Sibbach v. Wilson & Co., 312 U.S. 1, 13 (1941).

The federal rule does not "specifically relate to the business of insurance." "Specifically" can mean "explicitly, particularly, or definitely." Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 38 (1996) (citation and punctuation omitted). Neither Fed. R. Civ. P. 45 nor the Rules Enabling Act refers to insurance at all.[7]

As the McCarran-Ferguson Act protects the state "no subpoena" statutes from preemption by Rule 45, the subpoena for examination records should be quashed.

### B. The Insurer Examination Statutes Create A State Privilege That Is Not Displaced By Federal Rule of Evidence 501.

The state examination statutes create a privilege that shields examination records from discovery. To the extent that Fed. R. Evid. 501 provides any different rule and would permit discovery of the records, the state statutes apply under McCarran-Ferguson.

The state examination statutes create a privilege against the use of examination records in private civil litigation. One of the Lead States' statutes expressly refers to the protection as a "privilege." N.H. Rev. Stat.

---

[7] The Rules Enabling Act's supersession clause, 28 U.S.C. § 2072(b), has no application. The insurance-specific McCarran-Ferguson Act prevails over the general Rules Enabling Act, and the federal rule authorizing subpoenas was in effect in 1937, well before the McCarran-Ferguson Act was enacted in 1946, and thus is subject to it.

Ann. 400-A:37, IV-a(a) (examination documents shall be "confidential by

law and privileged . . . and shall not be subject to discovery or admissible in

evidence in any private civil action").[8]  Five other Lead States' statutes

provide examination records are "confidential" and specify that they shall

"not be subject to subpoena."  Cal. Ins. Code § 735.5(c); 215 Ill. Comp. Stat.

Ann. 5/132.5(f) and 5/401.5(c); N.J. Stat. Ann. § 17:23-24(f); N.D. Cent.

Code § 26.1-03-19.4(6)(a); 40 Pa. Cons. Stat. Ann. § 323.5(f).[9]  These

provisions create a privilege by "recognize[ing] a series of rights, variously

defined, to withhold relevant evidence from judicial proceedings."  See

---

[8] Six other States have also enacted such statutes.  See Ariz. Rev. Stat. Ann.
§ 20-158.F.; D.C. Code § 31-1404(f); Ind. Code. Ann. § 27-1-3.1-15(a); Md.
Code Ann., Ins., § 2-209(g); Miss. Code Ann. § 83-5-209(7); R.I. Gen. Laws
Ann. § 27-13.1-5(f).

[9] Twenty-six other States have also enacted such statutes.  See Ark. Code
Ann. § 23-61-207; Cal. Ins. Code § 735.5(c); Colo. Rev. Stat. Ann. § 10-1-
205(8); Conn. Gen. Stat. Ann. § 38a-14(j); Del. Code Ann., tit. 18, § 321(g);
Ga. Code Ann., § 33-2-14(g); Haw. Rev. Stat. § 431:2-305(f); 215 Ill.
Comp. Stat. Ann. 5/132.5(f) and 5/401.5(c); Kan. Stat. Ann. § 40-222(k)(7);
La. Rev. Stat. Ann. § 22:1983(J); Me. Rev. Stat. tit. 24-A, § 225(3); Mich.
Comp. Laws Ann. § 500.222(7); Minn. Stat. Ann. §60A.031, Subd. 4(f);
Mo. Ann. Stat. § 374.205(4); Mont. Code Ann. § 33-1-409(6); N.C. Gen.
Stat. Ann. § 58-2-132(f); N.D. Cent. Code § 26.1-03-19.4(6)(a); Neb. Rev.
Stat. § 44-5906(8)(a); N.J. Stat. Ann. § 17.23-24(f); N.M. Rev. Stat. Ann.
§ 59A-4-11.B; Nev. Rev. Stat. Ann. § 679B.285.2; Ohio Rev. Code Ann.
§ 3901.48(B); Okla. Stat. Ann. tit. 36, § 309.4(F); Or. Rev. Stat. Ann.
§§ 731.312(6) and 705.137(1); 40 Pa. Cons. Stat. Ann. § 323.5(f); S.C. Code
Ann. § 38-13-30(F); Va. Code Ann. § 38.2-1320.5; Vt. Stat. Ann. tit. 8,
§ 3574(4); Wash. Rev. Code Ann. § 48.02.065; W.V. Rev. Code Ann.
§ 33-2-9(l)(4); Wyo. Stat. Ann. § 26-2-121(m).

