COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | No. 2:12-cv-05275-MCA-SCM <br><br> CLASS ACTION <br><br> PLAINTIFFS' OMNIBUS OPPOSITION TO NON-PARTY |
| Plaintiff, | ) ) | VERUS FINANCIAL LLC'S L. CIV. R. 72.1 APPEAL OF THE COURT'S |
| vs. | ) ) | DECEMBER 3, 2014 ORDER AND AMICUS BRIEFS AND MOTION TO |
| PRUDENTIAL FINANCIAL, INC., et al., | ) ) ) | INTERVENE FILED IN SUPPORT THEREOF |
| Defendants. | ) ) | |
| | ) | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND.................................................................5

    A.   Verus Performs a Market Conduct Examination and Unclaimed Property Audit of Prudential on Behalf of the States............................6

    B.   Verus's Market Conduct Examination and Unclaimed Property Audit Results in a Global Resolution Agreement .................................7

    C.   Verus's Market Conduct Examination and Unclaimed Property Audit Results in a Regulatory Settlement Agreement .........................9

III.  ARGUMENT.......................................................................................10

    A.   Federal Common Law, Not the Various and Differing State Insurance Codes, Governs Privilege in This Federal Question Case ............................................................................................13

    B.   Verus Did Not and Cannot Justify Importing Various State Insurance Codes into Federal Common Law Nationwide Because There Is No Transcendent Public Good Warranting the Creation of a New Privilege ................................................................15

    C.   The McCarran-Ferguson Act Weighs Against the Creation of a New Privilege ....................................................................................19

    D.   Varied State Statutes Cannot Dictate Federal Common Law .............22

    E.   Even if a State Insurance Code Privilege Existed Under Federal Common Law, Some States Have Waived It Here .............................25

    F.   The Requested Document Production and Deposition Testimony Impose No Undue Burden..................................................28

    G.   The Official Information Privilege Does Not Apply .........................31

**Page**

H.   The Court Fairly Considered the *Amicus Curiae* Positions of the NAIC and the State Insurance Departments and Rejected Them – They Still Have No Merit .................................................................. 33

1.   The *Amicus Curiae* Submissions Are Unnecessary ................. 34

2.   The *Amicus Curiae* Submissions Are Unhelpful ..................... 35

I.   The California Controller's Motions Should Be Denied ................... 37

IV.   CONCLUSION .............................................................................. 39

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abu-Jamal v. Horn*,
   No. 99-5089, 2000 U.S. Dist. LEXIS 11013
   (E.D. Pa. Aug. 7, 2000)........................................................................34

*Agster v. Maricopa Cnty.*,
   422 F.3d 836 (9th Cir. 2005) ...............................................16, 22, 24

*Branzburg v. Hayes*,
   408 U.S. 665 (1972)..............................................................................18

*Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court*,
   408 F.3d 1142 (9th Cir. 2005) ............................................................30

*Cedarcrestone Inc. v. Affiliated Computer Servs. LLC*,
   No. 1:14-MC-0298, 2014 U.S. Dist. LEXIS 90479
   (M.D. Pa. July 3, 2014)........................................................................28

*Collins v. Ford Motor Credit Co., LLC*,
   No. 5:12 CV 2677, 2012 U.S. Dist. LEXIS 180956
   (N.D. Ohio Dec. 21, 2012)..................................................................11

*Couch v. United States*,
   409 U.S. 322 (1973)..............................................................................18

*Del Valle v. Astrue*,
   No. 10-2330, 2011 U.S. Dist. LEXIS 111325
   (E.D. Pa. Sept. 27, 2011) .....................................................................11

*Doe v. Special Investigations Agency, Inc.*,
   779 F. Supp. 21 (E.D. Pa. 1991).........................................................23

*Dr. Reddy's Labs. Ltd. v. MDS, Inc.*,
   No. 09-2398, 2012 U.S. Dist. LEXIS 41648
   (D.N.J. Mar. 27, 2012).........................................................................10

**Page**

*EEOC v. FAPS, Inc.*,
No. 10-3095 (PGS), 2012 U.S. Dist. LEXIS 65591
(D.N.J. May 10, 2012) ............................................................31, 32

*EEOC v. Ill. Dep't of Emp't Sec.*,
995 F.2d 106 (7th Cir. 1993) ...........................................14, 18, 19, 36

*Elkins v. United States*,
364 U.S. 206 (1960)............................................................................12

*Essex Chem. Corp. v. Hartford Accident & Indem. Co.*,
993 F. Supp. 241 (D.N.J. 1998) .........................................................28

*Evans v. Emp. Benefit Plan,*
No. 03-4915 (RBK), 2006 U.S. Dist. LEXIS 95782
(D.N.J. June 6, 2006) ..........................................................................12

*Fallon v. Locke, Liddell & Sapp, LLP*,
No. 5:04-cv-3210 RMW (RS), 2005 U.S. Dist. LEXIS 46987
(N.D. Cal. Aug. 4, 2005)......................................................................29

*Folb v. Motion Picture Indus. Pension & Health Plans*,
16 F. Supp. 2d 1164 (C.D. Cal. 1998),
*aff'd*, 216 F.3d 1082 (9th Cir. 2000)..............................................14, 24

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*,
No. 13-5805 (JLL), 2014 U.S. Dist. LEXIS 103482
(D.N.J. July 29, 2014)......................................................1, 10, 11, 13

*Garcia v. Island Program Designer, Inc.*,
4 F.3d 57 (1st Cir. 1993)......................................................................20

*Gaskin v. Commonwealth,*
No. 94-4048, 1997 U.S. Dist. LEXIS 17963
(E.D. Pa. Nov. 4, 1997).......................................................................29

**Page**

*Goldberg v. City of Phila.*,
  No. 91-7575, 1994 U.S. Dist. LEXIS 9392
  (E.D. Pa. July 14, 1994)...........................................................34, 35

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*,
  202 F.R.D. 418 (E.D. Pa. 2001)............................................12, 26, 28

*Haines v. Liggett Grp. Inc.*,
  975 F.2d 81 (3d Cir. 1992) ..............................................................28

*Hartman v. Nicholson*,
  483 F.3d 1311 (Fed. Cir. 2007) ........................................................5

*Herbert v. Lando*,
  441 U.S. 153 (1979)........................................................................18

*Humphreys v. Regents of the Univ. of Cal.*,
  No. C 04-03808 SI, 2006 U.S. Dist. LEXIS 17126,
  (N.D. Cal. Feb. 13, 2006) ................................................................24

*In re Cmty. Bank of N. Va.*,
  418 F.3d (3d Cir. 2005) ...................................................................38

*In re Grand Jury Impaneled January 21, 1975*,
  541 F.2d 373 (3d Cir. 1976) ......................................................19, 23

*In re Grand Jury Investigation*,
  918 F.2d 374 (3d Cir. 1990) ......................................................12, 25

*In re Grand Jury Proceedings*,
  103 F.3d 1140 (3d Cir. 1997) ...................................................*passim*

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997),
  *aff'd, In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ............................................................20

**Page**

*In re Sealed Case*,
148 F.3d 1073 (D.C. Cir. 1998) .................................................................18

*In re Teleglobe Commc'ns Corp.*,
493 F.3d 345 (3d Cir. 2007) .................................................................26, 28

*Int'l Ins. Co. v. Duryee*,
96 F.3d 837 (6th Cir. 1996) .................................................................20

*Jaffee v. Redmond*,
518 U.S. 1 (1996).........................................................14, 22, 23, 25

*Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*,
5 F.3d 1508 (D.C. Cir. 1993) .................................................................19

*Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery*,
177 F.R.D. 205 (D.N.J. 1997).................................................................28

*Maple Creek Commons Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
No. 1:08-cv-00475-TWP-MJD, 2012 U.S. Dist. LEXIS 909
(S.D. Ind. Jan. 4, 2012) .................................................................24

*Murphy v. Farmers New World Life Ins. Co.*,
No. 2:12-cv-2198 JWS, 2014 U.S. Dist. LEXIS 66749
(D. Ariz. May 12, 2014) .................................................................30

*NAACP v. New York*,
413 U.S. 345 (1973).................................................................37

*NLBR v. N. Bay Plumbing*,
102 F.3d 1005 (9th Cir. 1996) .................................................................24

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978).................................................................12

*Pac. Pictures Corp. v. U.S. Dist. Court*,
679 F.3d 1121 (9th Cir. 2012) .................................................................21

- vi -

**Page**

*Pacitti by Pacitti v. Macy's*,
   193 F.3d 766 (3d Cir. 1999) ..............................................................................11

*Pearson v. Miller*,
   211 F.3d 57 (3d Cir. 2000) ..................................................................13, 14, 15

*Prof'l Drug Co. v. Wyeth Inc.*,
   No. 11-5479 (JAP), 2012 U.S. Dist. LEXIS 147607
   (D.N.J. Oct. 3, 2012)...................................................................................33, 35

*Religious Tech. Ctr. v. Wollersheim*,
   971 F.2d 364 (9th Cir. 1992) ..............................................................................24

*Rhone-Poulenc Rorer v. Home Indem. Co.*,
   32 F.3d 851 (3d Cir. 1994) ..................................................................13, 26, 28

*Ryan v. Commodity Futures Trading Comm'n*,
   125 F.3d 1062 (7th Cir. 1997) ............................................................................33

*Safety Nat'l Cas. Corp. v. Certain Underwriters*,
   587 F.3d 714 (5th Cir. 2009) ..............................................................................20

