<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM,** Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**PRUDENTIAL FINANCIAL, INC.,** et al.,<br><br>*Defendants*. | Civil Action No. 12-5275<br><br>OPINION<br><br>April 30, 2015 |

**ARLEO, UNITED STATES DISTRICT JUDGE.**

Before this Court is non-party Verus Financial LLC's ("Verus") appeal of a December 3, 2014, Order (the "December 3 Order") entered by me following an October 9, 2014, hearing (the "October 9 Hearing") [Dkt. No. 138].[1]  Specifically, Verus appeals the Court's rulings with respect to the motion of National Shopmen Pension Fund; Heavy & General Laborers' Locals 472 & 172 Pension Annuity Funds; and Roofers Local No. 149 Pension Fund (collectively, "Lead Plaintiffs") to compel Verus to produce subpoenaed documents and Verus's cross-motion to quash Lead Plaintiffs' subpoena to testify at a deposition.  Verus also moves to stay the

---

[1] I issued my original rulings while serving as a Magistrate Judge. On November 20, 2014, I was confirmed as a District Judge and received my commission on November 21, 2014.  Thus, when the order memorializing the October 9 rulings was signed on December 3, 2014, I had already been elevated to the District Court bench.  On December 22, 2014, this case was transferred to me in my capacity as a District Judge.  See Dkt. No. 150, Order Reassigning Case.  While the parties dispute whether the order is appealable insofar as it was signed by me as a District Judge, I will review the issues raised herein <u>de</u> <u>novo</u>.

December 3 Order pending resolution of the appeal [Dkt. No. 139].  In another related motion, John Chiang, the Controller of the State of California (the "California Controller"), moves both to intervene for the limited purpose of raising potential privilege objections and for relief from the December 3 Order [Dkt. No. 143].  No oral argument was heard pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth herein, the Court finds as follows: (1) Verus's appeal is **DENIED**; (2) Verus's motion to stay is **DENIED** as moot; and (3) the Controller's motions to intervene and for relief are **GRANTED**.

**I.    BACKGROUND**

In this securities class action, Lead Plaintiffs allege that Prudential Financial, Inc., and three of its corporate officers (collectively, "Prudential") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 between May 5, 2010, and November 4, 2011 (the "Class Period"), by making false and misleading statements that overstated Prudential's income and understated its expenses.  See generally Dkt. No. 22, Am. Compl.  Specifically, Lead Plaintiffs claim that Prudential knew or was reckless in not knowing that certain life insurance policies were eligible for either payment to a beneficiary or escheatment to a state.  Id. ¶¶ 12, 54.  In support of this claim, Lead Plaintiffs allege that Prudential ignored policyholder deaths that were easily identifiable on the Social Security Death Master File (the "DMF").  Id. ¶ 57.  Prudential's failure to account for these policies in its reserves ultimately led it to announce a charge to its earnings of $139 million in its November 2, 2011, press release of the company's 2011 third quarter results.  Id. ¶¶ 17, 24, 55.  Lead Plaintiffs claim that Prudential's misrepresentations caused Prudential's stock price to fall.  Id. ¶¶ 124-37.

The $139 million charge originated from a market conduct examination (the "MCE") of Prudential's practices and an unclaimed property audit ("UP Audit," and collectively, the

"Examinations") that non-party Verus conducted on behalf of several states beginning in or about 2009. Verus is a privately held company that specializes in auditing insurance companies to identify unclaimed property that can either be paid to the rightful beneficiaries or escheated to a state. Id. ¶ 57(e). As a result of the Examinations, Verus identified millions of dollars in unclaimed property. Prudential ultimately agreed to pay out that property to beneficiaries and the states pursuant to a Global Resolution Agreement into which Prudential entered with twenty states on January 13, 2012. See id. ¶¶ 101-07. During its involvement in the Examinations, Verus was in close contact with both the states and Prudential. Verus, the state insurance regulators, and Prudential thus inevitably exchanged a considerable amount of information during the Examinations.

