<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>  *Plaintiffs*,<br><br>v.<br><br>PRUDENTIAL FINANCIAL, INC., et al.,<br><br>  *Defendants*. | **Civil Action No. 12-05275 (MCA) (LDW)**<br><br>**MEMORANDUM OPINION AND ORDER**<br><br>**August 21, 2015** |

**LEDA DUNN WETTRE, U.S.M.J.**

Before the Court is a dispute between the parties concerning (a) the number of custodians of defendant Prudential Financial, Inc. ("Prudential") whose records, including electronically stored records, should be searched for information responsive to plaintiffs' discovery demands; and (b) which of four remaining, disputed search terms must be utilized in the searches of the custodians' records. The Court has considered the parties' letter submissions on these issues (ECF Nos. 170, 272, 275, 284, 319) and the parties' presentations at oral argument on July 13, 2015. For the reasons set forth below, plaintiffs' application for records of additional custodians of defendants is **GRANTED IN PART** and plaintiffs' demand that defendant Prudential employ four additional search terms to its searches of custodians' records is **GRANTED**.

## I.   RELEVANT BACKGROUND

This is a securities class action, in which Plaintiffs allege that Prudential and three corporate officers violated §§10(b), 20(a) and 20(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 [17 C.F.R. §240.10b-5] by making false and misleading statements concerning Prudential's income and expenses between May 5, 2010 and November 4, 2011. (*See* ECF No. 22.) Plaintiffs essentially contend in this action that Prudential overstated its income and understated its earnings by retaining life insurance monies that it knew, or was reckless in not knowing, had become payable to beneficiaries or escheatable to a State as unclaimed property by reason of an insured's death. Plaintiff alleges that Prudential failed to run adequate searches for insureds' deaths in the Social Security Administration's Death Master File ("SSA-DMF") that would have revealed that a disposition of the life insurance funds had been triggered.

Prudential's unclaimed property practices concerning life insurance came under scrutiny in 2009 as a result of an audit initiated by the Florida Department of Financial Services through a third party auditor, Verus Financial LLC. The Verus audit, eventually conducted on behalf of various States, is alleged by plaintiffs to have led defendants to record $200 million in charges to increase reserves, a $17 million settlement with a number of States (ECF No. 22 ¶ 101-07), "and additional loss exposure relating to other ongoing litigation," (*see* ECF No. 22 at ¶116).

The Verus audit generated significant activity at Prudential across numerous business units.   As previously noted by the Court, "During its involvement in the Examinations, Verus was in close contact with both the states and Prudential. Verus, the

state insurance regulators, and Prudential thus inevitably exchanged a considerable amount of information during the Examinations." (ECF No. 226 at 3.)

The instant dispute relates to plaintiffs' demands for the email and other electronically stored information ("ESI") of custodians they believe to have information relating to the States' investigations of Prudential's use of the SSA-DMF, escheatment practices and reserves. Plaintiffs originally demanded that searches be run through ESI of a total of 86 custodians at Prudential. Defendants proposed 59 custodians, 37 of whom were derived from plaintiffs' proposed list. (ECF No. 267 at 16.) After subsequent meet-and-confer sessions, 63 custodians were agreed upon by the parties, and plaintiffs sought 38 more, a number they subsequently increased to 45. (*See id.*) Following the July 13, 2015 hearing before the Court, Prudential agreed to an additional three custodians, bringing the total number of agreed custodians to 66. (*See* ECF Nos. 272 & 275.) Plaintiffs currently seek to designate between 22 and 45 additional custodians.

As to the dispute regarding search terms, the parties had agreed to some 200 search terms by the time of the Court's July 13, 2015 hearing. Plaintiffs contend that they acceded to defendants' position with respect to numerous of these terms that had been in dispute. (ECF No. 272 at 1.) Subsequent to the Court's July 13, 2015 hearing, the parties agreed to an additional 22 searches. (*See* ECF No. 272 and 275-2.) There remain only four proposed search terms in dispute, which plaintiffs assert are "high priority terms." Plaintiffs seek an Order compelling defendants to run these searches through all of the custodians' ESI. (*See* ECF No. 319.)

3

## II.   LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." *See* Fed. R. Civ. P. 26(b)(1). While the right to discovery is thus broad, it is not unlimited, and courts may in the exercise of their discretion deny "unreasonably cumulative" discovery requests. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

District Courts "have broad discretion to manage discovery." *See Robinson, v. Horizon Blue Cross-Blue Shield of New Jersey*, No. CIV.A. 12-2981 ES, 2014 WL 3573339, at *3 (D.N.J. July 21, 2014) (quoting *EEOC v. Princeton Healthcare Sys.*, No. 10–4126, 2012 WL 1623870, at *18 (D.N.J. May 9, 2012)). Rule 26(b)(2)(C) requires that a court limit discovery otherwise permitted by the rules "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id.*   This rule "is intended to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Leksi, Inc.*

4

*v. Fed. Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989) (quoting Fed. R. Civ. P. 26 advisory committee note) (internal quotations omitted).

