COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel for Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>    vs.<br><br>PRUDENTIAL FINANCIAL, INC., et al.,<br><br>                              Defendants. | No. 2:12-cv-05275-MCA-LDW<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' EXPENSES |

# TABLE OF CONTENTS

**Page**

I.   THE STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES IN COMMON FUND CASES...................................6

    A.   Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund They Created ...................................................................6

    B.   The Court Should Award Attorneys' Fees Using the Percentage Approach .........................................................................7

II.   THE REQUESTED 30% FEE IS FAIR AND REASONABLE..................10

    A.   The Size and Nature of the Common Fund Created and the Number of Persons Benefited by the Settlement ................................11

    B.   The Absence of Objections by Class Members to the Fee Request .........................................................................13

    C.   The Skill and Efficiency of Plaintiffs' Counsel ...................................13

    D.   The Complexity and Duration of the Litigation..................................14

    E.   The Risk of Non-Payment..................................................................16

    F.   The Significant Time Devoted to This Case by Plaintiffs' Counsel .........................................................................20

    G.   Awards in Similar Cases .....................................................................21

        1.   The Requested Fee of 30% of the Settlement Fund Is Within the Range of Fees Typically Awarded in Actions of This Nature ...................................................................21

        2.   The Requested 30% Fee Is Consistent with Contingent Fee Arrangements Negotiated in Non-Class Litigation............22

III.   THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK.....................................................................23

IV.   PLAINTIFFS' COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED ........26

V.   PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES...............................................29

- i -

**Page**

VI.    CONCLUSION..................................................................................30

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Lightolier, Inc.*,
50 F.3d 1204 (3d Cir. 1995) ...............................................................26

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...............................................................2

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ............................................................18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)...............................................................................6

*Blum v. Stenson*,
465 U.S. 886 (1984)...............................................................7, 22, 24

*Bodnar v. Bank of America, N.A.*,
No. 14-3224, slip op.
(E.D. Pa. Aug. 4, 2016)...............................................................*passim*

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...............................................................................5, 7

*Bryant v. Avado Brands, Inc.*,
100 F. Supp. 2d 1368 (M.D. Ga. 2000),
*rev'd on other grounds sub nom. Bryant v. Dupree*,
252 F.3d 1161 (11th Cir. 2001) .........................................................14

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ............................................................9

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885)...............................................................................6

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000).........................................................13

**Page**

*Esslinger v. HSBC Bank Nev., N.A.*,
   No. 10-3213, 2012 U.S. Dist. LEXIS 165773
   (E.D. Pa. Nov. 20, 2012) .............................................................................20, 25

*Florin v. Nationsbank, N.A.*,
   34 F.3d 560 (7th Cir. 1994) ...................................................................9

*Goldstein v. MCI WorldCom*,
   340 F.3d 238 (5th Cir. 2003) ..............................................................14

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ................................................................9

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) .......................................................*passim*

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...................................................................10, 23

*Hoffman Elec., Inc. v. Emerson Elec. Co.*,
   800 F. Supp. 1279 (W.D. Pa. 1992)...................................................15

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .......................................................18, 19

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 3:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498
   (D. Nev. Oct. 19, 2012) ......................................................................28

*In re Advanta Corp. ERISA Litig.*,
   No. 2:09-cv-04974-CMR, slip op.
   (E.D. Pa. Jan. 9, 2014) ......................................................................20

*In re Aetna Inc. Sec. Litig.*,
   No. MDL No. 1219, 2001 WL 20928
   (E.D. Pa. Jan. 4, 2001) ......................................................................25

*In re Alstom SA Sec. Litig.*,
   741 F. Supp. 2d 469 (S.D.N.Y. 2010) ...............................................19

**Page**

*In re Am. Int'l Grp. Inc. Sec. Litig.*,
    No. 04 Civ. 8141 (DAB), 2010 WL 5060697
    (S.D.N.Y. Dec. 2, 2010) ...................................................................29

*In re Apple Computer Sec. Litig.*,
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991) .................................................................18

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002)........................................................8, 13

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ...........................................................7, 8

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL Docket No. 1426, 2008 U.S. Dist. LEXIS 569
    (E.D. Pa. Jan. 3, 2008) ....................................................................25

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .....................................................5, 8, 12

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) ..............................................................9

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine)*
*Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009) ..............................................................6

*In re Fine Paper Antitrust Litig.*,
    751 F.2d 562 (3d Cir. 1984) ............................................................24

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964
    (E.D.N.Y Sept. 18, 2007)................................................................28

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...............................................6, 7, 9, 20

**Page**

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)....................................................................*passim*

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..........................................................29

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486-CW(EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007)................................................................................18

*In re Lupron Mktg. & Sales Practices Litig.*,
MDL No. 1430, 2005 U.S. Dist. LEXIS 17456
(D. Mass. Aug. 17, 2005)................................................................................17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953
(S.D.N.Y. Dec. 23, 2009) ................................................................................29

*In re Merck & Co. Vytorin ERISA Litig.*,
No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS 12344
(D.N.J. Feb. 9, 2010) ......................................................................................22

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)..........................................................29

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
(N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376
(9th Cir. 2010)..................................................................................................18

*In re PAR Pharm. Sec. Litig.*,
No. 06-3226 (ES), 2013 U.S. Dist. LEXIS 106150
(D.N.J. July 29, 2013) ......................................................................................20

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ........................................................................8, 24

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005)..............................................................25

**Page**

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ..........................................21, 22, 23, 24

*In re RJR Nabisco, Inc. Sec. Litig.*,
   No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702
   (S.D.N.Y. Aug. 24, 1992) ..................................................................21