Pearson, 211 F.3d at 69 (Pennsylvania "confidentiality" statutes regarding patient and juvenile records must be considered "privileges").

These state examination privilege statutes were enacted for the purpose of regulating the business of insurance. As discussed above, the examination confidentiality provisions protect policyholders by encouraging the free exchange of information and views between regulators and insurers. They are "reasonably necessary" to further the goal of protecting policyholders and thus fall within the scope of the McCarran-Ferguson Act. See Fabe, 508 U.S. at 509. If regulators were not able to confidentially obtain and evaluate information and assess insurers' compliance with law, regulation and the consequent policyholder protection would be impaired. Policyholder-protective resolutions such as the Prudential RSA would be much harder to achieve. The state privilege against production of examination records is a critical part of the state scheme for the regulation of insurance.

To the extent it might provide a different rule, Fed. R. Evid. 501 conflicts with the state privilege statutes. The Federal Rules of Evidence constitute an Act of Congress subject to the McCarran-Ferguson Act. They were specifically approved by Congress. See Act of Jan. 2, 1975, Pub.L. No. 93-595, 88 Stat. 1926; Sims v. Great Am. Life Ins. Co., 469 F.3d 870,

878-79 (10th Cir. 2006) (Rules of Evidence are an "act of Congress" for purposes of the Erie doctrine). As set forth in Part II below, the Lead States believe that Fed. R. Evid. 501 incorporates, as a matter of federal common law, the state statutory confidentiality and protection from production. If it did not, however, then applying the federal rule would "invalidate, impair, or supersede" the state statutes. The federal rule would displace and render ineffective the state statutes and lessen their power. See Humana, 525 U.S. at 307-308, 309-310.

Finally, Rule 501 does not specifically relate to the business of insurance. It does not refer to insurance at all. See Barnett Bank, 517 U.S. at 38.

The McCarran-Ferguson Act thus protects the state examination confidentiality statutes from displacement by Rule 501. The examination records are privileged, and the subpoena seeking those records should be quashed.

## II.   THE COURT SHOULD RECOGNIZE A PRIVILEGE FOR EXAMINATION RECORDS UNDER FEDERAL COMMON LAW.

Even if the insurer examination confidentiality statutes do not directly apply, the court should accord comity to the state privileges and recognize them under the common law "as interpreted by the United States courts in

the light of reason and experience" under Fed. R. Evid. 501. See Pearson,

211 F.3d at 65-69 (discussing, among other cases, Jaffee v. Redmond, 518

U.S. 1 (1996), and Trammel v. United States, 445 U.S. 40 (1980)).[10] The

"general test" is whether the proposed privilege "promotes sufficiently

important interests to outweigh the need for probative evidence." Pearson,

211 F.3d at 67 (quoting Trammel, 445 U.S. at 51). The Pearson court noted

that "considerations against the recognition of new privileges that would

impede access to probative evidence are granted very significant weight."

Id. (citing Jaffee, 518 U.S. at 9). It stated, however, that "[t]he case for

recognizing a particular federal privilege is stronger, however, where the

information sought is protected by a state privilege. '[T]he policy decisions

of the States bear on the question whether federal courts should recognize a

new privilege or amend the coverage of an existing one.'" Pearson, 211

F.3d at 67 (quoting Jaffee, 518 U.S. at 12-13). The court added that "[a]

strong policy of comity between state and federal sovereignties impels

federal courts to recognize state privileges where this can be accomplished at

no substantial cost to federal substantive and procedural policy." Id.

---

[10] Rule 501 was amended since Pearson, in 2011, but the Advisory
Committee Note to Fed. R. Evid. 501 states it was amended "as part of the
restyling of the Evidence Rules to make them more easily understood and to
make style and terminology consistent" with the intent that all changes be
"stylistic only" and with "no intent to change any result in any ruling."