*Sciotto ex rel. Sciotto v. Marple Newtown Sch. Dist.*,
   70 F. Supp. 2d 553 (E.D. Pa. 1999).............................................................34, 35

*SEC v. Nat'l Sec. Inc.*,
   393 U.S. 453 (1969).............................................................................................19

*SEC v. Waltzer & Assocs.*,
   No. 96-6261, 1997 U.S. App. LEXIS 23830
   (2d Cir. Sept. 10, 1997)......................................................................................21

*Sims v. Great Am. Life Ins. Co.*,
   469 F.3d 870 (10th Cir. 2006) ............................................................................21

*Software Rights Archive, LLC v. Google, Inc.*,
   No. 09-017-JJF, 2009 U.S. Dist. LEXIS 43835
   (D. Del. May 21, 2009)........................................................................................29

**Page**

*Swidler & Berlin v. United States,*
    524 U.S. 399 (1998)................................................................17

*Torres v. Kuzniasz,*
    936 F. Supp. 1201 (D.N.J. 1996).........................................32

*Trammel v. United States,*
    445 U.S. 40 (1980)..................................................12, 15, 18

*United States v. Alcan Aluminum,*
    25 F.3d 1174 (3d. Cir. 1994) ...............................................37

*United States v. Arthur Young & Co.,*
    465 U.S. 805 (1984)..............................................................18

*United States v. Banks,*
    556 F.3d 967 (9th Cir. 2009) ........................................14, 24

*United States v. Bryan,*
    339 U.S. 323 (1950)..............................................................12

*United States v. Farber,*
    No. 06-2683 (FLW), 2006 U.S. Dist. LEXIS 58489
    (D.N.J. Aug. 21, 2006).........................................................34

*United States v. Garza,*
    165 F.3d 312 (5th Cir. 1999) .................................................5

*United States v. Gillock,*
    445 U.S. 360 (1980)......................................................18, 22

*United States v. King,*
    73 F.R.D. 103 (E.D.N.Y. 1976).........................................14

*United States v. Nixon,*
    418 U.S. 683 .................................................................15, 18

*United States v. O'Neill,*
    619 F.2d 222 (3d Cir. 1980) ...............................................32

**Page**

*United States v. Pechiney Plastics Packaging, Inc.*,
No. 09-5692 (PGS), 2013 U.S. Dist. LEXIS 37640
(D.N.J. Mar. 19, 2013)........................................................................31

*United States v. Penn*,
647 F.2d 876 (9th Cir. 1980) (en banc) ...........................................18

*United States v. Rockwell Int'l*,
897 F.2d 1255 (3d Cir. 1990) ...........................................................25

*United States v. Rozet*,
183 F.R.D. 662 (N.D. Cal. 1998)......................................................32

*United States v. Terr. of the V.I.*,
748 F.3d 514 (3d Cir. 2014) .............................................................38

*Univ. of Pa. v. EEOC*,
493 U.S. 182 (1990)....................................................................*passim*

*Viacom Int'l, Inc. v. YouTube, Inc.*,
No. C 08-80129 SI, 2008 U.S. Dist. LEXIS 79777
(N.D. Cal. Aug. 18, 2008)................................................................29

*Weiss v. First Unum Life Ins. Co.*,
No. 02-4249 (GEB), 2008 U.S. Dist. LEXIS 99715
(D.N.J. Dec. 10, 2008).....................................................................28

*Whalen v. Roe*,
429 U.S. 589 (1977)..........................................................................18

*Williams v. City of Phila.*,
No. 08-1979, 2014 U.S. Dist. LEXIS 150474
(E.D. Pa. Oct. 22, 2014)...................................................................23

*Wm. T. Thompson Co. v. Gen. Nutrition Corp.*,
671 F.2d 100 (3d Cir. 1982) .......................................................13, 23

Page

*Wyeth v. Abbott Labs*.,
  No. 08-230 (JAP), 2011 U.S. Dist. LEXIS 63409
  (D.N.J. June 13, 2011) ......................................................................28

*Yip v. Pagano*,
  606 F. Supp. 1566 (D.N.J. 1985),
  *aff'd*, 782 F.2d 1033 (3d Cir. 1986) ...........................................33, 34

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 24(a) ........................................................................................38
  Rule 24(b) ........................................................................................38
  Rule 26(b)(2)(C)(iii) ........................................................................30
  Rule 45 ......................................................................................12, 29
  Rule 26 ......................................................................................12, 36
  Rule 26(b)(5)(A)(ii) .....................................................................25, 28
  Rule 72 ...............................................................................10, 11, 28

Federal Rule of Evidence
  Rule 501 ...................................................................................*passim*

California Insurance Code
  §734 ...........................................................................................16, 36
  §735.5 ........................................................................................17, 25
  §735.5(a) ..........................................................................................17

New Jersey Statute
  §17:23-23(b) .....................................................................................36

New Jersey Civil Local Rule
  Rule 72.1 .................................................................................1, 14, 28

McCarran-Ferguson Act
  15 U.S.C. §§1011-1015 .............................................................19, 20, 21

Patient Protection and Affordable Care Act
  111 P.L. 148 (2010) ...........................................................................22

994253_1

**Page**

15 U.S.C.
    §78j(b)...................................................................................................................5
    §78t(a) ..................................................................................................................5

994253_1

> *[F]rankly the privilege issue is borderline frivolous.  There's absolutely no law in the whole country to suggest any privilege*.

Hon. Madeline Cox Arleo, October 9, 2014 Hearing, Baig Decl., Ex. 1 (October 9, 2014 Hearing Transcript ("Oct. 9 Hearing Tr.")) at 14-15.[1]

## I.     INTRODUCTION

The Honorable Madeline Cox Arleo was correct in finding the privilege issue asserted by Verus Financial LLC ("Verus") to be "borderline frivolous" and this appeal is similarly so.  Verus does not, because it cannot, meet its markedly high burden of demonstrating that "the magistrate judge's decision is clearly erroneous or contrary to law."  *Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. 13-5805 (JLL), 2014 U.S. Dist. LEXIS 103482, at *5-*6 (D.N.J. July 29, 2014).  First, it is not clear that Civil Local Rule 72.1, the premise of Verus's appeal, even applies here, because Verus is challenging the December 3, 2014 Order that was issued by Judge Arleo in her capacity as District Judge and not Magistrate Judge.  Second, Verus already conceded there is no applicable federal insurance investigation privilege, thus it cannot demonstrate that the Court's ruling on the asserted privilege is "clearly . . . contrary to law."  *Id.*  And third, Verus has certainly not demonstrated that "'the need for [a new federal] privilege is so clear, and . . . the desirable contours of that privilege are so evident, that it is appropriate for th[e] court to craft it in

---

[1]   The "Baig Decl." refers to the Declaration of Aelish M. Baig in Support of Plaintiffs' Oppositions to Non-Party Verus Financial LLC's L. Civ. R. 72.1 Appeal and Motion for Stay, filed herewith.

common law fashion.'" *In re Grand Jury Proceedings*, 103 F.3d 1140, 1154 (3d Cir. 1997). [2]

The Complaint in this case alleges that Prudential Financial, Inc. ("Prudential" or the "Company") materially misrepresented its publicly reported financial statements by failing to reserve for death benefits owed to the beneficiaries of deceased policyholders identified on the Social Security Administration's Death Master File ("SSA-DMF")[3] and/or required to be escheated to states in accordance with state law. ¶¶1-26.[4]  On behalf of numerous states, Verus performed a market conduct examination and unclaimed property audit into Prudential's escheatment practices including its historical use (or non-use) of the SSA-DMF. ¶¶57(e), 86, 94, 98, 103.  Thus, Verus has uncovered facts directly related to plaintiffs' allegations and is in possession of documents critically relevant to plaintiffs' claims.

On March 19, 2014, Verus was served by plaintiffs with a subpoena requesting the production of documents and information relating to: (i) the joint market conduct examination and/or multi-state examination by state regulators into Prudential's procedures relating to death benefit claims; (ii) Prudential's unclaimed property and

---

[2]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

[3]    The SSA-DMF is a file that contains information about individuals with Social Security numbers whose deaths were reported to the Social Security Administration from 1962 to the present.

[4]    Unless otherwise noted, paragraph references ("¶_" and "¶¶_") are to the Amended Complaint for Violations of Federal Securities Laws (Dkt. No. 22) (the "Complaint").

escheatment practices; and (iii) Prudential's use or non-use of the SSA-DMF.  Baig Decl., Ex. 2.  On March 28, 2014, plaintiffs served Verus with a deposition subpoena (amended as to the date on May 22, 2014).  Baig Decl., Ex. 3.

On May 1, 2014, Verus responded to the document subpoena by objecting to all of plaintiffs' requests on the basis of the official information privilege and the confidential communications privilege, among other things.  Baig Decl., Ex. 4.  After numerous meet and confer discussions, plaintiffs filed a motion to compel Verus to comply with the subpoenas, and Verus filed a motion to quash.  Both motions were fully briefed and argued before Magistrate Judge Arleo on October 9, 2014.  Dkt. Nos. 56, 71.