In this case, Lead Plaintiffs subpoenaed Verus on March 12, 2014, requesting five categories of documents and communications, four of which are relevant here: (1) those relating to the MCE and Verus's unclaimed property audits conducted on behalf of individual states; (2) those relating to Prudential's unclaimed property and escheatment practices and the company's use or non-use of the DMF; (3) those with or relating to any defendant; and (4) those with or relating to any governmental or regulatory entity. Dkt. No. 56-3, Ex. A to Decl. of Shawn A. Williams, at 15. Lead Plaintiffs also served Verus with a deposition subpoena on March 25, 2014. On May 1, 2014, Verus served its responses and objections to the March 12 subpoena, broadly claiming privilege on behalf of Verus's state clients. After a failed meet-and-confer, Lead Plaintiffs filed a motion to compel production of the subpoenaed documents. Dkt. No. 56, Mot. to Compel. Verus then cross-moved to quash Lead Plaintiffs' deposition subpoena. Dkt. No. 71, Cross-Mot. to Quash.

At the October 9 Hearing, this Court addressed both motions. The Court ruled only on the narrow issue of whether to recognize an insurance examination privilege that would categorically shield Verus's communications with state insurance regulators from discovery. Dkt. No. 117, Tr. of Oct. 9 Hr'g, at 5-13. The Court did not make a document-by-document ruling with respect to privilege. Instead, the Court directed the parties to meet and confer to schedule a deposition of a Verus representative pursuant to Federal Rule of Civil Procedure 30(b)(6) and, after the deposition, to begin producing the most relevant documents. Id. at 16. The Court also directed Lead Plaintiffs to use the deposition to narrow their subpoena. Id. Ultimately, the Court's rulings were embodied in the December 3 Order. On this appeal, Verus objects to the first sentence of Paragraph 3 of the Order, which states: "Verus' relevance and privilege objections are **OVERRULED** and do not shield the information sought from production." Dkt. No. 130, Dec. 3 Order, at 3.

In a related motion, the California Controller moves to intervene under Federal Rule of Civil Procedure 24 to preserve its privilege claims to the extent that the December 3 Order "could be read to deprive the controller of its ability to prevent the disclosure of privileged and confidential documents." Dkt. No. 143-1, Mem. in Supp. of Mot. to Intervene, at 3.

For the reasons that follow, the Court denies Verus's appeal of the Court's decision to reject adoption of an insurance examination privilege as a matter of federal common law. The Court also clarifies its October 9 ruling to the extent that it could be interpreted as overruling Verus's privilege objections on any other grounds. In addition, the Court grants the Controller's motion to intervene for a limited purpose. Finally, Verus's motion to stay the operation of the October 9 order pending resolution of this appeal is denied as moot.

## II. VERUS'S APPEAL OF THE MAGISTRATE JUDGE DECISION

### A. Standard of Review

In considering an appeal of a magistrate judge's ruling on a non-dispositive issue pursuant to Federal Rule of Civil Procedure 72(a), a district court generally may reverse the ruling only where it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1113 (3d Cir. 1986). In light of the unique procedural history of this case, however, this Court will apply a de novo standard of review. See, e.g., Cole v. Wells Fargo Bank, N.A., No. 12-1932, 2015 WL 1421676, at *2 (D.N.J. Mar. 26, 2015).

### B. Discussion

The narrow issue to be decided on this appeal is whether the Court should recognize a new privilege concerning certain communications between Verus and state insurance regulators during the Examinations. Verus's argument for the recognition of such a privilege is twofold. First, Verus argues that this Court failed to conduct the proper privilege analysis under Federal Rule of Evidence 501. Second, Verus argues for the first time on appeal that even if the Court did not err in declining to recognize a new privilege under Rule 501, the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, compels this Court to defer to state anti-disclosure laws and recognize the privilege. The Court shall address these issues in turn.

#### 1. An "Insurance Examination Privilege" Should Not Be Recognized as a Matter of Federal Common Law

##### a. Applicable Law Under Federal Rule of Evidence 501

Rule 501 provides that any claim of privilege in a case involving federal claims is to be governed by the common law as interpreted by the federal courts. Wm. T. Thompson Co. v. Gen. Nutrition Corp., 671 F.2d 100, 104 (3d Cir. 1982). As a first principle, the federal common

5

law of privilege favors the admission of probative evidence over any state law privilege. Id. Accordingly, while Rule 501 demonstrates Congress's "intention not to freeze the law of privilege … and to leave the door open to change," Trammel v. United States 445 U.S. 40, 47 (1980), the prevailing rule is that "privileges are disfavored." In re Grand Jury, 103 F.3d 1140, 1149 (3d Cir. 1997). Therefore, the analysis begins "with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional." Jaffee v. Redmond, 518 U.S. 1, 9 (1996) (internal quotations and citations omitted) (emphasis added).