This Court has noted that amendments to Federal Rule of Civil Procedure 26 have been added to "confront the problem of over-discovery and to allow the court to proportion discovery, even though it may be relevant." *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 107 (D.N.J. 1990). The emergence of e-discovery only has intensified the need for judicial scrutiny of the scope of discovery. S*ee* Fed. R. Civ. P. 26 advisory committee note. Rule 26 was amended in 1993 "to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery" in light of the "information explosion of recent decades [that] has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression." *See id.*

## III.   **DISCUSSION**

Plaintiffs seek an Order from this Court (1) compelling Prudential to run search terms through the ESI of an additional 22 to 45 custodians of plaintiffs' choosing and (2) requiring defendants to run four additional searches through the final group of custodians. (*See* ECF No. 284 at 5.) The Court addresses each issue in turn below.

### A. **Custodians**

With respect to the additional custodians, plaintiffs have identified in chart form the factual basis for their contention that each of the custodians at issue has relevant, noncumulative and unique information relating to this action. Defendants in response have

5

submitted information ostensibly countering the entries in plaintiffs' chart as to each custodian. Prudential sets forth information that it argues demonstrates that the custodians in question have information that is cumulative and duplicative of information in the possession of agreed custodians. They further assert that the existing group of agreed custodians spans all Prudential business units, functions and employee levels. (ECF No. 169 at 4.) Defendants argue, therefore, that the burden of the proposed discovery of the additional custodians sought by plaintiffs outweighs its likely benefit. (*See* ECF No. 275 at 2-3.) Plaintiffs argue in response that the additional custodians are likely to provide unique, relevant information and further argue that Prudential strategically has rejected higher-level custodians "who they know are more likely to have damaging evidence." (*See* ECF No. 284 at 4.)

Neither plaintiffs nor the Court can know with certainty, of course, whether searches of the additional custodians' ESI will yield unique, noncumulative documents. Having examined the information submitted by the parties, the Court is satisfied to a large extent that the vast majority of the proposed custodians' email accounts are likely to contain information duplicative of that in other agreed custodians' accounts. Moreover, the Court is cognizant of the sizeable costs to Prudential involved in the searching, review and production of information from each additional custodian. Although Prudential is a large corporation with substantial resources, the Court should not be – and is not - insensitive to these costs.

Plaintiffs provide sufficient information, however, to support a fair inference that among the 22 to 45 additional custodians it seeks, there may be a number of custodians

with emails or analyses different from those of the agreed custodians. Although the number of agreed custodians is already substantial, the resources and personnel at Prudential devoted to the Verus audit and related issues also seem to have been immense. Therefore, it is not surprising that more than 66 Prudential employees may have been heavily involved in the issues relating to this case and may thus have relevant, noncumulative information. Moreover, allowing plaintiffs a moderate number of additional custodians does not seem disproportionate to the size and scale of this action. The Court understands that there are electronic de-duping tools that may be utilized to limit defendants' review and production of duplicative documents, reducing some of the burden on Prudential of producing information from additional custodians.

Weighing all of the above factors, the Court finds it would be equitable for plaintiffs to choose up to an additional ten custodians at Prudential. In the Court's considered view, permitting this limited number of additional custodians (bringing the total number to 76, nearly the number plaintiffs initially designated) and permitting plaintiffs to select those custodians would balance fairly plaintiffs' rights to relevant discovery against the costs and burden to defendants of providing that discovery.

**B.  Search Terms**

As to search terms, defendants argue that plaintiffs, who do not bear reciprocal discovery obligations, "have every incentive to propose as many search terms as possible to increase Defendants' burden" and point out that they have already produced over 1.5 million pages of discovery. (*See* ECF No. 275 at 3.) Plaintiffs respond that more than half

of these pages "are completely unusable redacted pdfs of Excel spreadsheets" and that therefore defendants' arguments about burden should be rejected. (*See* ECF No. 284 at 3.)

Despite their differences, the parties have in good faith met and conferred as to search terms and have reached agreement as to all but four terms. As to the four terms still in dispute, plaintiffs report that they agreed to narrow the searches in order to reduce the number of prospective documents. (ECF No. 272.) They note that had defendants provided hit counts suggesting that these four terms yielded an "egregiously large" number of "hits," they would have considered narrowing the terms further.

Reviewing the four terms still in dispute (in ECF No. 319), it does appear that they are designed to target information relevant to the issues in this action. The Court does not have before it information on which it is persuaded that it should deny these four additional terms because they would produce an unduly large number of results likely to be irrelevant to this case. While the Court does recognize that defendant has agreed to a large number of search terms, that is not sufficient basis in and of itself to deny plaintiffs the four additional search terms they seek.

## CONCLUSION

For the foregoing reasons, defendants are hereby **ORDERED** to run the ESI searches through the records of ten additional custodians of plaintiffs' choice. Defendants are further **ORDERED** to apply the remaining four search terms in dispute to all custodians.

_____
Leda Dunn Wettre, U.S.M.J.

cc: Hon. Madeline C. Arleo, U.S.D.J.

8