*In re Schering-Plough Corp.*,
   No. 08-1432 (DMC) (JAD), 2012 U.S. Dist. LEXIS 75213
   (D.N.J. May 31, 2012) ......................................................................16

*In re Thirteen Appeals Arising out of the San Juan*
*Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ..................................................................9

*In re U.S. Bioscience Sec. Litig.*,
   155 F.R.D. 116 (E.D. Pa. 1994)..........................................................22

*In re Veritas Software Corp. Sec. Litig.*,
   396 F. App'x 815 (3d Cir. 2010) ........................................................21

*In re ViroPharma Inc. Sec. Litig.*,
   No. 12-2714, 2016 U.S. Dist. LEXIS 8626
   (E.D. Pa. Jan. 25, 2016) ............................................................*passim*

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986)..............................................13, 24

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................9

*In re Xcel Energy, Inc.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)..................................................18

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)..............................................................................6

1177664_1

**Page**

*Lindy Bros. Builders, Inc. v. Am. Radiator*
*& Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973) ........................................................................8, 23

*Lindy Bros. Builders v. Am. Radiator*
*& Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976) ........................................................................8, 23

*Local 703, I.B. of T. Grocery & Food Emps.*
*Welfare Fund v. Regions Fin. Corp.*,
  No. 2:10-cv-02847-KOB, 2015 U.S. Dist. LEXIS 130542
  (N.D. Ala. Sept. 14, 2015) ..................................................................................29

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ................................................................................9

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)...............................................................................................6

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)............................................................................................24

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010)............................................................................................19

*Pension Fund v. Alter*,
  No. 2:09-cv-04730-CMR, slip op.
  (E.D. Pa. Aug. 4, 2014)......................................................................................20

*Rawlings v. Prudential-Bache Props.*,
  9 F.3d 513 (6th Cir. 1993) ...................................................................................9

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ........................................................................18

*Schuh v. HCA Holdings, Inc.*,
  No. 3:11-cv-01033, slip op.
  (M.D. Tenn. Apr. 14, 2016)...............................................................................28

**Page**

*Schuler v. Meds. Co.*,
  No. 14-1149 (CCC), 2016 U.S. Dist. LEXIS 82344
  (D.N.J. June 24, 2016) ...............................................................*passim*

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939)........................................................................6

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) .........................................................16

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)...........................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................6

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(3)(A)(i)........................................................................27
  §78u-4(a)(4) ...............................................................................28
  §78u-4(a)(6) .................................................................................9

Federal Rules of Civil Procedure
  Rule 23(f) ......................................................................................4

## SECONDARY AUTHORITIES

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
  108 F.R.D. 237 (Oct. 8, 1985) ...................................................7, 8, 9

Third Circuit Task Force Report, *Selection of Class Counsel*,
  208 F.R.D. 340 (Jan. 15, 2002)........................................................9

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
  §2.02............................................................................................7

Lead Counsel have succeeded in obtaining a $33,000,000 cash settlement for the benefit of the Class.[1]  This is a very good result in the face of substantial risk and is a credit to Lead Counsel's vigorous, persistent, and skilled efforts.  Lead Counsel respectfully move this Court for an award of attorneys' fees in the amount of 30% of the Settlement Amount and payment of their litigation expenses in the amount of $798,955.79, plus interest on both amounts.  In addition, the Plaintiffs, National Shopmen Pension Fund ("National Shopmen"), Heavy & General Laborers' Locals 472 & 172 Pension and Annuity Funds ("Heavy & General") and Roofers Local No. 149 Pension Fund ("Roofers Local") (collectively, "Plaintiffs") seek reimbursement for their expenses (including lost wages) incurred in representing the Class in the amount of $10,500, $1,500, and $7,200, respectively.[2]

The requested fee is within the range of percentages awarded in class actions in this District and Circuit, as well as in numerous decisions throughout the country, and is the appropriate method of compensating counsel.  Indeed, "'awards of thirty percent are not uncommon in securities class actions.'"  *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *52 (E.D. Pa. Jan. 25, 2016) (citation omitted).  The amount requested is especially warranted in light of the

---

[1]     All terms used herein are defined in the Stipulation of Settlement dated April 18, 2016 ("Stipulation") (Dkt. No. 425-2) unless otherwise indicated.

[2]     *See* Declaration of Timothy O'Connell in Support of Application for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses ("O'Connell Decl."); Declaration of Charles B. O'Neill in Support of Application for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses ("O'Neill Decl."); and Declaration of Darris Garoufalis in Support of Application for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses ("Garoufalis Decl."), submitted herewith.

- 1 -

recovery obtained for the Class, the extensive efforts of counsel in obtaining this result, and the significant risks in bringing and prosecuting this Litigation.[3]  Absent this Settlement, continued litigation through trial and appeals would have likely taken several more years at considerable expense without the Class receiving the benefits of the Settlement, thus creating the very real risk that the Class could ultimately receive less, or even no recovery.

This Litigation has been vigorously litigated for nearly four years. Prosecution of this Litigation was undertaken by Lead Counsel on a wholly contingent basis and was extremely risky and difficult from the outset.  The Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The effect of the PSLRA is to make it harder for investors to bring and successfully resolve securities class actions.  Plaintiffs and their counsel were mindful of the fact that in this post-PSLRA environment, a greater percentage of cases are being dismissed than ever before, amid defendants' constant attempts to expand the provisions of the PSLRA.  As the Fifth Circuit noted:  "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."  *Alaska Elec.*

---

[3]     Submitted herewith in support of approval of the Settlement is the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Memorandum").  In addition, the Court is respectfully referred to the accompanying Declaration of Shawn A. Williams in Support of (1) Final Approval of Class Action Settlement, (2) Plan of Allocation of Settlement Proceeds; and (3) an Award of Attorneys' Fees and Expenses and Plaintiffs' Expenses ("Williams Decl.") for a more detailed description of the history of the Litigation, an overview of the claims asserted, the investigation undertaken, the efforts of counsel, the negotiation of the Settlement, and the substantial risks of the Litigation.