(quoting United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)).  The comity to be accorded state privilege laws is particularly strong in this case because application of the state examination laws serves the federal policy of leaving the regulation of the business of insurance to the States declared by the McCarran-Ferguson Act.  The balance weighs strongly in favor of recognizing an examination privilege here.

As discussed above, the state examination statutes create a privilege against the use of examination records in private civil litigation.  A number of the state statutes provide that examination records are "privileged."  See page 17 & note 8 above.  The statutes typically speak in terms of "confidentiality" and specify that the examination records shall "not be subject to subpoena."  See page 18 & note 9 above.  These provisions create a privilege by "recognize[ing] a series of rights, variously defined, to withhold relevant evidence from judicial proceedings."  See Pearson, 211 F.3d at 69 (Pennsylvania patient and juvenile "confidentiality" statutes constitute "privileges").

Turning to the relevant factors, the public interests in effective regulation of insurers through examinations to assess their solvency and compliance with law are significant and should be accorded great weight. Examinations provide a critical mechanism for insurance regulators to obtain

ready access to information to evaluate insurers' compliance with law and

take prompt, usually relatively informal action to quickly remedy non-

compliant behavior.  While multistate examinations are relatively infrequent

and lead to formal remedial steps (such as in the Prudential RSA), single-

state examinations of numerous insurers are underway throughout the United

States at all times.  Such examinations would be particularly affected by the

difficulties and delays in obtaining information that would result from

making examination information available as sought by plaintiffs.  Insurance

regulation would be less effective in encouraging and requiring compliance

with insurance laws for the protection of policyholders if examination

records were not protected from discovery in private litigation.  The

privilege thus "serv[es] public ends."  Jaffee, 518 U.S. at 11 (quoting

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  Without it, the

statutorily required relationship of confidence and trust in insurer

examinations would be gravely impaired.  The state statutory assurance of

confidentiality "would have little value" if the insurer were aware that the

privilege would not be honored in a federal court.  Id. at 13.

Most significantly, the weight of the interests served by

confidentiality is demonstrated by the fact that all 50 States and the District

of Columbia have enacted into law some form of examination privilege.[11]

See Jaffee, 518 U.S. at 12-13 & n. 11 (approving federal psychotherapist

privilege in great part because all States had enacted such privilege statutes;