During the hearing on October 9, 2014, Judge Arleo ruled on Verus's motion to quash and plaintiffs' motion to compel Verus to produce discovery by overruling Verus's relevance and privilege objections.[5]  Baig Decl., Ex. 1.  The Court expressly requested that the parties submit an agreed-upon order memorializing the Court's rulings.  *Id.* at 124, 128-29.  However, Verus declined to participate in the drafting of the proposed order.  Baig Decl., Ex. 6.  Plaintiffs and Prudential did not agree to a

---

[5]   Consistent with the Court's October 9, 2014 ruling, plaintiffs took a Rule 30(b)(6) deposition of Verus on November 6, 2014 to determine the types of relevant documents in Verus's possession.  As a result, plaintiffs narrowed the initial subpoena by excluding from the request all of Prudential's underlying policy data collected by Verus, which Verus testified would be voluminous and thus difficult to produce.  Plaintiffs also identified 41 discrete categories of relevant documents, which are maintained by Verus electronically and should be able to be produced with relative ease.  Baig Decl., Ex. 5.

- 3 -

form of order and submitted competing versions for the Court's review.   On December 3, 2014, after being sworn in as a U.S. District Judge, Judge Arleo signed an order memorializing the Court's October 9, 2014 rulings ("December 3 Order"), providing that the discovery sought from Verus was relevant and not privileged.  Dkt. No. 130.   Verus continued to object to producing numerous of the identified documents on the same relevance and privilege bases overruled by Judge Arleo and now appeals the December 3 Order.

Verus faults the Court for not citing authority in support of its finding that the documents at issue are not privileged; and yet, when the Court specifically asked Verus if there were *any* cases supporting its position, Verus stated there were not:

> [The Court:] . . . *[H]ere's what I want to know. . . . [I]n any context, any related context, because there's none in your brief, where either a district court or a circuit court*, preferably Third Circuit, of course, but any circuit where they *recognize a federal common law privilege, anything akin to this [insurance examiner] confidentiality issue that is* – that is expressed in the state court statutes.

> [Verus:]  *We're not aware of any such case, Your Honor* . . . . Well, with respect to the privilege, I mean we – you know, that *in terms of the Third Circuit case law, there is none*.  But –

> [The Court:]  *Any circuits, anywhere in the country, any district courts anywhere in the country that have even come close to recognizing some kind of common law privilege stemming from these privacy issues* set forth in state statutes for – in the insurance context.

> [Verus:] We're not – we're not aware.  *We're not aware*.

> [The Court:] Okay.  *So* that *I'd be the first court in the nation to recognize a common law privilege*.

- 4 -

[Verus:] I can't speak to – to that, Your Honor. **We don't have such a decision to cite to Your Honor. We would if we had one**.

Baig Decl., Ex. 1 at 6-8.

Verus further faults the Court for not laying out its rationale in the December 3 Order, when, despite the Court's clear instruction that the parties draft the order, Verus declined to participate in drafting the order, much of which concerned Verus's own motion. Baig Decl., Ex. 6. Verus should not now be permitted to challenge via motion the language in the form of order which it was directed (but declined) to draft.[6] The objection should be overruled, and the documents ordered produced forthwith.

## II.    FACTUAL BACKGROUND

Plaintiffs allege that Prudential and three of its executive officers[7] violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 by issuing financial statements during the Class Period (May 5, 2010 through November 4, 2011) that materially overstated income and understated expenses. Plaintiffs further allege that

---

[6]    Verus also contends that Judge Arleo failed to consider the official information privilege because the December 3 Order does not expressly call out that particular privilege. This, despite full briefing before the Court on this issue, reference to the issue during the October 9 hearing, and an order affirmatively overruling each and every of Verus's privilege objections. *See* Dkt. Nos. 56, 70, 71, 79; Baig Decl., Ex. 1 at 7 (noting that the documents sought are "not State records, like an internal affairs records"); Dkt. No. 130. Verus's presumption is flawed and conflates a failure to cite with a failure to consider. "A litigant's right to have all issues fully considered and ruled on . . . does not equate to a right to a full written opinion on every issue raised." *United States v. Garza*, 165 F.3d 312, 314 (5th Cir. 1999). "'[N]o statute or rule compels such an approach.'" *Hartman v. Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007).

[7]    The Individual Defendants in this action include: Chief Executive Officer, President and Chairman John R. Strangfeld; Chief Financial Officer Richard J. Carbone; and Vice Chairman of Financial Management Mark B. Grier.

defendants failed to account and reserve for known liabilities associated with deceased policyholders on the SSA-DMF who remained unpaid for death benefits owed. ¶¶12, 54. As alleged, Prudential ignored deaths identified on the SSA-DMF for purposes of reporting liabilities and setting reserves, which would have required the Company to pay beneficiaries or escheat funds to states and to report materially higher reserves and lower income. ¶¶57(a)-(g), 105-113.

For years, Prudential failed to take the required reserves for unpaid death benefit liabilities, thereby understating reserves and artificially inflating earnings. ¶108. At the end of the Class Period, Prudential announced that it had been forced to take a $139 million charge to earnings for policies that were active as far back as 1992 in connection with unpaid claims. ¶97. The Complaint alleges that each of these facts was known but concealed by the Company. ¶108(a)-(b). When the truth was revealed, Prudential's stock price declined as the artificial inflation came out of the stock price, causing damages to investors. ¶¶127-137.

## A. Verus Performs a Market Conduct Examination and Unclaimed Property Audit of Prudential on Behalf of the States

As early as 2009, Verus, on behalf of multiple state regulators, launched a market conduct examination[8] and unclaimed property audit of Prudential and other

---

[8] A market conduct examination or multi-state examination is an examination of a company's settlement practices, procedures and policy administration relating to claims, including the company's efforts to identify the owners and beneficiaries of unclaimed proceeds. ¶103.

large insurance companies.  ¶¶57(e), 86, 94, 98, 103.  As part of the market conduct exam and unclaimed property audit, Verus collected data from both Prudential and participating states and matched the data against the SSA-DMF to determine amounts owed by Prudential to unpaid beneficiaries and the states.  *See* ¶102 (detailing California Controller John Chiang's press release announcing that Verus assisted California in locating more than 1,000 Prudential policies for individuals in California ***who had been dead for more than 15 years***); ¶106; Baig Decl., Exs. 7, 8.

Verus  reviewed all of Prudential's historical practices with regard to its use (or non-use) of the SSA-DMF and prepared summaries and analyses of such information. Verus also performed analyses of amounts owed and reported those amounts to the relevant state agencies.  In sum, Verus compiled evidence that is highly relevant to plaintiffs' claims that Prudential overstated its revenues by ignoring and failing to reserve for amounts owed to deceased beneficiaries.  ¶¶57(a)-(g), 70, 103, 107; Baig Decl., Ex. 9.

### B.   Verus's Market Conduct Examination and Unclaimed Property Audit Results in a Global Resolution Agreement

In January 2012, Prudential entered into the Global Resolution Agreement ("GRA") with 20 states to investigate, report and remit unclaimed property to the states in accordance with their respective unclaimed property laws.  ¶101; Baig Decl., Ex. 10.  In May 2012, Prudential described its participation in the GRA in a Form 10-Q filed with the U.S. Securities and Exchange Commission ("SEC"):

- 7 -

> In January 2012, a Global Resolution Agreement entered into by [Prudential] and a third party auditor [Verus] became effective upon its acceptance by the unclaimed property departments of 20 states and jurisdictions.  Under the terms of the Global Resolution Agreement, the third party auditor [Verus] acting on behalf of the signatory states will compare expanded matching criteria to the [SSA-DMF] to identify deceased insureds and contract holders where a valid claim has not been made.

Baig Decl., Ex. 11 at 111.

Pursuant to the GRA, Prudential was required to provide Verus with the data necessary for Verus to identify all unclaimed property required to be reported and remitted to the signatory states with respect to life insurance policies, annuity contracts and retained asset accounts that were in force at any time during the period January 1, 1992 through December 31, 2010.  Baig Decl., Ex. 10 at 6, 21.  Prudential provided Verus with names of insureds, annuitants, annuity contract owners and retained asset account owners as well as policy and other information requested by Verus in a series of information request letters.  *Id*. at 21.

Verus used the information obtained to match policyholders against the SSA-DMF.  *Id*. at 12, 16-17.  Verus then computed the results of its matches and compiled amounts owed in monthly "Unclaimed Property Reports"[9] sent to Prudential.  *Id*. at D-1 – D-2.  Specifically, the UPRs were designed to accomplish the following:

---

[9]   The GRA defines "Unclaimed Property Report," or "UPR," as "a report prepared and submitted to the Company by Verus to identify property that Verus has determined to be payable to a Signatory State by the Company.  The UPRs will be delivered by Verus according to the formats described in Schedule C [to the GRA]."  *Id*. at 6.

(i)     Identify proceeds owed to beneficiaries, to be provided to Prudential on the first day of every calendar month (*id*. at B-1 – B-5);

(ii)    Allow Prudential 30 to 45 days to review each UPR in order to identify all proceeds that it "agrees" are subject to escheatment, as well as any exceptions it may have (*id*. at D-2); and

(iii)   Generate reports of property to be escheated on the last calendar day of each month (after the conclusion of a due diligence process set forth in the GRA), followed ten days later by the payment of all proceeds identified (*id*. at B-1 – B-5, D-2).

## C.     Verus's Market Conduct Examination and Unclaimed Property Audit Results in a Regulatory Settlement Agreement

On February 2, 2012, Verus's multi-state investigation and unclaimed property audit resulted in a national settlement, the Regulatory Settlement Agreement ("RSA"), between multiple state regulators and Prudential.  Baig Decl., Ex. 12.  As a result, the following requirements were placed on Prudential:

- Prudential must regularly check the SSA-DMF to determine whether any of its life insurance policyholders, owners of annuities and holders of retained asset accounts have died.  ¶¶104-106; *see* Baig Decl., Ex. 12 at 8-10.