In determining whether to recognize a new evidentiary privilege, the reviewing court must balance the need for probative evidence against the importance of the interests that would be promoted by recognition of the privilege. Pearson v. Miller, 211 F.3d 57, 67 (3d Cir. 2000). The court must be mindful that the need for probative evidence is "granted very significant weight," and the court should recognize a new privilege only where the interests identified are "sufficiently important" that they "outweigh the need for probative evidence." Id. Mere private interests are insufficient. See Jaffee, 518 U.S. at 11. In accord with the weighty consideration that must be given to the need for probative evidence, federal courts have recognized new privileges only in exceptional circumstances. See Pearson, 211 F.3d at 67 (collecting cases in which courts declined to recognize new privileges, such as a parent-child privilege, an insurer-insured privilege, and a "protective function" privilege for the Secret Service); see also Whalen v. Roe, 429 U.S. 589, 602 n.28 (1977) (no physician-patient privilege). But see Jaffee, 518 U.S. at 8-15 (adopting psychotherapist-patient privilege).

The policy determinations of state legislatures, along with the nine specific privileges originally contained in the Judicial Conference Advisory Committee's 1972 proposed privilege

rules, are relevant considerations in deciding whether to create a new privilege. See Jaffee, 518 U.S. at 13-15. In addition to those factors, a court may consider, inter alia: (1) whether the recognition of the privilege would serve some broader public interest; (2) "the likely evidentiary benefit that would result from the denial of the privilege"; and (3) the extent to which the relationship at issue requires "confidence and trust." Id. at 10-11. After evaluating the proposed privilege in light of these factors, the reviewing court must be satisfied that "(1) the need for that privilege is so clear, and (2) the desirable contours of that privilege are so evident, that it is appropriate for this court to craft it in common law fashion." In re Grand Jury, 103 F.3d at 1154 (quoting Jaffee, 518 U.S. at 35 (Scalia, J., dissenting)).

### b. Analysis

Under the above standard, the Court is not convinced that the creation of an "insurance examination privilege" is warranted. First, the Court notes that each state has enacted a confidentiality statute with respect to the conduct of insurance examinations.[2] California's statute, for example, gives confidential treatment to any information "produced by, obtained by, or disclosed to the commissioner" during an examination. Cal. Ins. Code § 735.5(c). While the state statutes vary somewhat in scope, all seek to maintain the confidentiality of certain information gathered during an insurance examination. This factor therefore supports recognition of the privilege, see Jaffee, 518 U.S. at 13, though not conclusively. Cf. Pearson, 211 F.3d at 67 (the Court's "decision turns upon the law of the United States, not that of any state").

Weighing against the adoption of a new privilege is the fact that the Advisory Committee did not specifically include an "insurance examination privilege" in its 1972 list of proposed

---

[2] For convenience and to be consistent with the parties' briefing, the Court will simply use the California statute as a model during this discussion.

7

privileges. Contained on that list are the following privileges: (1) required reports privileged by statute; (2) lawyer-client privilege; (3) psychotherapist-patient privilege; (4) husband-wife privilege; (5) communications to clergymen; (6) political vote; (7) trade secrets; (8) secrets of state and other official information; and (9) identity of informer. See Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 230-58 (1972). The only proposed privilege listed by the Advisory Committee that is even arguably analogous to the insurance examination privilege urged here is the "required reports privilege." See id. at 234-35. That proposed rule sought to provide to any "public officer or agency to whom a return or report is required by law to be made … a privilege to refuse to disclose the return or report if the law requiring it to be made so provides." Id. at 235.

But communications or information disclosed to or gathered by a state insurance agency during an investigation are not "returns or reports." As the cases cited by the Advisory Committee demonstrate, the proposed privilege was concerned with specifically identifiable returns and reports such as, for example, a tax return or a motor vehicle accident report. See id. Therefore, this factor militates against recognition of a federal common law privilege.