*Pension Fund v. Flowserve Corp*., 572 F.3d 221, 235 (5th Cir. 2009). In fact, the motion to dismiss this action was granted in part, Williams Decl., ¶28, and during the course of the Litigation, the Supreme Court issued the *Omnicare* decision, which addressed liability of statements of opinion.

In addition to the significant risks of success, the effort required to achieve this Settlement was substantial. As set forth in more detail in the Williams Declaration and the Settlement Memorandum, the Settlement was achieved only after Lead Counsel, had, among other things: (i) prepared a fact-intensive Amended Class Action Complaint for Violations of the Federal Securities Laws; (ii) opposed Defendants' motion to dismiss; (iii) successfully certified the Class over Defendants' vigorous opposition, including prevailing on Defendants' motion to exclude Plaintiffs' expert; (iv) briefed an opposition to Defendants' motion for interlocutory appeal of the class certification order; (v) engaged in written discovery, litigated discovery disputes and analyzed over 3.7 million pages of produced documents; (vi) took 17 depositions; (vii) defended the depositions of the Class Representative and Plaintiffs' market efficiency expert; (viii) identified, retained and conferred with experts and consultants on issues of insurance practices and unclaimed property, market efficiency, reliance, loss causation and damages; (ix) prepared a detailed mediation statement; and (x) engaged in extensive settlement negotiations, including an all-day mediation with The Hon. Layn R. Phillips (Ret.). Indeed, Plaintiffs' counsel and their paraprofessionals combined have expended 25,945.72 hours in the prosecution of this Litigation with a resulting lodestar of $12,480,217. The 30% fee

- 3 -

award requested by Plaintiffs' counsel ($9,900,000) represents a negative multiplier of counsel's lodestar.

From the outset, Defendants adamantly denied any liability, contested virtually every legal and factual issue and offered evidence to support some of their contentions. While Plaintiffs believe that the evidence supports their claims and that they would survive Defendants' Rule 23(f) challenge and summary judgment after completion of discovery and ultimately prevail at trial, there is no question that continued litigation was fraught with risks for the Class with ultimate success far from certain. As detailed in the Williams Declaration and the Settlement Memorandum, Plaintiffs and Defendants strongly disagreed on the legal and factual issues in this case. There could be no way of predicting which interpretations of the import and meaning of documents produced or witnesses' testimony this Court or a jury would accept. The Court or a jury could have sided with Defendants on some or all of the issues. Despite these and other obstacles, Plaintiffs' counsel recovered a settlement of $33 million for the benefit of the Class.

Plaintiffs' counsel firmly believe that the Settlement is the result of their creative and diligent efforts, as well as their reputations as attorneys who are unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals. In a case asserting claims based on complex legal and factual issues which were opposed by highly skilled and experienced defense counsel, Plaintiffs' counsel succeeded in securing a very favorable result for the Class under difficult and challenging circumstances.

As important, the requested fees have been approved by the Court-appointed Lead Plaintiffs. *See* O'Connell Decl., ¶6; O'Neill Decl., ¶4; Garoufalis Decl., ¶4. Plaintiffs have evaluated the request for fees and expenses and have come to the conclusion that the requested fees are warranted based on their substantial involvement in the prosecution of the Litigation. Plaintiffs also considered Plaintiffs' counsel's substantial efforts in obtaining the recovery particularly in light of the substantial risks of litigation. As a result, the fee request is entitled to a "presumption of reasonableness." *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001) ("[C]ourts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel."); *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *46-*47 ("Where the Lead Plaintiff approves the Lead Plaintiff's Counsel's request[ed] fee award – as Lead Plaintiff does here – the Court should afford the fee requested a presumption of reasonableness.").

For all the reasons set forth herein, in the Williams Declaration and in the Settlement Memorandum, Plaintiffs' counsel respectfully submit that the requested attorneys' fees are fair and reasonable under the applicable legal standards and therefore, should be awarded by the Court. Moreover, the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of the Litigation and therefore, should be approved.

I.     **THE STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES IN COMMON FUND CASES**

   A.     **Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund They Created**

It is well-settled that an attorney who maintains a lawsuit that results in the creation of a fund or benefit in which others have a common interest may obtain fees from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund ensure that "'competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citation omitted); *Schuler v. Meds. Co.*, No. 14-1149 (CCC), 2016 U.S. Dist. LEXIS 82344, at *25 (D.N.J. June 24, 2016). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985)

- 6 -

(quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See, e.g.*, *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *46 ("'The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995) ("*GMC Trucks*")); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

The ultimate determination of the proper amount of attorneys' fees, of course, rests within the sound discretion of the district court. *Gunter*, 223 F.3d at 195; *GMC Trucks*, 55 F.3d at 821; *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 168-69 (3d Cir. 2006); *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *46.

## B.   The Court Should Award Attorneys' Fees Using the Percentage Approach

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fees should be determined as a percentage of the fund. *See, e.g.*, *Boeing*, 444 U.S. at 478-79. Indeed, by 1984 this point was so well established that the Supreme Court needed no more than a footnote to address it in *Blum v. Stenson*, 465

U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) ("Task Force Report") (fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same).