listing statutes). "[T]he policy decisions of the States bear on the question

whether federal courts should recognize a new privilege . . . Because state

legislatures are fully aware of the need to protect the integrity of the

factfinding functions of their courts, the existence of a consensus among the

States indicates that 'reason and experience' support recognition of the

---

[11] Ala. Code § 27-2-24(c); Alaska Stat. § 21.06.150(g); Ariz. Rev. Stat. Ann. § 20-158.F.; Ark. Code Ann. § 23-61-207; Cal. Ins. Code § 735.5(c); Colo. Rev. Stat. Ann. § 10-1-205(8); Conn. Gen. Stat. Ann. § 38a-14(j); Del. Code Ann., tit. 18, § 321(g); D.C. Code § 31-1404(f); Fla. Stat. Ann. § 624.319(3)(b)(2)(b) and (4)(g); Ga. Code Ann. § 33-2-14(g); Haw. Rev. Stat. § 431:2-305(f); Idaho Code § 9-340D(5); 215 Ill. Comp. Stat. Ann. 5/132.5(f) and 5/401.5(c); Ind. Code. Ann. § 27-1-3.1-15(a); Iowa Code Ann. § 507.14(3); Kan. Stat. Ann. § 40-222(k)(7); Ky. Rev. Stat. Ann. § 304.2-250(3); La. Rev. Stat. Ann. § 22:1983(J); Me. Rev. Stat. Ann. tit. 24-A, § 225(3); Md. Code Ann., Ins. § 2-209(g); Mass. Gen. Laws, ch. 175, § 4(12); Mich. Comp. Laws Ann. § 500.222(7); Minn. Stat. Ann. § 60A.031(4)(f); Miss. Code Ann. § 83-5-209(7); Mo. Ann. Stat. § 374.205(4); Mont. Code Ann. § 33-1-409(6); Neb. Rev. Stat. § 44-5906(8)(a); Nev. Rev. Stat. Ann. § 679B.285(2); N.H. Rev. Stat. Ann. § 400-A:37, IV-a(a); N.J. Stat. Ann. § 17:23-24(f); N.M. Stat. Ann. § 59A-4-11(B); N.Y. Ins. Law § 311; N.C. Gen. Stat. § 58-2-132(f); N.D. Cent. Code § 26.1-03-19.4(6)(a); Ohio Rev. Code Ann. § 3901.48(B); Okla. Stat. Ann. tit. 36, § 309.4(F); Or. Rev. Stat. Ann. §§ 731.312(6) and 705.137(1); 40 Pa. Cons. Stat. Ann. § 323.5(f); R.I. Gen. Laws Ann. § 27-13.1-5(f); S.C. Code Ann. § 38-13-30(F); S.D. Codified Laws § 58-3-22; Tenn. Code Ann. § 56-1-411(f); Tex. Ins. Code Ann. § 401.058(a); Utah Code Ann. §§ 31A-2-204 and 207; Vt. Stat. Ann. tit. 8, § 3574(d)(4); Va. Code Ann. § 38.2-1320.5; Wash. Rev. Code Ann. § 48.02.065; W.V. Code § 33-2-9(l)(4); Wis. Stat. Ann. § 601.465; Wyo. Stat. Ann. § 26-2-121(m).

privilege." Id. (citations omitted).  See In re Grand Jury Investigation, 918 F.2d 374, 381 & n. 10 (3d Cir. 1990) (adopting clergy-communicant privilege where "virtually every state has recognized some form of clergy-communicant privilege"; listing statutes).  Cf. In re Grand Jury, 103 F.3d 1140, 1150-51 (3d Cir. 1997) (declining to recognize parent-child privilege where only four States had).

The state interest in preserving confidentiality to encourage candor and open communication that underlies the insurer examination confidentiality statutes is not novel.  Similar concerns underlie various federal common law and statutory privileges.  Most notably, federal courts have acknowledged the weight of essentially identical concerns in recognizing the federal common law bank examiners privilege (in the absence of a federal statute).  E.g., In re Subpoena Served Upon Comptroller of Currency, 967 F.2d 630, 633-634 (D.C. Cir. 1992) ("[T]he courts have long recognized that the report of a bank examiner is protected by a qualified privilege."); Bank of America Nat'l Trust & Sav. Ass'n v. Douglas, 105 F.2d 100, 104-106 (D.C. Cir. 1939).[12]  As the District of Columbia Circuit stated:

---

[12] This case is quite unlike Pearson, where the person holding the privilege had waived it and the remaining third party interests protected were widely dispersed.  See 211 F.3d at 69-70.  Moreover, the privilege is being asserted

> [T]he bank examination privilege is firmly rooted in practical
> necessity.  Bank safety and soundness supervision is an iterative
> process of comment by the regulators and response by the bank.  The
> success of the supervision therefore depends vitally upon the quality
> of the communication between the regulated banking firm and the
> bank regulatory agency. . . .  ¶ Because bank supervision is relatively
> informal and more or less continuous, so too must the flow of
> communication between the bank and the regulatory agency.  Bank
> management must be open and forthcoming in response to the
> inquiries of bank examiners, and the examiners must in turn be frank
> in expressing their concerns about the bank.  These conditions could
> not be met as well if communications between the bank and its
> regulators were not privileged.

Subpoena Upon Comptroller of Currency, 967 F.2d at 633-34.  The federal

courts have also recognized the need to protect the flow of information

concerning potential violations of the law by creating the federal common

law informer's privilege.  See Roviaro v. United States, 353 U.S. 53, 59-62

(1957) (recognizing qualified privilege protecting the identity of persons

who furnish information to law enforcement officials).

Further, Congress has also enacted confidentiality or non-disclosure

statutes to protect and encourage the flow of information to the government.