- If Prudential finds that a policyholder has died, Prudential must conduct a thorough search for beneficiaries, using all contact information in its records and obtained via online search and locator tools.  ¶¶104-105; *see* Baig Decl., Ex. 12 at 8-10.

- If beneficiaries cannot be located, Prudential must turn those proceeds over to the states as required by each respective state's unclaimed property laws.  *Id.*

The RSA applies prospectively and prescribes procedures for Prudential to compare its records to the SSA-DMF and identify unclaimed death benefits.  Baig

Decl., Ex. 12 at 8-11.   Moreover, it requires Prudential to share applicable policyholder information across its lines of business.  *Id*. at 19.  It further requires Prudential to conduct due diligence to determine deceased policyholders' beneficiaries or next of kin.  *Id*.  To the extent beneficiaries are unidentifiable or unable to be located, Prudential is required to remit death payments to the states in accordance with their respective unclaimed property laws.  *Id*.

The audits of Prudential leading to both settlement agreements, the GRA and RSA, were conducted by Verus.  ¶104.  Indeed, as demonstrated by Verus's contract with California, Verus was paid handsomely (10.5% of any unclaimed property remitted to the states) for the audits it performed on behalf of state agencies.  Baig Decl., Ex. 13 at 1; *see also id*., Ex. 9 at 5.

## III.   ARGUMENT

Under Federal Rule of Civil Procedure 72, "[t]he appealing party bears the burden of establishing that the magistrate judge's decision is clearly erroneous or contrary to law."  *Franklin*, 2014 U.S. Dist. LEXIS 103482, at *5-*6.  "A finding is 'clearly erroneous'" only if the "'the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed.'"  *Id*.  "A ruling is 'contrary to law' if the magistrate judge has misinterpreted or misapplied applicable law."  *Id*.; *Dr. Reddy's Labs. Ltd. v. MDS, Inc.*, No. 09-2398, 2012 U.S. Dist. LEXIS 41648, at *5-*6 (D.N.J. Mar. 27, 2012) (Thompson, J.) (where the issue is "the scope . . . not its

applicability to the specific facts of the case . . . a *de novo* standard of review is appropriate"). "Even where the district court might have decided the matter differently, it will not reverse a magistrate judge's determination so long as this standard is met." *Franklin*, 2014 U.S. Dist. LEXIS 103482, at *5-*6; *Del Valle v. Astrue*, No. 10-2330, 2011 U.S. Dist. LEXIS 111325, at *26 n.9 (E.D. Pa. Sept. 27, 2011) (a party "does not get a second bite at the apple by simply rehashing the arguments that the Magistrate Judge previously considered").

Verus's motion is remiss in not recognizing that while Judge Arleo made the related bench rulings as a Magistrate Judge on October 9, 2014, she did not sign the order challenged here until December 3, 2014, after her elevation from Magistrate Judge to District Judge; thus, it is unclear that Rule 72 even applies. *See Collins v. Ford Motor Credit Co., LLC*, No. 5:12 CV 2677, 2012 U.S. Dist. LEXIS 180956, at *5 (N.D. Ohio Dec. 21, 2012) (if ordered by a "district judge, not a magistrate judge[,] Rule 72 is entirely inapplicable"). All the more since the entire case, including this motion, was transferred from Judge Susan D. Wigenton to Judge Arleo on December 22, 2014. Dkt. No. 150. However styled, Verus's motion should be denied because Judge Arleo's rulings are neither clearly erroneous nor contrary to law.

"It is well recognized that the federal rules allow broad and liberal discovery." *Pacitti by Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). "A subpoena may command a nonparty to produce" documents and testimony "regarding any non-

privileged matter that is relevant to any party's claim or defense," *see* Fed. R. Civ. P. 45, 26, and relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *accord Evans v. Emp. Benefit Plan,* No. 03-4915 (RBK), 2006 U.S. Dist. LEXIS 95782, at *11-*12 (D.N.J. June 6, 2006).

"Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence,'" and are therefore strictly construed and only permitted where the exclusion of relevant evidence clearly furthers a "'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950) and *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)).

With all evidentiary privileges, the burden of establishing the privilege rests on the party asserting it. *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990). With that overarching burden comes, *inter alia*, the constituent burdens of demonstrating that the purported privilege exists, applies to the contested information, and has not been waived. *Id.* ("[Any] party who asserts a privilege has the burden of proving its existence and applicability."); *see also Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 & n.8 (E.D. Pa. 2001) ("the

- 12 -

party asserting the privilege has the burden of proving its applicability ***and non-waiver***") (emphasis in original) (citing *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994)).

Here, Verus does not, and cannot, carry its burden of establishing that Judge Arleo misinterpreted or misapplied applicable law. Verus has conceded that none of the various state insurance code privileges it relies upon has ***ever*** been recognized under federal common law and provides no justification for the first recognition of one here. Baig Decl., Ex. 1 at 6-8; *Franklin*, 2014 U.S. Dist. LEXIS 103482, at *5-*6.

## A. Federal Common Law, Not the Various and Differing State Insurance Codes, Governs Privilege in This Federal Question Case

Federal Rule of Evidence 501 provides that questions of evidentiary privileges in federal question cases are governed by federal common law. *Pearson v. Miller*, 211 F.3d 57, 65-66 (3d Cir. 2000). "Under this rule, in federal question cases the federal common law of privileges applies." *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir. 1982). Under federal common law, "the predominant . . . principle which guides a federal court's determination of whether a privilege applies is the maxim that testimonial privileges are disfavored." *Grand Jury Proceedings*, 103 F.3d at 1150. "An exception to this general rule is justified only when recognition of a privilege would promote a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining the

truth.'"  *Id.*; *Pearson*, 211 F.3d at 67 ("with very limited exceptions, federal courts have generally declined to grant requests for new privileges").  Thus, when faced with the proposed creation of a new federal common law privilege:

> "The question . . . is not whether there should be an evidentiary privilege . . . .  Perhaps there should.  But the question . . . is whether (1) the need for that privilege is so clear, and (2) the desirable contours of that privilege are so evident, that it is appropriate for th[e] court to craft it in common law fashion, under Rule 501."

*Grand Jury Proceedings*, 103 F.3d at 1150 (quoting *Jaffee v. Redmond*, 518 U.S. 1, 35 (1996) (Scalia, J., dissenting)).[10]  Verus's refusal to produce relevant documents rests solely on an assumption that this Court will create new federal law by adopting some unspecified version of varying state laws which would be wholly inappropriate.[11]

---

[10]   Verus's contention that a "'strong policy of comity . . .' impels federal courts to recognize state privileges" relies on outlying decisions inconsistent with majority opinion.  *Compare* Non-Party Verus Financial LLC's Memorandum of Law in Support of Its L. Civ. R. 72.1 Appeal of the Court's December 3, 2014 Order ("Appeal") (Dkt. No. 138-1) at 11, *with United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976), *and Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1170 (C.D. Cal. 1998) ("To the extent the [prior] authority . . . suggests federal courts should look to the law of the forum state as a matter of comity in determining the contours of federal privilege law, that authority is disapproved by *Jaffee*."), *aff'd*, 216 F.3d 1082 (9th Cir. 2000); *United States v. Banks*, 556 F.3d 967, 976 (9th Cir. 2009).

[11]   *EEOC v. Ill. Dep't of Emp't Sec.*, 995 F.2d 106, 107 (7th Cir. 1993) ("[w]hen federal law governs, . . . only privileges recognized by the national government matter"; refusing to recognize Illinois state insurance privilege under federal common law).

- 14 -

### B. Verus Did Not and Cannot Justify Importing Various State Insurance Codes into Federal Common Law Nationwide Because There Is No Transcendent Public Good Warranting the Creation of a New Privilege

Verus wholly failed to justify its request that Judge Arleo create a new federal privilege incorporating differing state insurance code provisions into the nationwide federal common law. Although Federal Rule of Evidence 501 "provide[s] the courts with flexibility to develop rules of privilege," courts should be "disinclined to exercise this authority expansively." *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990). New federal privileges are rare exceptions, "'not lightly created nor expansively construed.'" *Pearson*, 211 F.3d at 67 (quoting *United States v. Nixon*, 418 U.S. 683, 710) (1974)).

A party seeking to invoke a new privilege must overcome a very high burden. New privileges may be recognized only to the extent that the exclusion of relevant evidence clearly furthers a "public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel*, 445 U.S. at 50; *accord Pearson*, 211 F.3d at 67; *Grand Jury Proceedings*, 103 F.3d at 1149. Verus failed to establish any public good, transcendent or otherwise, served by a California Insurance Code privilege. Nor does Verus make any attempt to demonstrate with clarity and certainty the likely scope and impact of its proposed new privilege. Simply put, no one state's insurance privilege can be imported into the federal common law in this case because Verus fails to establish any transcendent

- 15 -

public good necessitating its federal adoption, much less with the requisite degree of clarity and certainty.  *Grand Jury Proceedings*, 103 F.3d at 1150.