Verus's public interest justification for recognition of an insurance examination privilege also falls flat. Verus argues that without such a privilege, insurance companies would be less willing to share information freely with state regulators, thus hindering state regulators' ability to effectively regulate the conduct of insurers. This argument, however, ignores the fact that state laws require insurers to share information freely and openly with their regulators. California law, for example, broadly requires insurers to "provide to the examiners … timely, convenient, and free access at all reasonable hours at its offices to all books, records, accounts, papers, documents, and any or all computer or other recordings relating to the property, assets, business,

8

and affairs of the company being examined." Cal. Ins. Code. § 734. Insurers therefore must provide state regulators with virtually unfettered access to any information that the regulators seek. Accordingly, the Court finds unpersuasive Verus's claim that insurers would be less willing to do what the law requires them to do without the adoption of a federal insurance examination privilege.[3]

Furthermore, the Court finds that "the likely evidentiary benefit that would result from the denial of the privilege" is great in this case. Jaffee, 518 U.S. at 11. Given Verus's intimate involvement in the states' investigation of the precise conduct that ultimately led to Lead Plaintiffs' claimed loss, the communications between Verus or Prudential and the state regulators are likely to be highly relevant. For example, certain communications may help to establish what Prudential knew and when Prudential knew it, or whether Prudential had previously used the DMF to match insurance policies with decedents listed in the DMF. These issues go to the heart of Lead Plaintiffs' claims. The Court is therefore satisfied that the information sought is relevant and of potentially enormous evidentiary benefit.

Finally, as the Court noted at the October 9 Hearing, Verus does not identify any case in which a federal court recognized a common law privilege similar to the one urged here. Although that fact is not dispositive, it bears mentioning in light of the myriad cases in which the

---

[3] Moreover, Prudential must hold a cognizable confidentiality interest in order for Verus's argument to prevail. Prudential does not, however, have any such interest. As the state anti-disclosure statutes show, the insurance regulator is the purported privilege-holder and may, in certain circumstances, disclose any information obtained during an examination without the insurer's permission. See, e.g., Cal. Ins. Code § 735.5 (describing the California Insurance Commissioner's discretion to disclose insurance examination materials in subsections (a) and (b) and providing the general rule of confidentiality in subsection (c)). See also Rowe v. Bankers Life & Cas. Co., No. 09-491, 2011 WL 1897181, at *4 (N.D. Ill. May 18, 2011) (finding that the Commissioner is the sole holder of the privilege). Therefore, any conceivable confidentiality interest Prudential may hold with respect to communications between Verus and state insurance regulators is insufficient to create a privilege here.

9

Supreme Court and this Circuit have declined to recognize a new privilege. See, e.g., Univ. of Pa. v. E.E.O.C., 493 U.S. 182 (1990) (rejecting academic peer review privilege); United States v. Arthur Young & Co., 465 U.S. 805 (1984) (rejecting accountant-client privilege); Herbert v. Lando, 441 U.S. 153 (1979) (rejecting editorial process privilege); Whalen v. Roe, 429 U.S. 589 (1977) (rejecting physician-patient privilege); Branzburg v. Hayes, 408 U.S. 665 (1972) (rejecting reporter-source identity privilege); In re Grand Jury, 103 F.3d 1140 (3d Cir. 1997) (rejecting parent-child privilege); see also E.E.O.C. v. Ill. Dep't of Emp't Sec., 995 F.2d 106, 108 (7th Cir. 1993) (declining to recognize an "unemployment-insurance privilege" where the proffered justification was to promote "truthful and complete disclosure to state officials"). Many of those proposed privileges concerned relationships more important than the relationship here.

In light of the above, the Court declines to adopt a new "insurance examination privilege." The Court thus denies Verus's appeal of the December 3 Order on that basis.

### 2. The McCarran-Ferguson Act Does Not Compel a Finding of Privilege

The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015 (the "MFA"), is a reverse preemption statute that reserves for the states the power to regulate "the business of insurance." Defendants argue that allowing Lead Plaintiffs to subpoena documents from a non-party pursuant to Federal Rule of Civil Procedure 45, or construing Federal Rule of Evidence 501 so as not to recognize a common law insurance examination privilege, conflicts with the state insurance laws, which generally provide that examination-related materials are "not subject to subpoena." See, e.g., Cal Ins. Code § 735.5(c). As such, defendants argue that under the MFA, the state insurance examination statutes preempt the Federal Rules of Civil Procedure and Evidence and the privilege applies. This Court disagrees.

First, the preemptive force of the MFA is narrow—it only concerns "the business of insurance." The Supreme Court has set forth the following three criteria for determining whether conduct constitutes the "business of insurance": "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the industry." Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982) (emphasis in original). None of these three criteria is dispositive on its own. Id. If the activity at issue constitutes the "business of insurance," the reviewing court must then ask whether the state law was enacted *for the purpose of* regulating the business of insurance. Sabo, 137 F.3d at 190-91. The laws must be those enacted with the "end, intention, or aim of adjusting, managing, or controlling the business of insurance." U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 505 (1993).