The Third Circuit and district courts within it have repeatedly approved the percentage-of-recovery method of awarding fees in common fund securities fraud cases. *See, e.g.*, *AT&T*, 455 F.3d at 164 ("In common fund cases such as this one, the percentage-of-recovery method is generally favored."); *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *46 ("The percentage-of-recovery method is 'generally favored' in cases involving a settlement that creates a common fund."). In *Cendant*, the court noted "[f]or the past decade, counsel fees in securities litigation have generally been fixed on a percentage basis rather than by the so-called lodestar method." 264 F.3d at 220. In *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), the court stated "[t]he percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Id.* at 333 (citation omitted); *see also Schuler*, 2016 U.S. Dist. LEXIS 82344, at *25 (D.N.J. June 24, 2016) ("When calculating attorneys' fees in common-fund cases such as this one, the percentage-of-recovery method is generally favored."); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002) ("the percentage-of-recovery method is used in

common fund cases on the theory that class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund").[4]

Additionally, the PSLRA contemplates percentage-based fees, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class."   15 U.S.C. §78u-

---

[4]      A second method for calculating attorneys' fee awards, the lodestar/multiplier method, by which courts multiply the number of hours spent on the case by each attorney's reasonable hourly rate and then adjust that figure (by applying a multiplier) to reflect such factors as risk, the contingent nature of the litigation, the result obtained, and the quality of the attorney's work (*see, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973) ("*Lindy I*"), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (en banc) ("*Lindy II*")), has been discredited by two different task forces of prominent judges and practitioners convened to consider fees in class action cases by the United States Court of Appeals for the Third Circuit, first in 1985, and again in 2002.  *See* Task Force Report, 108 F.R.D. at 238; Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340 (Jan. 15, 2002).

Since the issuance of the Task Force Report in 1985, virtually every other circuit court has joined this Circuit and the United States Supreme Court in approving use of the percentage-of-the-fund method in common fund cases. *See, e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) (permitting use of percentage method, "[c]ontrary to popular belief, it is the lodestar method, not the [percentage] method, that breaks from precedent"); *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage and holding that use of lodestar/multiplier method was abuse of discretion); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993).  In fact, two Circuit Courts of Appeals have held that the percentage method is mandatory in common fund cases. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (rejecting the lodestar approach in all common fund cases and holding that the percentage method is mandatory).

4(a)(6) (emphasis added).  Thus, "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable."  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005).

## II.   THE REQUESTED 30% FEE IS FAIR AND REASONABLE

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common fund cases.  *See, e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."); *GMC Trucks*, 55 F.3d at 821.

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider "among other things," the following factors in determining a fee award, including:

1.      the size of the fund created and the number of persons benefited;

2.      the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel;

3.      the skill and efficiency of the attorneys involved;

4.      the complexity and duration of the litigation;

5.      the risk of nonpayment;

6.      the amount of time devoted to the case by plaintiffs' counsel; and

7.      the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1.  These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest."  *Id.*; *Schuler*, 2016 U.S. Dist. LEXIS 82344, at *26.

Applying these factors to the present case, a 30% fee award to Plaintiffs'
counsel for achieving this highly favorable settlement is both justified and
appropriate.

> **A.    The Size and Nature of the Common Fund Created and the
> Number of Persons Benefited by the Settlement**

Plaintiffs' counsel have secured a settlement that provides for a substantial
and certain cash payment of $33,000,000, plus interest for the benefit of the Class.
Courts have consistently recognized that the result achieved is a major factor to be
considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)
("most critical factor is the degree of success obtained"); *ViroPharma*, 2016 U.S.
Dist. LEXIS 8626, at *48.  In *Ikon*, the court in awarding the requested fee stated
"[t]he most significant factor in this case is the quality of representation, as measured
by 'the quality of the result achieved, the difficulties faced, the speed and efficiency
of the recovery, the standing, experience and expertise of the counsel, the skill and
professionalism with which counsel prosecuted the case and the performance and
quality of opposing counsel.'"  194 F.R.D. at 194 (citation omitted).

The $33,000,000 cash settlement here provides a substantial and certain
benefit to the Class.  This Settlement was achieved as a direct result of the skill and
tenacity of Plaintiffs' counsel in the prosecution of this Litigation on behalf of the
Class.  There is no question that Plaintiffs' counsel overcame numerous obstacles
and took significant risks in obtaining this highly favorable result for the Class.

While Plaintiffs believe that their claims have substantial merit, if this
Litigation was to proceed through the Third Circuit on the class certification issue

and, if successful, summary judgment and trial, there is a significant risk that the Class could recover less than the amount of the Settlement, or nothing. Throughout the Litigation, Defendants have consistently maintained that Plaintiffs could not establish liability or damages and have challenged virtually every factual and legal issue in this Litigation in an effort to defeat Plaintiffs' claims. Williams Decl., ¶¶6-11, 145-154; Settlement Memorandum at §§V.D-H. Despite Defendants' efforts, Plaintiffs' counsel achieved a significant recovery for the Class. The Settlement will provide Class Members compensation for their losses in Prudential Financial, Inc. ("Prudential" or the "Company") securities in the near future and avoid the substantial expense, delay, and uncertainty of continued litigation. The $33 million recovery for the Class, which represents approximately 13.2% of Plaintiffs' estimate of maximum recoverable damages (and 165% of Defendants' estimate, using a plaintiff-style damage model) (Williams Decl., ¶169), fully supports the requested fee award.

The number of persons benefited is undeniably large. There were millions of shares of Prudential common stock traded during the Class Period. To date, over 227,000 notices have been sent to potential Class Members. *See* Declaration of Carole K. Sylvester Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Sylvester Decl."), ¶11, submitted herewith. It is therefore reasonable to conclude that thousands of Class Members will participate in and benefit from this Settlement.

- 12 -

**B.      The Absence of Objections by Class Members to the Fee Request**

Notice of this Settlement and Plaintiffs' counsel's fee request was provided to over 227,000 potential Class Members.  *See* Sylvester Decl., ¶11.  To date, not a single objection has been filed to any aspect of the Settlement.  This is significant.  Indeed, as the Third Circuit has noted, "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."  *Cendant*, 264 F.3d at 235.