See, e.g., 15 U.S.C. § 2055(e)(2) (protecting consumer product safety reports

from subpoena or discovery in civil actions).  The federal courts have

recognized such statutes as privileges.  See, e.g., Baldridge v. Shapiro, 455

---

not by a state defendant attempting to avoid liability but by regulators
seeking to protect the effectiveness of the regulatory process intended to
further the interests of policyholders.  Cf. id. at 68.

U.S. 345, 361 (1982) (privilege for census data to "encourage public participation" in light of 13 U.S.C. § 9(a): "Disclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress."); In re England, 375 F.3d 1169, 1178 (D.C. Cir. 2004) (Roberts, C.J.) (naval selection board privilege under 10 U.S.C. § 618(f): "Disclosure of selection board proceedings in civil discovery would certainly undermine, if not totally frustrate, the purpose [of the statute]. . . . [S]election board members will be less likely to engage in frank and open discussion if such discussions will be open to public scrutiny.") (quotations omitted).

The courts have also considered whether a proposed privilege was among the privileges recommended by the Advisory Committee on Rules of Evidence in 1972. See Jaffee, 518 U.S. at 14-15; In re Grand Jury, 103 F.3d at 1151. The Advisory Committee's proposed Rule 502 provided a privilege for reports required by law if the statute requiring the report provides the public officer or agency with a privilege to refuse to disclose it. 56 F.R.D. 183, 234-35. Similar to the state examination confidentiality statutes, a purpose of this proposed privilege was "encouraging the furnishing of the required information by assuring privacy." Advisory Committee Note to Rule 502 (1972). See Association for Women in Science v. Califano, 566

F.2d 339, 343-44 (D.C. Cir. 1977) (discussing "confidential report

privilege"); but see <u>Matter of Grand Jury Impaneled January 21, 1975</u>, 541

F.2d 373, 380-81 (3d Cir. 1976) (pre-<u>Jaffee</u> case requiring production of

contingency fee agreements filed with prothonotary but adding at 383: "We

also have not decided that a federal court will never recognize a state

required reports privilege as a matter of federal common law in a grand jury

investigation.").

Finally, upholding the state insurer examination confidentiality would

not impede access to probative evidence because the underlying documents

and information that Prudential provided to regulators are available to the

plaintiffs from another source – the insurer.  The underlying documents and

information concerning the conduct of the insurer under examination are not

subject to the examination confidentiality and remain discoverable in private

litigation.  The records concerning the multistate examination of Prudential

held by the Lead States' examiner Verus and covered by the examination

privilege are secondary and indirect evidence regarding Prudential's

conduct.  Prudential's own records are unaffected by the privilege except to

the extent they concern Prudential's interactions with examiners during the

examination.

In sum, the examination privilege promotes compelling interests that outweigh the need for any evidence that might be contained in examination records.  The Court should accordingly hold that the examination privilege as set forth in the state statutes applies as a matter of federal common law.  Under that privilege, the examination records are properly not subject to production, and the subpoena seeking them should be quashed.

## CONCLUSION

For the reasons stated above, the Court should reverse the Order dated

December 3, 2014 and enter an order quashing the subpoena seeking records

of the market conduct examination of Prudential.

Respectfully submitted,

CALIFORNIA DEPARTMENT OF          FLORIDA OFFICE OF
INSURANCE                         INSURANCE REGULATION

ILLINOIS DEPARTMENT OF            NEW HAMPSHIRE INSURANCE
INSURANCE                         DEPARTMENT

Lisa Madigan                      Joseph A. Foster
Attorney General of Illinois      Attorney General of New Hampshire

NORTH DAKOTA INSURANCE            PENNSYLVANIA INSURANCE
DEPARTMENT                        DEPARTMENT

                                  NEW JERSEY DEPARTMENT OF
                                  BANKING AND INSURANCE

                                  John J. Hoffman
                                  Acting Attorney General of New
                                  Jersey

                                  By: /s/ Joseph E. Snow
                                  Joseph E. Snow, Deputy Attorney
                                  General
                                  Richard E. Wegryn, Jr., Deputy
                                  Attorney General