Verus asserts it is entitled to the creation of a new privilege because "[i]f examination-related documents and information were subject to discovery in outside litigation, the companies would be less forthcoming, making it more difficult for commissioners to regulate effectively, leading to negative consequences for consumers."  *See* Appeal at 11.  This lone purported risk is not only unpersuasive, but wholly illusory assuming, as it does, that without such a privilege, insurers will be inclined to violate the law by failing to disclose what the law routinely requires they do.  Under most, if not all, state insurance code provisions, every insurer is required to "provide to [state] insurance examiners . . . timely, convenient, and free access . . . to all books, records, accounts, papers, [and] documents . . . relating to the property, assets, business, and affairs of the company."  *See, e.g.*, Cal. Ins. Code §734.  Because an insurer's disclosure obligations are mandatory, not voluntary, any purported reluctance would be inconsequential to the examiner's access to information.  *See, e.g.*, Appeal at 11.  That is, reluctant or not, privileged or not, the states' insurance examiners are assured full access to every insurers' complete books and records.  *Id.* As such, the only purported risk poses no risk at all.  *See Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) (court "unwilling to create the privilege" because

- 16 -

the only purported public good would "likely [exist] . . . whether the[] [documents] are privileged or not").

Verus fails now, as it did before Judge Arleo, to explain with any degree of clarity or certainty the likely scope and impact of its proposed new privilege and how its adoption nationwide would further this hypothetical (but in fact nonexistent) public interest.   The Supreme Court has made clear that "uncertain privileges are disfavored."  *Swidler & Berlin v. United States*, 524 U.S. 399, 402 (1998).  If some unidentified version of various state insurance privileges is accepted here into federal common law for the first time, it would apply nationwide, impacting other jurisdictions across the country in myriad ways impossible to predict; Verus still makes no attempt to justify such haphazard state preemption of the federal rules of evidence and procedure as well as every other state's insurance regulatory regime. *See Univ. of Pa.*, 493 U.S. at 201.  By way of example, California Insurance Code §735.5 is particularly inapt for nationwide federal application because it leaves whether information is or is not privileged entirely up to the discretion of the Insurance Commissioner.  *See* Cal. Ins. Code §735.5(a).  Surely, the nationwide federal rules of discovery and privilege cannot (and should not) depend on the discretion of a single state's insurance commissioner.

In any event, the Supreme Court has repeatedly rejected the oft-invoked "risk of inhibiting candor" as insufficient to warrant new privileges, even at much higher

- 17 -

echelons of government. *See United States v. Gillock*, 445 U.S. 360, 373 (1980) (rejecting privilege for confidential communications among state legislators); *Nixon*, 418 U.S. 683 (rejecting privilege for confidential communications between the President and his high-level advisors).[12]

The authority presented to Judge Arleo plainly demonstrated that circuit courts across the country have also specifically rejected similar invocations of "candor" in the insurance context. For example, in *Ill. Dep't of Emp't*, the Seventh Circuit declined to adopt a similar state insurance privilege emphasizing that the requested secrecy might actually embolden the telling of lies:

> An []insurance privilege is no more compelling than an academic-deliberation privilege or a reporters'-source privilege [both rejected by the Supreme Court]; indeed it is less so. Illinois justifies its privilege as a way to encourage truthful and complete disclosure to state officials; people who do not fear that evidence will fall into the hands of persons who may use it against them will be more forthcoming, the argument goes. ***This is far from clear; one could as readily say that people who know that third parties will not examine the evidence have less to fear from telling lies – for the truth is less likely to emerge. Perhaps secrecy emboldens*** . . . . Finally, Illinois tells us that confidentiality makes

---

[12]   The Supreme Court and circuit courts have also routinely rejected new privileges involving institutions and relationships far more crucial and fundamental to the public interest than the convenience of any single state's insurance regulator. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665 (1972) (no reporter-source identity privilege); *Whalen v. Roe*, 429 U.S. 589 (1977) (no physician-patient privilege); *Herbert v. Lando*, 441 U.S. 153 (1979) (no editorial process privilege); *Univ. of Pa.*, 493 U.S. at 182 (no academic peer review privilege); *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984) (no accountant work-product privilege); *Couch v. United States*, 409 U.S. 322, 335 (1973) (no accountant-client privilege); *see also Trammel*, 445 U.S. at 53 (narrowing husband-wife privilege); *United States v. Penn*, 647 F.2d 876 (9th Cir. 1980) (en banc) (no parent-child privilege); *Grand Jury Proceedings*, 103 F.3d 1140  (no parent-child privilege); *In re Sealed Case*, 148 F.3d 1073 (D.C. Cir. 1998) (no Secret Service privilege).

adjudication [by the regulator] simpler.  Administrative convenience has never been an adequate reason to keep evidence out of prosecutors' hands.

995 F.2d at 108; *see also Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993) ("Federal courts have never recognized an insured-insurer privilege . . . ."); *In re Grand Jury Impaneled January 21, 1975*, 541 F.2d 373, 380 (3d Cir. 1976) (rejecting state regulatory reports privilege).  Judge Arleo properly rejected the notion proffered by Verus, and Verus had no meaningful response to the Court's inquiries when confronted on October 9.

Far from establishing that the December 3 Order was clearly erroneous or contrary to law, Verus failed before Judge Arleo and fails now to establish any transcendent public good necessitating nationwide adoption of any one state's insurance privilege.  Such a privilege cannot be incorporated into the federal common law and thus cannot apply in this case.

## C.     The McCarran-Ferguson Act Weighs Against the Creation of a New Privilege

Finding no support in the federal common law, Verus instead invokes an entirely unrelated 1945 federal statute, the McCarran-Ferguson Act, 15 U.S.C. §§1011-1015.  Judge Arleo properly rejected this effort too.  The McCarran-Ferguson Act was, and is, a red herring; it merely reserves state authority to regulate "the business of insurance" notwithstanding the Commerce Clause.  *See, e.g.*, *SEC v. Nat'l Sec. Inc.*, 393 U.S. 453, 459-60 (1969) (The McCarran-Ferguson Act "did not purport

to make the states supreme in regulating all the activities of insurance **companies**," it only concerns regulation of "'the **business** of insurance,'" *i.e.*, "the relationship between the insurance company and the policyholder.") (emphasis in original).  The state privileges Verus and the *amici curiae* invoke do not regulate the relationship between insurers and policyholders, thus, they do not concern the "business of insurance" for purposes of the McCarran-Ferguson Act.[13]  The McCarran-Ferguson Act has nothing to do with privilege or discovery in federal court and certainly cannot compel federal common law adoption of any one state's insurance code.  Even by its own terms the McCarran-Ferguson Act is irrelevant: it only limits "Act[s] of Congress" and the federal rules of civil procedure and evidence that Verus flouts here plainly do not constitute Acts of Congress.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 561 (D.N.J. 1997) (rejecting as "absurd" the argument that the McCarran-Ferguson Act preempts the Federal Rules of Civil Procedure), *aff'd*, *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998); *Safety Nat'l Cas. Corp. v. Certain Underwriters*, 587 F.3d 714 (5th Cir. 2009) (holding that even treaty negotiated by President, ratified by

---

[13]   *See, e.g.*, *Int'l Ins. Co. v. Duryee*, 96 F.3d 837, 839-40 (6th Cir. 1996) (holding that statute revoking insurer's license if it removes a suit to federal court was not saved from preemption by the McCarran-Ferguson Act because state statute "was not enacted so much 'for the purpose of regulating the business of insurance' as for the parochial purpose of regulating a[n] . . . insurer's choice of forum"); *Garcia v. Island Program Designer, Inc.*, 4 F.3d 57, 62 (1st Cir. 1993) (holding that Puerto Rico's filing deadline for proofs of claims against insolvent insurance company did not regulate business of insurance within meaning of McCarran-Ferguson Act because "it is neither directed at, nor necessary for, the protection of policyholders").

- 20 -

Senate, and implemented by Act of Congress does not itself constitute "Act of Congress" for purposes of, and thus is not reverse-preempted by, McCarran-Ferguson Act); *SEC v. Waltzer & Assocs.*, No. 96-6261, 1997 U.S. App. LEXIS 23830 (2d Cir. Sept. 10, 1997) (holding that McCarran-Ferguson Act provides no grounds for refusing to produce documents in federal securities case).[14]

But even if, as Verus contends, the McCarran-Ferguson Act is somehow instructive, Appeal at 13-14, it would only counsel against the judicial creation of a new federal privilege. Always, courts should be "disinclined to exercise [Rule 501] expansively." *Univ. of Pa.*, 493 U.S. at 189. But courts must be "especially reluctant to recognize a privilege . . . where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Univ. of Pa.*, 493 U.S. at 189; *Pac. Pictures Corp. v. U.S. Dist. Court*, 679 F.3d 1121, 1128 (9th Cir. 2012) ("requiring federal courts to be particularly cautious when legislators have 'considered the relevant competing concerns but [have] not provided the privilege'") (alteration in original) (quoting *Univ. of Pa.*, 493 U.S. at 189). As such, to the extent the McCarran-Ferguson Act bears at all on the new privilege proposed here, it suggests that Congress "apparently considered the issue" and found such an insurance privilege

---

[14]   Unable to cite even a single case denying discovery because of the McCarran-Ferguson Act, Verus and the *amici curiae* resort to cribbing wholly irrelevant, out-of-circuit case law. Dkt. No. 146 at 19-20 (States' *Amicus Curiae* Brief citing *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 878-79 (10th Cir. 2006)). *Sims* was a diversity case solely addressing the applicability of the Federal Rules of Evidence under the *Erie* doctrine. *Sims* has nothing to do with discovery, privilege, federal claims, or the McCarran-Ferguson Act and thus has no bearing here.