Under that standard, this Court is satisfied that the state confidentiality statutes in question do not concern the "business of insurance." Here, the activity in question that the anti-disclosure statutes seek to regulate is the dissemination and maintenance of information, documents, and communications developed as a result of an insurance examination. That activity has nothing at all to do with the insurer-insured relationship, nor does it have the effect of spreading a policyholder's risk. The conduct at issue here therefore does not constitute the "business of insurance," and the MFA is accordingly inapplicable. See Sabo, 137 F.3d at 190.

Separately, the Court is not convinced that the anti-disclosure statutes were enacted for the purpose of regulating the business of insurance—i.e., with the goal "of adjusting, managing, or controlling the business of insurance." Fabe, 508 U.S. at 505. Instead, these statutes provide direction to the state regulatory entity as to how and when documents and communications

related to an insurance examination may or may not be disseminated. In other words, the statutes merely control the flow of information during an insurance examination. They do not seek to adjust, manage, or control the business of insurance. This case is unlike Fabe, where the Supreme Court found that an Ohio statute providing liquidation preference to insurance policyholders was enacted for the purpose of regulating the business of insurance because it was "integrally related to the performance of insurance contracts after bankruptcy." Id. at 504. Nor is it even a case where the substantive state insurance examination statutes are in issue. These anti-disclosure statutes only serve as directives to the state insurance regulator as custodian of information obtained or developed during an insurance examination. Cf. Int'l Ins. Co. v. Duryee, 96 F.3d 837, 839-40 (6th Cir. 1996) (state statute providing for revocation of foreign insurer's license if insurer removed case to federal court not enacted for purpose of regulating business of insurance, but rather for "parochial purpose of regulating a foreign insurer's choice of forum"). As such, the statutes' purpose is not to regulate the business of insurance.

For all of the above reasons, the Court finds that the MFA is inapplicable. Verus's appeal of the December 3 Order on that basis is denied.

### 3. The Official Information Privilege

At the October 9 Hearing, the Court did not address the application of the official information privilege and will therefore not reach it here. Following a meet-and-confer and exchange of privilege logs which comport with Local Civil Rule 34.1, Verus may assert any claimed privilege, including the official information privilege, and any disputes shall be raised in the normal course with the Magistrate Judge.

### III. THE CALIFORNIA CONTROLLER'S MOTION TO INTERVENE

The California Controller seeks to intervene for the limited purpose of asserting its various privilege rights. In addition, the California Controller moves for relief, seeking an order confirming that the December 3 Order does not deprive the Controller of its privilege objections and providing the Controller the opportunity to object to the production of documents in Verus's possession. The Court grants both motions. Federal Rule of Civil Procedure 24(a)(2) permits any person to intervene as of right where such person "claims an interest relating to the property or transaction that is the subject of the action." In determining whether to grant a motion for intervention as of right, the Court must consider four factors: (1) whether the motion is timely; (2) whether the movant has established a sufficient interest in the underlying action; (3) whether that "interest will be impaired or affected by the disposition of the underlying action"; and (4) whether the proposed intervenor's interests would be adequately protected by the existing parties. Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005).

The Court is satisfied that the California Controller has met those factors here. First, the motion is timely because it was filed a mere two weeks after the December 3 Order was entered. Prior to entry of the order, the California Controller had no reason to believe that intervention was required. Second, the Controller's interest in protecting its privilege rights is sufficient and surely its ability to protect those rights will be affected by the disposition of the instant case. Finally, in light of the fact that Lead Plaintiffs have attempted to argue that Verus may not assert the official information privilege on behalf of the government entities that hold the privilege, the Court is satisfied that the existing parties would be unable to adequately protect the California Controller's interests. Therefore, the Court finds that the California Controller is entitled to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). In addition, the Court

will grant the California Controller's motion for relief and will permit the Controller to assert its privilege claims and object to the production of certain documents in Verus's possession.

IV. **CONCLUSION**

In light of the foregoing, the Court orders as follows: (1) Verus's appeal is **DENIED** except that with respect to the December 3 Order at Paragraph 3, the first sentence is stricken and replaced with the following: "Verus's objection to production of documents pursuant to the subpoena on the grounds that they are protected by the insurance examination privilege is overruled. Verus may assert all other appropriate objections to documents on a document-by-document basis, consistent with the Local Rules."; (2) Verus's motion to stay is **DENIED** as moot; and (3) the California Controller's motions to intervene and for relief are **GRANTED**. An appropriate order will follow.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**