**C.      The Skill and Efficiency of Plaintiffs' Counsel**

It took a great deal of skill to achieve what counsel achieved for the benefit of the Class.  Plaintiffs' counsel's efforts in bringing this action to such a successful conclusion are the best indicator of the experience and ability of the attorneys involved.  *AremisSoft*, 210 F.R.D. at 132 ("'the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)); *see also Bodnar v. Bank of America, N.A.*, No. 14-3224, slip op. at 9 (E.D. Pa. Aug. 4, 2016).  By any measure, Plaintiffs' counsel's efforts have resulted in a highly favorable outcome for the benefit of the Class.  The substantial and certain recovery obtained for the Class is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions.[5]  Plaintiffs' counsel's reputations as attorneys who

---

[5]      The experience of the law firms that represent Plaintiffs in this Litigation are set forth in the accompanying declarations of counsel.  As those submissions show,

will zealously carry a meritorious case through the trial and appellate levels as well as their demonstrable ability to vigorously develop the evidence in this Litigation enabled them to negotiate the outstanding recovery for the benefit of the Class.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by plaintiffs' counsel. *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Defendants were represented by attorneys from Debevoise & Plimpton, LLP and Wong Fleming, prominent law firms with undeniable experience and skill. The ability of Plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition further confirms the superior quality of Plaintiffs' counsel's representation.

### D.    The Complexity and Duration of the Litigation

There can be no dispute regarding the overall complexity and duration of this securities class action, which has been pending for four years. This action involved complex legal and factual issues under the federal securities laws and insurance industry practices. While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. Plaintiffs' counsel addressed numerous case-determinative

---

Plaintiffs' counsel are highly regarded and practice extensively in the highly complex field of shareholder securities litigation. *See also ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *49.

issues in opposing Defendants' motion to dismiss, and there was no guarantee that those claims would survive the heightened pleading standards of the PSLRA.  As one court has noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).[6]  In *Ikon*, the court noted: "[t]here were the legal obstacles of establishing scienter, damages, [and] causation . . . .  The court also acknowledges that securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA. . . .  The Act imposes many new procedural hurdles . . . .  It also substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs."  194 F.R.D. at 194-95.  The court's statement in *Ikon* is certainly applicable here.

This action has been vigorously prosecuted and defended for four years.  At every stage of the action counsel for Defendants have aggressively defended this Litigation and expressed their belief that the Class would not prevail.  Even if Plaintiffs got past summary judgment after completion of discovery and were successful against Defendants at trial, Plaintiffs' efforts to establish liability and damages in the Litigation in all likelihood would not end with a judgment in the district court, but would continue through one or more levels of appellate review.  In

---

[6]     Even strong cases that ultimately have been widely recognized as meritorious have been dismissed.  *See Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003).

- 15 -

complex and substantial cases such as this, it must be recognized that even a victory at the trial stage does not guarantee ultimate success.  Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *51 ("'Here, the trial, as . . . all securities fraud trials, will be long and complex . . . . Thus, the complexity, expense and duration of the litigation weigh in favor of settlement.'") (quoting *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 800 F. Supp. 1279, 1285 (W.D. Pa. 1992)).

As detailed in the Williams Declaration, this highly complex case has been extensively litigated and vigorously contested.  Despite the difficulty of the issues raised, counsel secured a highly favorable result for the Class.  As a result, this factor strongly supports the requested award.

### E.  The Risk of Non-Payment

Plaintiffs' counsel undertook this action on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated.  *See Bodnar*, slip op. at 10.  Unlike counsel for Defendants, who are paid an hourly rate and paid their expenses on a regular basis, Plaintiffs' counsel have not been compensated for any time or expense since this case began in 2012.  Since that time, Plaintiffs' counsel have expended 25,945.72 hours in the prosecution of this Litigation with a resulting lodestar of $12,480,217 and incurred $798,955.79 in litigation expenses.  Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.  "Courts routinely recognize that the risk created by undertaking an

- 16 -

action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp.*, No. 08-1432 (DMC) (JAD), 2012 U.S. Dist. LEXIS 75213, at *19 (D.N.J. May 31, 2012).

The Seventh Circuit confirmed that the risk of loss is real and should be considered in a motion for attorneys' fees.  It reversed a district court's order that had rejected counsel's contention that lawyers faced the risk of nonpayment. *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) ("Because the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated.").

Even though Plaintiffs' claims cleared the pleading stage, they had the substantial burden of proving liability and damages at summary judgment and trial. As noted herein and in more detail in the Settlement Memorandum and Williams Declaration, Defendants steadfastly maintained that they did nothing wrong and were prepared to offer evidence to support their positions.  Assuming Plaintiffs prevailed in the Third Circuit on Defendants' challenge to the class certification order, and were able to overcome Defendants' likely motion(s) for summary judgment, and prove liability at trial, they still would have faced significant risks. Because of the complex nature of loss causation and damages, expert testimony is almost always necessary.  The damage assessments of the parties' respective experts at trial would be polar opposites and the determination of the amount, if any, of damages suffered by the Class at trial would have turned into a "battle of the experts."  To the extent that the Defendants could prevail on issues relating to liability or show that any assumptions made by Plaintiffs' experts were incorrect or

- 17 -

unreliable or could show that any portion of the market drop in Prudential stock was due to factors other than the alleged false statements, Plaintiffs' claimed damages could be significantly reduced.[7]  Plaintiffs realized that in the inevitable "battle of experts," the jury could have sided with Defendants' expert(s) and found no damages or only a fraction of the damages Plaintiffs claimed. *See In re Lupron Mktg. & Sales Practices Litig.*, MDL No. 1430, 2005 U.S. Dist. LEXIS 17456, at *16 (D. Mass. Aug. 17, 2005) ("History is replete with cases in which plaintiffs prevailed at trial on issues of liability, but recovered little or nothing by way of damages.") (collecting cases).