- 21 -

unnecessary. *Univ. of Pa.*, 493 U.S. at 192.  All the more, given that Congress recently considered and implemented its most comprehensive overhaul of national and state insurance regulation in decades, perhaps ever, and yet again refused to adopt any insurance privilege. *See* Patient Protection and Affordable Care Act, 111 P.L. 148 (2010).  Because "Congress has [repeatedly] had occasion and opportunity to consider the privilege and not granted it either explicitly or by implication, there exists a general objection to [a court's] doing so." *Agster*, 422 F.3d at 839.  Accordingly, here, the Court should reject as did Judge Arleo, Verus's invitation "to go further than Congress thought necessary." *Univ. of Pa.*, 493 U.S. at 192.

### D.      Varied State Statutes Cannot Dictate Federal Common Law

Verus's appeal to an array of ostensibly similar state statutes is inapt.  Appeal at 10-11.  As the Supreme Court has made abundantly clear, privilege "in the federal courts 'is to be controlled by [federal] common law principles, not by local statute.' . . .  Thus, the fact that there is an evidentiary privilege . . . in state court does not compel an analogous privilege in a federal prosecution." *Gillock*, 445 U.S. at 368. This is recognized even in Verus's oft-cited case, *Jaffee*, 518 U.S. 1, wherein the Supreme Court first recognized a federal psychotherapist/patient privilege. *Jaffee*, 518 U.S. at 24 (bemoaning risk of "inverse pre-emption" under Federal Rule of Evidence 501, *i.e.*, the notion that "the truth-seeking functions of *federal* courts must

- 22 -

be adjusted so as not to conflict with the policies *of the States*") (Scalia, J. dissenting) (emphasis in original).

The reasoning behind these opinions is practical and sound: federal common law rules of privilege, which apply uniformly nationwide, should not be subject to the whims and pressures of state legislatures and organized interest groups (*e.g.*, the insurance industry). *Jaffee*, 518 U.S. at 24-25. As forcefully explained in the dissenting opinion by Justice Scalia:

> The fact that all 50 States have *enacted* [a] privilege argues not *for*, but *against*, . . . adopting the privilege judicially. At best it suggests that the matter has been found not to lend itself to judicial treatment . . . . At worst it suggests that the privilege commends itself only to decisionmaking bodies in which reason is tempered, so to speak, by political pressure from organized interest groups . . . not overwhelmingly concerned (as courts of law are and should be) with justice.

*Id*. at 26 (emphasis in original). Various courts have repeatedly admonished the same. *Grand Jury Impaneled*, 541 F.2d at 383 (finding that where "federal interests are concerned we will not accept blindly and without examination the state's policy of confidentiality"; refusing to recognize state-required reports privilege under federal common law); *Grand Jury Proceedings*, 103 F.3d at 1150 (endorsing Justice Scalia's dissent in *Jaffee*, 518 U.S. at 24-25).[15]

---

[15] *See also Wm. T. Thompson Co.*, 671 F.2d at 104 ("We hold that when there are federal law claims in a case . . . the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule."); *Williams v. City of Phila.*, No. 08-1979, 2014 U.S. Dist. LEXIS 150474, at *16 (E.D. Pa. Oct. 22, 2014) ("Federal Rule of Evidence 501 . . . prevent[s] a State from directing a federal court with regard to the evidence it may order produced in the adjudication of a federal claim."); *Doe v. Special Investigations Agency, Inc.*, 779 F. Supp. 21, 23 (E.D. Pa. 1991) ("accepted

- 23 -

Such an issue was raised in *Maple Creek Commons Homeowners Ass'n v. State Farm Fire & Cas. Co.*, No. 1:08-cv-00475-TWP-MJD, 2012 U.S. Dist. LEXIS 909, at *3 (S.D. Ind. Jan. 4, 2012).  There, the plaintiff sought discovery of information uncovered by the Indiana Commissioner's investigation of State Farm.  *Id.*  The district court found that the Indiana state insurance statute "does not limit the [federal] Court's authority to order" production of investigatory information.  *Id.* at *4.  The district court reasoned that because there was a confidentiality order in place, the production of the information in discovery would not make it public.  *Id.* at *7-*8.  Here, too, there is no applicable statute that limited Judge Arleo's authority to order the production of discovery, especially where, like here, such information will be protected by a confidentiality order and not made public.  Dkt. No. 52.

Thus, this Court should not "stray[] from the dictates of Rule 501 by incorporating wholesale state law statutory privileges into" federal common law. *Banks*, 556 F.3d at 976; *accord Humphreys v. Regents of the Univ. of Cal.*, No. C 04-03808 SI, 2006 U.S. Dist. LEXIS 17126, at *3 n.2 (N.D. Cal. Feb. 13, 2006) ("'the

---

and well-settled policies are consistent with a narrow construction of Rule 501 insofar as it addresses application of state law to issues of privilege"); *accord Banks*, 556 F.3d at 976 ("No deference to state law is mentioned or implied."); *NLBR v. N. Bay Plumbing*, 102 F.3d 1005, 1009 (9th Cir. 1996) ("Nor is any state-law privilege relevant.  In federal question cases . . . 'investigations . . . may not be prevented by matters depending on state law.'"); *Agster*, 422 F.3d at 839 (federal privileges "are not bound by [state] law"); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) ("[T]he federal courts will recognize state privileges only in cases in which 'state law supplies the rule of decision.'  In federal question cases, the law of privilege is governed by . . . federal common law.") (quoting Fed. R. Evid. 501).

law of California . . . does not inform federal privilege law'"); *Folb*, 16 F. Supp. 2d at 1170 ("To the extent the [prior] authority . . . suggests federal courts should look to the law of the forum state as a matter of comity in determining the contours of federal privilege law, that authority is disapproved by *Jaffee*.").

### E. Even if a State Insurance Code Privilege Existed Under Federal Common Law, Some States Have Waived It Here

As explained above, Verus's asserted privilege under California Insurance Code §735.5 does not (and should not) exist under the federal common law and thus cannot apply in this exclusively federal question case. But even if it could, as with all privileges, Verus bears the burden of demonstrating that its purported privilege applies to the contested documents and information and has not been waived. *See Grand Jury Investigation*, 918 F.2d at 385 n.15.

Verus's blanket assertion of privilege cannot carry its burden, for it provides no means for assessing any claim and fails to distinguish between privileged documents and withheld information to which no privilege would ever apply. *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) ("claims of . . . privilege must be asserted document by document, rather than as a single, blanket assertion"). Indeed, after seven months, Verus has failed to even produce a privilege log as required under Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

Moreover, the states' own sharing of information with Verus and widespread publication and distribution of some of the details of Verus's findings and the

information at issue waives any privilege.  With the assertion of any privilege, "the party asserting the privilege has the burden of proving its . . . **non-waiver**." *Greene*, 202 F.R.D. at 423 & n.8 (emphasis in original) (citing *Rhone-Poulenc*, 32 F.3d at 862); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) ("Disclosing a communication to a third party unquestionably waives the privilege.").  Here, some of the documents and information sought have already been produced and circulated among state agencies and third-party auditors such as Verus.  Moreover, some states have already widely touted much of this information in official press releases, to journalists, during public hearings, and even via informal websites such as Facebook.com.  For example, on February 2, 2012, the California Department of Insurance issued a press release regarding Prudential titled "'Death Master' Investigation Results in National Settlement With Major Life Insurer," which states:

> "Our Death Master investigation exposed life insurance companies' failure to pay benefits even though they had knowledge of policyholder deaths from the Death Master file – a database of deceased persons in the United States maintained by the Social Security Administration and rented to life insurers," said Commissioner Jones. "Prudential Life Insurance should be acknowledged for reaching this agreement, which requires that they use Death Master and all other means available to them to ensure that when life insurance policyholders die, their beneficiaries receive the benefits owed."

Baig Decl., Ex. 8; *see also* Baig Decl., Ex. 14.

On February 4, 2012, Commissioner Jones also posted the following on the website Facebook.com concerning the California Insurance Department's investigation of Prudential:

> Our Death Master File investigation of life insurance companies has resulted in a favorable settlement with Prudential Life Insurance Company.  Our investigation revealed that life insurers have been renting the Death Master File from the Social Security Administration but not using this database of deaths to determine if life insurance policyholders have passed away and paying their beneficiaries.

Baig Decl., Ex. 15.

In May 2013, Commissioner Jones told journalists with *WGTV* in San Diego that the Death Master File was "wrongly used" and spoke directly about a Prudential life insurance policy held by the father of Linda Pantarell who died in 2003. Commissioner Jones highlighted the California Insurance Department's work in locating $9,000 in benefits owed to Ms. Pantarell that Prudential had withheld for years.  The news story was also printed in an article titled "'Death Master File' wrongly used, says state insurance commissioner," which noted that California had recovered more than $32 million from Prudential as follows:

> But while the companies would peruse the list to figure out who they didn't owe payments to anymore, investigators said they weren't looking at the Death Master File for people they owed money to. Namely the beneficiaries of life insurance policies.  Like Linda Pantarell who had no idea the policy even existed.
>
> Insurance Commissioner Dave Jones was adamant when he told Team 10 about this practice, calling it "just outrageous."  He said the

industry is sitting on billions of dollars earning income by not paying off on insurance policies.

Jones said what his office found is upsetting because, "the life insurance companies are not using death master list to pay out these benefits." *He said because of his office, Linda Pantarell got $9,000 owed to her.*

Baig Decl., Ex. 16.

Any information sought by the subpoenas which has not been kept confidential

has been waived.[16] *See Greene*, 202 F.R.D. at 423; *Rhone-Poulenc*, 32 F.3d at 862;

*Teleglobe Commc'ns Corp.*, 493 F.3d at 361.