Indeed, the risk of no recovery for the class and counsel in complex cases of this type is very real.  There are numerous examples of hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.  *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in

---

[7]      In fact, Defendants forcefully argued that Plaintiffs would be unable to prove that Prudential's charge to earnings announced on November 2, 2011 was an admission that the Company's prior financial statements were materially false and misleading.   Williams Decl., ¶9.   Rather, Defendants asserted that unrelated disclosures leading up to the November 2, 2011 earnings release and reserve charge, including non-fraud-related announcements, were the cause of the decline of Prudential's stock price. *Id.*

expenses, and worked over 100,000 hours, representing a lodestar of approximately $48 million).[8]

As the court in *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994. Even plaintiffs who successfully oppose summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. The Eleventh Circuit in *Hubbard* upheld a lower court's decision overturning a jury verdict because plaintiff did not present sufficient evidence to prove loss causation. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). Similarly, even the most promising multi-hundred million dollar case can be eviscerated by a sudden change in the law after years of litigation. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some

---

[8]    *See also In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486-CW(EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict by jury); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *1-*2 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict).

40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort. Plaintiffs' counsel committed significant resources of both time and money to the vigorous and successful prosecution of this action. In view of the skill of Defendants' counsel and the legal and factual difficulties of this Litigation, the risk of never being compensated was real. The contingent nature of counsel's representation strongly favors approval of the requested fee.

### F. The Significant Time Devoted to This Case by Plaintiffs' Counsel

To date, Plaintiffs' counsel and their paraprofessionals have expended 25,945.72 hours and incurred $798,955.79 in expenses prosecuting this Litigation for the benefit of the Class.[9] As discussed above and in the Williams Declaration, this Litigation has been extensively litigated and vigorously defended for four years. Defendants fought Plaintiffs at every step of the Litigation in an effort to defeat Plaintiffs' claims. In short, the successful conclusion of this Litigation required Plaintiffs' counsel to commit a significant amount of time and expenses to the action.

---

[9]     *See* Declaration of Shawn A. Williams Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses (the "Robbins Geller Decl.") and Declaration of Peter S. Pearlman, Esq. Filed on Behalf of Cohn Lifland Pearlman Herrmann & Knopf LLP in Support of Application for Award of Attorneys' Fees and Expenses (the "Cohn Lifland Decl."), submitted herewith.

### G.   Awards in Similar Cases

#### 1.   The Requested Fee of 30% of the Settlement Fund Is Within the Range of Fees Typically Awarded in Actions of This Nature

There is no hard and fast rule as to what percentage of the common fund should be awarded as attorneys' fees. The Third Circuit has observed that fee awards range from 19% to 45% of the settlement fund. *GMC Trucks*, 55 F.3d at 822; *see also Ikon*, 194 F.R.D. at 194. Indeed, numerous courts within the Third Circuit have awarded fees of 30% or more of the recovery. *See Bodnar*, slip op. at 10 (awarding 33%); *Schuler*, 2016 U.S. Dist. LEXIS 82344, at *28 (awarding 33%); *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *66-*67 (awarding 30% of $8 million settlement fund, and noting "In this Circuit, 'awards of thirty percent are not uncommon in securities class actions.'"); *Esslinger v. HSBC Bank Nev., N.A.*, No. 10-3213, 2012 U.S. Dist. LEXIS 165773, at *43 (E.D. Pa. Nov. 20, 2012) ("a fee award of 30% here is reasonable and in keeping with similar precedent"); *W. Pa. Elec. Emps.' Pension Fund v. Alter*, No. 2:09-cv-04730-CMR, slip op. (E.D. Pa. Aug. 4, 2014) (awarding 30%); *In re Advanta Corp. ERISA Litig*, No. 2:09-cv-04974-CMR, slip op. (E.D. Pa. Jan. 9, 2014) (awarding 30%); *In re PAR Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 U.S. Dist. LEXIS 106150, at *30 (D.N.J. July 29, 2013) (awarding 30% noting that "Lead Counsel's fee request is comparable to fees typically awarded in analogous cases"); *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815 (3d Cir. 2010) (Third Circuit affirmed the 30% awarded by the district court).

Moreover, the requested fee is within the range of three studies relied on by the district court in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005). As the Third Circuit noted in *Rite Aid*:

> In comparing this fee request to awards in similar cases, the District Court found persuasive three studies referenced by Professor Coffee: one study of securities class action settlements over $10 million that found an average percentage fee recovery of 31%; a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period that found a median percentage recovery range of 27-30%; and a third study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were "fairly standard." We see no abuse of discretion in the District Court's reliance on these studies.

*Id.* at 303 (citation omitted).

### 2. The Requested 30% Fee Is Consistent with Contingent Fee Arrangements Negotiated in Non-Class Litigation

A fee based on the percentage method is also entirely consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As explained in *In re RJR Nabisco, Inc. Sec. Litig.*, No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y. Aug. 24, 1992):

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.

If this were a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g.*, *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty

percent of any recovery."); *accord Blum*, 465 U.S. at 903* ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.'") (concurring opinion) (citation omitted); *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS 12344, at *41-*42 (D.N.J. Feb. 9, 2010) ("[T]he 33.33% fee award requested reflects commonly negotiated fees in the private marketplace."); *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's conclusion that 30% would likely have been negotiated in securities action).

Accordingly, the application of the *Gunter* factors makes clear that Plaintiffs' counsel's requested fee of 30% of the Settlement Fund is fair and reasonable.