## F.     The Requested Document Production and Deposition Testimony Impose No Undue Burden

"The party seeking to quash the subpoena bears the heavy burden of

demonstrating . . . 'clearly defined and serious injury.'"   *Cedarcrestone Inc. v.*

---

[16]   Verus's select assertions of attorney-client privilege briefed for the first time in this appeal also miss the mark.  The Kaye Scholer documents referenced by Verus, Appeal at 16 n.15, and by the California Controller in its motion to intervene, Dkt. Nos. 143-1, 143-2, and Motion for Relief, Dkt. No. 143-3, are, and have always been, responsive to plaintiffs' subpoena to Verus served March 19, 2014, Baig Decl., Ex. 2, and subpoena to the California Controller served March 13, 2014, Declaration of David W. Hall in Support of Plaintiffs' Omnibus Opposition to Non-Party Verus Financial LLC's L. Civ. R. 72.1 Appeal ("Hall Decl."), Ex. A, both of which requested documents related to the market conduct examinations.  However, Verus chose to assert the state law privilege argument and not attorney-client privilege in its motion to quash and opposition to plaintiffs' motion to compel and the California Controller served no objections at all.  Hall Decl., ¶2.  To the extent such documents are subject to attorney-client privilege, they should have been identified on a privilege log so that plaintiffs could assess whether the privilege applies.  Fed. R. Civ. P. 26(b)(5)(A)(ii).  It is wholly inappropriate for Verus to brief the issue for the first time in a Rule 72 appeal.  *Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992); *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241 (D.N.J. 1998) (failure to make objections to a magistrate judge non-dispositive order is waiver of that right on appeal); *Weiss v. First Unum Life Ins. Co.*, No. 02-4249 (GEB), 2008 U.S. Dist. LEXIS 99715, at *9 (D.N.J. Dec. 10, 2008) ("failure to present arguments to the magistrate judge constitutes a waiver of those arguments on appeal").

- 28 -

994253_1

*Affiliated Computer Servs. LLC*, No. 1:14-MC-0298, 2014 U.S. Dist. LEXIS 90479, at

*8 (M.D. Pa. July 3, 2014) ("general assertions are insufficient to show undue burden

for the purpose of a motion to quash"); *Wyeth v. Abbott Labs.*, No. 08-230 (JAP),

2011 U.S. Dist. LEXIS 63409, at *21 (D.N.J. June 13, 2011) ("'bare allegations of

burden will not suffice'"). Verus fails to provide a declaration with respect to undue

burden and thus concedes the obvious – complying with the discovery requests, while

perhaps burdensome, is not ***unduly*** burdensome, particularly as plaintiffs have already

eliminated from their request for production the underlying data provided to Verus

from Prudential, which Verus testified was so voluminous, and as the Court has

already established a certification mechanism in lieu of the production by Verus of

documents identical to those already produced by Prudential, if any.[17] Declaration of

Caroline Marshall, ¶4 (Dkt. No. 138-2); Baig Decl., Exs. 4, 5.

The effort required to produce the responsive documents, limited by plaintiffs

after taking the November 7, 2014 deposition of Verus to 41 discrete categories

identified in plaintiffs' letter of November 14, 2014, Baig Decl., Ex. 5, and prepare a

---

[17]   A "non-party witness is subject to the same scope of discovery . . . as that person would be as a party." Fed. R. Civ. P. 45 (Notes of Advisory Committee on 1991 amendments); *see also Software Rights Archive, LLC v. Google, Inc.*, No. 09-017-JJF, 2009 U.S. Dist. LEXIS 43835, at *6-*7 (D. Del. May 21, 2009); *Gaskin v. Commonwealth*, No. 94-4048, 1997 U.S. Dist. LEXIS 17963, at *5 n.3 (E.D. Pa. Nov. 4, 1997) (the "scope of discovery . . . for parties and . . . for nonparties are virtually coextensive"). And "there is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession." *Software Rights*, 2009 U.S. Dist. LEXIS 43835, at *6 (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 U.S. Dist. LEXIS 79777, at *10 (N.D. Cal. Aug. 18, 2008)).

witness for deposition does not pose an undue burden.  *Fallon v. Locke, Liddell &*
*Sapp, LLP*, No. 5:04-cv-3210 RMW (RS), 2005 U.S. Dist. LEXIS 46987, at *12-*13
(N.D. Cal. Aug. 4, 2005) (rejecting third-party claim that "the costs of surveying its
nationwide offices and partners for documents and information relating to the
subpoena are overly burdensome"); *Murphy v. Farmers New World Life Ins. Co.*, No.
2:12-cv-2198 JWS, 2014 U.S. Dist. LEXIS 66749, at *6 (D. Ariz. May 12, 2014)
("[T]he burden and expense to the parties involved in conducting a single deposition
are not very significant.").  Indeed, the requested documents have already been
compiled, reviewed, and distributed among a host of other state agencies and third
parties.  *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court*, 408 F.3d
1142, 1149 (9th Cir. 2005) ("The claim that responding . . . would have been . . .
burdensome is hard to justify, especially because the record reveals . . . that many of
the same documents were previously produced . . . .").  Nor does the preparation of
relevant witnesses for deposition present an undue burden.  Baig Decl., Ex. 3.

In any event, burden is relative and must be evaluated in light of "the needs of
the case, the amount in controversy, the parties' resources, the importance of the
issues at stake in the action, and the importance of discovery in resolving the issues."
Fed. R. Civ. P. 26(b)(2)(C)(iii).  Verus continues to withhold documents and
information going to the very heart of this nationwide class action with hundreds of
millions of dollars at stake.  Access to this plainly relevant, readily available

- 30 -

information now will focus discovery, narrow the issues, and thus conserve both party and judicial resources going forward. The Discovery Confidentiality Order already in place, and agreed to by Prudential, will adequately protect the confidentiality of all information produced by Verus.

### G.    The Official Information Privilege Does Not Apply

The official information or deliberative process privilege cannot apply here.

> "To qualify for protection under this privilege, a document must meet two requirements: (1) the document must be "pre-decisional," . . . [meaning that it] must have been received by the [governmental] decision-maker on the subject of the decision prior to the time the decision [was] made, and (2) the document must be "deliberative," meaning the document was the result of a consultive process."

*EEOC v. FAPS, Inc.*, No. 10-3095 (PGS), 2012 U.S. Dist. LEXIS 65591, at *19 (D.N.J. May 10, 2012). Purely factual material is not protected. *See United States v. Pechiney Plastics Packaging, Inc.*, No. 09-5692 (PGS), 2013 U.S. Dist. LEXIS 37640, at *35-*36 (D.N.J. Mar. 19, 2013).

Verus and *amici curiae* have failed to provide any specific designation or description of the purportedly privileged documents, in a log or otherwise. *Id*. On that failure alone, privileged protection should be denied. *EEOC*, 2012 U.S. Dist. LEXIS 65591, at *19. Moreover, the information sought is purely factual and thus cannot be privileged. It consists of data and communications relating to Prudential's unclaimed property and escheatment practices that Verus obtained during its audit of Prudential, as referenced in the GRA and RSA. It includes the identification of

- 31 -

policyholders, beneficiaries, policies and amounts paid, as well as information generated by Verus in matching the SSA-DMF against amounts withheld, and all related communications.  Plaintiffs do not expect Verus to possess, and Verus has made no attempt to substantiate their possession of, any documents reflecting the deliberations of governmental decision-makers.  Such information is not required by the GRA and RSA to be provided to Verus and certainly could not be generated by Verus.

Even if the information sought had been shown to be "pre-decisional" and "deliberative" rather than purely factual, the privilege would still not apply for two reasons.  First, the privilege must be formally claimed by the head of the department which has control over the matter, after actual personal consideration by that officer. *See Torres v. Kuzniasz*, 936 F. Supp. 1201, 1210 (D.N.J. 1996) (privilege "must be asserted by the head of the agency claiming the privilege").  "[P]rivate parties can neither assert nor waive the privilege."  *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998).  Verus is a private party, not the head of an agency or a governmental entity, and thus cannot assert the privilege.  *United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980) (claim of privilege by city attorney on behalf of city inappropriate); *EEOC*, 2012 U.S. Dist. LEXIS 65591, at *76-*77.  Second, the party asserting the privilege must submit "'a declaration stating the precise reasons for reserving the confidentiality of the [document] and identifying and describing the

documents to which the privilege is asserted.'" *Id.* Here, Verus concedes that it has failed to provide the required declaration, but contends instead (without authority or explanation) that any argument on this threshold requirement is somehow "premature." Appeal at 15 n.14. Nonsense. Absent the required declaration, no privilege. *EEOC*, 2012 U.S. Dist. LEXIS 65591, at *76-*77.

## H.   The Court Fairly Considered the *Amicus Curiae* Positions of the NAIC and the State Insurance Departments and Rejected Them – They Still Have No Merit

The motions to intervene brought by the National Association of Insurance Commissioners ("NAIC") and the Insurance Departments of California, Florida, Illinois, New Hampshire, New Jersey, North Dakota and Pennsylvania should be denied. Dkt. Nos. 144-146. Judge Arleo considered the positions raised by the NAIC and the States as they were presented to the Court. Dkt. Nos. 83-1, 89, 89-1. District courts rarely entertain *amicus curiae*. *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd*, 782 F.2d 1033 (3d Cir. 1986). Indeed, "'[t]he vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs . . . .  Such amicus briefs should not be allowed. They are an abuse. The term "amicus curiae" means friend of the court, not friend of a party.'" *Prof'l Drug Co. v. Wyeth Inc.*, No. 11-5479 (JAP), 2012 U.S. Dist. LEXIS 147607, at *6 (D.N.J. Oct. 3, 2012) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125

F.3d 1062, 1063 (7th Cir. 1997)).  As the *amicus curiae* briefs offered are unnecessary and unhelpful, the motions and submissions should not be entertained.