## III. THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK

Although courts in this Circuit almost uniformly apply the percentage approach to determine attorneys' fees in common fund cases like this one, a court may, but is not required to, use a lodestar "cross-check" to confirm the reasonableness of the requested fee.[10] In this case, if the cross-check is applied, the requested fee of 30% is clearly fair and reasonable.

The lodestar method, as set forth in the seminal cases *Lindy I* and *Lindy II*, is a two-step process. The first step requires that the court ascertain the "lodestar" figure by multiplying the number of hours reasonably worked by the reasonable

---

[10] "Even if such a cross-check is performed, 'the lodestar cross-check does not trump the primary reliance on the percentage of the common fund method.'" *Bodnar*, slip op. at 10 (citing *Rite Aid*, 396 F.3d at 307).

normal hourly rate of counsel. The second step permits the court to adjust the lodestar by applying a multiple to take into account the contingent nature and risks of the litigation, the results obtained and the quality of the services rendered by counsel. *See Lindy I*, 487 F.2d at 167-68; *accord Hensley*, 461 U.S. 424. A multiplier "'need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award.'" *Schuler*, 2016 U.S. Dist. LEXIS 82344, at *30 (citing *Rite Aid*, 396 F.3d at 307).

Under the *Lindy* cases, the court's determination of a reasonable fee begins with the number of hours expended in the prosecution of the action. Plaintiffs' counsel and their paraprofessionals here have spent, in the aggregate, 25,945.72 hours in the prosecution of this Litigation. For the convenience of the Court and in conformity with practice, the hours of counsel and their paraprofessionals have been submitted to the Court in a summarized form in the accompanying Robbins Geller Declaration and Cohn Lifland Declaration.[11]

To arrive at the lodestar, the hours expended are typically multiplied by each attorney's respective hourly rate. The hourly rate to be applied in calculating the lodestar is that which is normally charged in the community where the attorney practices. *See Blum*, 465 U.S. at 895; *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 590-91 (3d Cir. 1984). In addition, the United States Supreme Court and other courts have held that the use of current rates is proper since such rates compensate

---

[11]     *See Rite Aid*, 396 F.3d at 306-07 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (footnote omitted).

for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Ikon*, 194 F.R.D. at 195.

In determining whether the rates are reasonable, the court should take into account the attorneys' legal reputation, experience, and status. The accompanying declarations of counsel include a description of the background and experience of the firms who worked on this case. These descriptions provide support for the hourly rates charged in this case. Applying these rates to the hours committed to the Litigation results in a lodestar of $12,480,217.

"Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner Commc'ns*, 618 F. Supp. at 747. In the second step of the analysis, the court adjusts the lodestar to take into account, among other things, the result achieved, the quality of representation, the complexity and magnitude of the litigation, and public policy considerations. *Rite Aid*, 396 F.3d at 305-06; *Fine Paper*, 751 F.2d at 583; *Prudential*, 148 F.3d at 341. The court then applies the appropriate multiplier to the lodestar number to account for these additional factors.

Finally, to perform the lodestar cross-check, the court should determine what the effective multiplier is, and then determine whether the resulting fee would be so unreasonable as to warrant a downward adjustment. As noted, the cumulative lodestar for the services performed by counsel and their paraprofessionals in this Litigation is $12,480,217.00. Plaintiffs' counsel are seeking an award of 30% of the Settlement Fund which equals $9,900,000. Therefore, the requested fee represents a discount to Plaintiffs' counsel's time, *i.e.*, a negative multiplier. This "multiplier" is therefore substantially lower than multipliers awarded in other securities cases.

- 25 -

*See Bodnar*, slip op. at 10 (a 4.69 multiplier was "appropriate and reasonable"); *Esslinger*, 2012 U.S. Dist. LEXIS 165773, at *49 (a 1.7 multiplier was acceptable "because of the high risk of non-recovery shouldered by Plaintiff's counsel, who worked on a contingency basis, for more than two years"). Further, multipliers of 3, 4, 5 or even more times the lodestar have been awarded to reflect the contingency fee risk and other relevant factors. *See Schuler*, 2016 U.S. Dist. LEXIS 82344, at *31 (approving 3.57 multiplier); *In re Rite Aid Corp. Sec. Litig*., 362 F. Supp. 2d 587 (E.D. Pa. 2005) (6.96 multiplier); *In re Aetna Inc. Sec. Litig*., No. MDL No. 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001) (3.6 multiplier). Given that courts have approved percentage-of-recovery fees with lodestar multipliers in the one-to-four range, a 30% fee, using a lodestar cross-check which results in a negative multiplier, is plainly reasonable. *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2008 U.S. Dist. LEXIS 569, at *12 (E.D. Pa. Jan. 3, 2008) (observing that fee awards based on negative multipliers are indicative of the reasonableness of the award).

## IV. PLAINTIFFS' COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Plaintiffs' counsel also request payment of expenses incurred in connection with the prosecution of this Litigation. Counsel have submitted separate declarations attesting to the accuracy of their expenses. *See* Robbins Geller Decl.; Cohn Lifland Decl. Counsel have incurred expenses in the aggregate amount of $798,955.79 in prosecuting this Litigation. Counsel in a class action are entitled to recover expenses that were "'adequately documented and reasonable and appropriately incurred in the

prosecution of the class action.'" *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *54 (quoting *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

The largest component of Plaintiffs' counsel's expenses is the cost of consultants and experts, who provided valuable assistance in the areas of insurance practices and unclaimed property, market efficiency, reliance, loss causation and damages. As discussed in the Williams Declaration and the Robbins Geller Declaration, each of these experts and consultants worked a significant number of hours on the case analyzing the facts and legal issues raised in the Litigation. Dr. Feinstein produced an initial report, reviewed the report of Defendants' expert and the documents on which he relied, responded to discovery requests, prepared and sat for a deposition, and prepared to provide testimony at trial. Williams Decl., ¶¶125-133; Robbins Geller Decl., ¶6(e).