### 1.    The *Amicus Curiae* Submissions Are Unnecessary

The repetitive opinions of the *amici curiae* are unnecessary.

> [T]he term *amicus curiae* has been used to describe "an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and whose function is to advise in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another."

*United States v. Farber*, No. 06-2683 (FLW), 2006 U.S. Dist. LEXIS 58489, at *1 (D.N.J. Aug. 21, 2006).  Thus, where nominal *amicus curiae*'s "'attitude toward the litigation is patently partisan, he should not be allowed to appear as *amicus curiae*.'" *Yip*, 606 F. Supp. at 1568.  Just the same where "the parties are adequately represented [or] *amicus* participation is neither necessary nor helpful." *Goldberg v. City of Phila.*, No. 91-7575, 1994 U.S. Dist. LEXIS 9392, at *2 (E.D. Pa. July 14, 1994).

Here, the *amici curiae* provide nothing of substance, no impartial interpretation of pertinent law, indeed nothing beyond a recitation of Verus's own prior briefing and a litany of unsubstantiated policy concerns.[18]  Such empty rehash cannot warrant *amicus curiae* participation.  *See Yip*, 606 F. Supp. at 1568; *Sciotto ex rel. Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999) (where proposed *amicus curiae* "is merely a trade association with a generalized interest in all cases

---

[18]   *Compare* NAIC *Amicus Curiae* Brief (Dkt. No. 145-2) at 4-10, *and* States' *Amicus Curiae* Brief (Dkt. No. 146) at 9-30, *with* Appeal at 5-8.

related to [a particular industry, that] is not the kind of special interest that warrants *amicus* status").

To the extent the purported *amici curiae* have any generalized interest, it is already adequately represented by Verus's qualified counsel, familiar with the issues before the Court and all proceedings to date. *See Abu-Jamal v. Horn*, No. 99-5089, 2000 U.S. Dist. LEXIS 11013, at *12-*14 (E.D. Pa. Aug. 7, 2000); *Sciotto*, 70 F. Supp. 2d at 555; *Goldberg*, 1994 U.S. Dist. LEXIS 9392, at *2; *see also* Dkt. No. 71-1 at 2-4. Because the *amicus curiae* submissions are duplicative and unnecessary, they should not be allowed. *See Prof'l Drug Co.*, 2012 U.S. Dist. LEXIS 147607, at *6 ("Doing little more than duplicating arguments raised by the parties is not the proper role of an *amicus curiae*.").

### 2.     The *Amicus Curiae* Submissions Are Unhelpful

The *amici curiae*'s policy assertions are unhelpful. "An organization seeking to appear as *amicus* must make a showing that its participation is useful or desirable to the court." *Goldberg*, 1994 U.S. Dist. LEXIS 9392, at *2. "While policy arguments are certainly interesting and perhaps helpful at the appellate level, they are not the currency of a trial court." *Sciotto*, 70 F. Supp. 2d at 556.

Here, the *amici curiae* provide only inapt policy argument. *See* NAIC Amicus Curiae Brief (Dkt. No. 145-2); States' Amicus Curiae Brief (Dkt. No. 146). For example, the States' Amicus Curiae Brief, Dkt. No. 146 at 6, asserts that the insurance

code provisions "seek to encourage candor and open communication between insurers and regulators in examinations" and thus require confidential treatment.  Moreover, as discussed above, this action arises from years of Prudential withholding hundreds of millions of dollars that did not belong to the Company and misrepresentation of the Company's financial condition.  *See infra* §§II.A-C.  The idea that court-authorized discovery should be curtailed simply because it might deter cooperation or inhibit candor – *i.e.*, discourage compliance with law – is at odds with the federal rules and inconsistent with circuit authority that clearly recognizes the opposite.  *See Ill. Dep't of Emp't Sec.*, 995 F.2d at 108 (Easterbrook, J.).

In any event, the purported risks the *amici curiae* harp are but illusory; under the various state codes an insurer's disclosure obligations are mandatory, not voluntary, and thus any potential reluctance by insurers would be inconsequential to regulators' access to information.  *See, e.g.*, Cal. Ins. Code §734; N.J. Stat. §17:23-23(b).  Reluctant or not, privileged or not, state insurance regulators are assured full access to every insurer's complete books and records to the extent state law requires it.  *Id*.  Nor will requiring production here result in, for example, "duplicative reporting requirements" for Prudential.  NAIC *Amicus Curiae* Brief (Dkt. No. 145-2) at 10.  Prudential must simply comply with its obligations under state insurance examination law and Federal Rule of Civil Procedure 26.

Moreover, even if the Court chooses to entertain the *amicus curiae* submissions which repeat Verus's arguments, the assertion of privilege remains meritless for all of the reasons already discussed above: (1) its proposed state insurance privilege does not and should not exist under federal common law; (2) even if it existed, the privilege would not apply here; and (3) even if it did apply, Verus should still be compelled to produce relevant information.  *See infra* §§III.A-E.

## I.    The California Controller's Motions Should Be Denied

The California Controller's motions to intervene and for relief rest largely on the assertion that plaintiffs did not serve the Controller's office with a subpoena for documents and thus the Controller was "***deprived***" of its right to assert privilege objections.  Controller's Brief (Dkt. No. 143-3) at 5; Estrin Decl. (Dkt. No. 143-8), ¶2. That assertion is baseless. The Controller's motions should be denied.

The Controller's motion to intervene, Dkt. No. 143-1, should be denied as untimely and unwarranted.  "Whether intervention be claimed of right or as permissive . . . [i]f it is untimely, intervention must be denied." *NAACP v. New York*, 413 U.S. 345, 365 (1973).  Timeliness is "measured from the point which [the intervenor] knows, or should know, its rights are directly affected by the litigation." *United States v. Alcan Aluminum*, 25 F.3d 1174, 1182 (3d. Cir. 1994).  Once on notice, it is "incumbent upon the [intervenor] . . . to take immediate affirmative steps to protect their interests." *NAACP*, 413 U.S. at 367.  Here, plaintiffs first subpoenaed

- 37 -

the Controller nearly ten months ago, on March 13, 2014, and the Controller failed to respond, insisted no responsive documents even exist, served no objections, disavowed any assertion of privilege, and indeed directed plaintiffs to instead subpoena third-party auditors such as Verus.  Hall Decl., Exs. Q-S.  Extensive meet and confers ensued to no avail.  *See* Hall Decl.  Such delinquency cannot warrant intervention.  *NAACP*, 413 U.S. at 367 (denying state agency intervention because three-month delay "amply demonstrates that [they] failed to protect their interest in a timely fashion").

Even if timely, the Controller's interests are already adequately represented.  *In re Cmty. Bank of N. Va.*, 418 F.3d at 314 (3d Cir. 2005) (required under Fed. R. Civ. P. 24(a)); *United States v. Terr. of the V.I.*, 748 F.3d 514, 524 (3d Cir. 2014) (required under Fed. R. Civ. P. 24(b)).  "'[W]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented,'" overcome only by "adversity of interest, collusion, or nonfeasance."  *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 315 (3d Cir. 2005).  Here, the Controller and Verus have the same ultimate objective – avoiding third-party discovery.  Indeed, Verus has already largely asserted the same privileges the Controller claims, and the Controller was served with a subpoena to which it failed to serve any objections at all.  *See* Hall Decl.  The Controller cannot show adversity, collusion or nonfeasance; thus, adequacy

- 38 -

is presumed and intervention should be denied.  *Cmty. Bank of N. Va.*, 418 F.3d at 315.

Finally, even if intervention is granted, the Controller's motion for relief, Dkt. No. 143-3, should be denied for all the reasons discussed herein.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that Verus's appeal be denied in its entirety.

DATED:  January 6, 2014                Respectfully submitted,

                                       COHN LIFLAND PEARLMAN
                                         HERRMANN & KNOPF LLP
                                       PETER S. PEARLMAN
                                       JEFFREY W. HERRMANN


                                          */s/ Peter A. Pearlman*
                                       PETER S. PEARLMAN

                                       Park 80 West – Plaza One
                                       250 Pehle Avenue, Suite 401
                                       Saddle Brook, NJ  07663
                                       Telephone:  201/845-9600
                                       201/845-9423 (fax)

                                       Liaison Counsel for Plaintiff

- 39 -

ROBBINS GELLER RUDMAN
 & DOWD LLP
SHAWN A. WILLIAMS
AELISH M. BAIG
ARMEN ZOHRABIAN
DAVID W. HALL
SUNNY S. SARKIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER &
PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

THOMAS J. HART
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, NW,
Suite 450
Washington, DC  20036
Telephone:  202/797-8700
202/234-8231 (fax)

- 40 -

ANDREW F. ZAZZALI, JR.
ZAZZALI, FAGELLA, NOWAK,
KLEINBAUM & FRIEDMAN
One Riverfront Plaza, Suite 320
1037 Raymond Boulevard
Newark, NJ  07102
Telephone:  973/623-1822
973/623-2209 (fax)

Additional Counsel for Plaintiff

- 41 -