In addition, the number of documents produced in the Litigation (over 3.7 million pages) required a system called Relativity, which is a sophisticated database management program for the hosting of documents collected or produced in the Litigation. The amount requested for this category reflects charges for the management of the database. Robbins Geller Decl., ¶¶6(h)-(i). As detailed therein, because of the number of components that are part of a database management system (*i.e.*, hardware, software, license/access fees, etc.), and the difficulty of allocating a portion of the cost of each component, some of which are multi-year costs, the amount requested is a discounted market-rate estimate of what the database management services used in this action would have cost the Class if performed by

- 27 -

a third party, an estimate based on a review by Lead Counsel of what vendors charge for these services.  *Id.*

Plaintiffs' counsel were also required to travel in connection with the Litigation and thus incurred the related costs of meals, lodging and transportation. As detailed in the Robbins Geller Declaration (¶6(c)) and the Cohn Lifland Declaration (¶5(b)), in connection with the prosecution of this case over the last four years, the firms paid for travel expenses to, among other things, attend court hearings, meet with the mediator and opposing counsel, and to take or defend depositions.

Lead Counsel also incurred the costs of the initial PSLRA-mandated early notice (15 U.S.C. §78u-4(a)(3)(A)(i)).  Robbins Geller Decl., ¶6(b).

Plaintiffs' counsel also incurred the costs of computerized research.  Robbins Geller Decl., ¶6(g); Cohn Lifland Decl., ¶5(e).  It is standard practice for attorneys to use these services to assist them in researching legal and factual issues.  These charges are for electronic research and data retrieval charges provided through vendors such as ALM Media Service, Courtlink, LexisNexis Products, PACER, Thompson Financial, and Westlaw.  Other expenses that were necessarily incurred in the prosecution of this Litigation include mediation fees, photocopying, filing fees, and court reporter fees.  Because these were all necessary expenses incurred by Plaintiffs' counsel, they should be paid from the Settlement Fund.

## V.  PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *See* 15 U.S.C. §78u-4(a)(4). Plaintiffs National Shopmen, Heavy & General and Roofers Local request payment of $10,500, $1,500 and $7,200, respectively. *See* O'Connell Decl., O'Neill Decl., and Garoufalis Decl.

As set forth in each Plaintiff's declaration, they devoted substantial time to the oversight of, and participation in, the Litigation.  The time devoted to this Litigation by each of the Plaintiffs on behalf of the Class is time that would otherwise have been spent focused on the daily activities of the Plaintiffs.  *See* O'Connell Decl.; O'Neill Decl.; Garoufalis Decl.; *see also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964, at *62 (E.D.N.Y Sept. 18, 2007) (granting plaintiff reimbursement where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time these employees would have spent on other work and [the] tasks and rates appear reasonable to the furtherance of the litigation").

Moreover, the amounts requested by Plaintiffs are reasonable in amount and fully justified under the PSLRA based on their involvement in the Litigation.  *See, e.g.*, *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, slip op. at 2 (M.D. Tenn. Apr. 14, 2016) (awarding $6,081.25 to lead plaintiff for time spent in representing class); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-

WGC, 2012 U.S. Dist. LEXIS 151498, at *15 (D. Nev. Oct. 19, 2012) (awarding $5,832.85 to lead plaintiff and $4,050.00 to named plaintiff for time devoted to representation of the class); *In re Am. Int'l Grp. Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2007) (finding it "appropriate to reimburse Lead Plaintiffs [a total of $29,913.80 to the four Lead Plaintiffs] for their reasonable costs and expenses"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173-74 (S.D. Cal. 2007) (approving reimbursement of $40,000 in lost wages); *see also Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 2:10-cv-02847-KOB, 2015 U.S. Dist. LEXIS 130542, at *5-*6 (N.D. Ala. Sept. 14, 2015) (awarding a total of $9,000 to lead plaintiffs); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *61 (S.D.N.Y. Dec. 23, 2009) (awarding more than $200,000 to two groups of plaintiffs).  The request by Plaintiffs are supported by sworn declarations, including a description of the hours directly dedicated to the Litigation.  Plaintiffs' requests are reasonable, fully justified under the PSLRA, and should be granted.

## VI.   CONCLUSION

For all of the foregoing reasons, Plaintiffs' counsel respectfully request that the Court award attorneys' fees of 30% of the Settlement Amount and expenses in the amount of $798,955.79, plus interest at the same rate as earned by the Settlement Fund, and $10,500, $1,500 and $7,200 to Plaintiffs National Shopmen, Heavy &

General and Roofers Local, respectfully, for the time and expenses they spent representing the Class.

DATED:  August 24, 2016                  Respectfully submitted,

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN


                        s/ Peter S. Pearlman
                     PETER S. PEARLMAN

Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel for Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
AELISH M. BAIG
ARMEN ZOHRABIAN
DAVID W. HALL
SUNNY S. SARKIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

- 31 -

SULLIVAN, WARD, ASHER &
PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

THOMAS J. HART
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, NW,
Suite 450
Washington, DC  20036
Telephone:  202/797-8700
202/234-8231 (fax)

ANDREW F. ZAZZALI, JR.
ZAZZALI, FAGELLA, NOWAK,
KLEINBAUM & FRIEDMAN
One Riverfront Plaza, Suite 320
1037 Raymond Boulevard
Newark, NJ  07102
Telephone:  973/623-1822
973/623-2209 (fax)

Additional Counsel for Plaintiff